IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MIMEDX GROUP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CASE NO. 1:16-cv-11715-MSS |
| -vs- | ) | |
| | ) | |
| MICHAEL FOX, | ) | Judge Manish S. Shah |
| | ) | |
| Defendant. | ) | |
| | ) | |

**AMENDED COMPLAINT**

Plaintiff MiMedx Group, Inc. ("Plaintiff" or "MiMedx") hereby files its amended suit for

damages against Defendant Michael Fox ("Fox") and alleges the following:

**Introduction**

1.      This action arises from Fox's breaches of his employment contract,

confidentiality obligations, fiduciary duties, and duties of loyalty.  Fox's conduct resulted in

harm to MiMedx in the form of lost sales and loss of customer goodwill.

2.      Fox was, until recently, a Vice President of MiMedx, who while employed by

MiMedx owed MiMedx contractual and legal obligations to faithfully perform his duties for

MiMedx, report suspected employee misconduct, refrain from engaging in business other than

MiMedx business, and refrain from disclosing MiMedx's trade secrets and other confidential

information.

3.      Despite owing these contractual and fiduciary duties to MiMedx, Fox breached

these duties while employed by MiMedx by, including without limitation, providing then-current

MiMedx employees with MiMedx trade secrets and confidential information to which they did

not and would not otherwise have access and without MiMedx's consent (including trade secret

1

information concerning customer sales history and product usage by specific doctors to which Fox was then privy). Shortly after one of these disclosures, at least one of the unauthorized recipients made sales of non-MiMedx products to MiMedx customers identified in the confidential MiMedx materials sent by Fox.

4. Fox also breached his contractual and fiduciary duties by failing to report known misconduct by MiMedx employees. Fox was aware of at least one MiMedx employee making sales of non-MiMedx products to MiMedx customers. Rather than reporting this conduct, or advising the employee to follow the necessary procedures for clearing potential conflicts of interest, Fox reportedly permitted this MiMedx employee to make side sales of non-MiMedx product.

5. Fox also has failed to return MiMedx-issued devices, including: an HP EliteBook Folio laptop, an Apple iPad, and an Apple iPhone, which he was contractually and legally obligated to return after the termination of his employment with MiMedx.

6. By this action, MiMedx seeks compensatory and punitive damages. MiMedx further seeks temporary, preliminary and permanent injunctive relief requiring Fox to return the MiMedx issued electronic devices.

## Parties, Jurisdiction & Venue

7. Plaintiff MiMedx is incorporated under the laws of the State of Florida, and its headquarters is located in the State of Georgia.

8. Defendant Fox is a natural person. Upon information and belief, Fox is, and at all times relevant hereto was, a citizen and resident of the State of Illinois.

9. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 in that the dispute is between citizens of different States and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

10. Venue is also proper in the Court pursuant to 28 U.S.C. § 1391 in that Defendant Fox resides in the State in which this district is located.

### Factual Background

11. MiMedx is a leading regenerative medicine company utilizing human amniotic tissue and patent-protected processes to develop and market advanced products and therapies to various healthcare sectors. MiMedx sells its medical products in Illinois and throughout the United States in a highly competitive marketplace. MiMedx is a publicly traded company listed on the NASDAQ exchange.

### Fox's Employment at MiMedx

12. Fox separated from his employment as MiMedx's Vice President, Federal & Academic Institutions, in December, 2016, a position he assumed in or about January, 2016.

13. Fox began his employment with MiMedx as a Sales Director in or about July 2012. That position title was subsequently changed to Regional Sales Director East. By January, 2013, as one of only four Regional Sales Directors, Fox's Regional Sales Director East region had sales professionals based in the states of Iowa, Wisconsin, Kentucky and Illinois, with sales territories covering in and around those geographies.

14. In or about October, 2013, Fox became Area Vice President – West and began reporting directly to Mike Carlton, VP Global Sales. By January, 2014, as one of only two Area Vice Presidents, Fox's Area Vice President – West area had sales professionals based in the states of Colorado, Washington, Arizona, Oregon, Nevada, Illinois, Michigan, Missouri,

Wisconsin, Indiana, Kentucky, Minnesota, Tennessee, Louisiana, Oklahoma, Iowa and Texas, with sales territories covering in and around those geographies. In or about July, 2014, Fox's position became Area Vice President – Central, where he had sales professionals in the states of Michigan, Missouri, Wisconsin, Indiana, Kentucky, Minnesota, Tennessee, Louisiana, Oklahoma, Iowa and Texas, with sales territories covering in and around those geographies. By the end of his time as Area Vice President – Central, Fox had responsibility for sales professionals in the state of Michigan, Missouri, Wisconsin, Indiana, Kentucky, Minnesota, Tennessee, Louisiana, Oklahoma, Iowa, Texas, North Dakota, Kansas, Ohio and West Virginia, with sales territories covering in and around those geographies.

15.     As an Area Vice President, Fox assumed a position of trust and confidence within the management of MiMedx. Fox had more than 50 MiMedx employees, including regional managers and account executives, under his direction as an Area Vice President. Some of the employees Fox supervised while at MiMedx included: (1) Jess Kruchoski, a former Regional Sales Director for MiMedx, who was responsible for Iowa, Minnesota, Nebraska, North Dakota, South Dakota, and Wisconsin, (2) Harold "Hal" Purdy, a former Account Executive, who was responsible for sales in San Antonio and Dallas, Texas, (3) Bill Wagner, a former Area Federal Director, and (4) Jason Mahnke, an Account Executive.

16.     In or about January, 2016, Fox assumed the newly-formed position of Vice President, Federal & Academic Institutions with nationwide responsibility for that function. In that position, Fox continued reporting directly to Mike Carlton, Senior Vice President, Global Sales.

**Fox's Employment Contracts and Fiduciary Duties**

17.     Prior to and as a condition of his employment with MiMedx, Fox executed (among other contracts) a Non-Competition Agreement (the "Fox Non-Competition Agreement") and a Confidentiality and Non-Solicitation Agreement (the "Fox Confidentiality/Non-Solicitation Agreement").

18.     The Fox Non-Competition Agreement provides (among other things) that during his employment with MiMedx, Fox "will faithfully devote [his] best efforts to advance the interests of [MiMedx]."  A true and correct copy of the Fox Non-Competition Agreement is attached hereto as Exhibit 1 and incorporated herein by this reference.

19.     The Fox Confidentiality/Non-Solicitation Agreement provides (among other things) that:

     a.     Fox will "faithfully perform the duties assigned to [Fox] and will not engage in any other employment or business activity while employed by [MiMedx] which would interfere with [Fox's] full-time performance of [Fox's] duties for [MiMedx's], or cause a conflict of interest."; and

     b.     during his employment and for three years thereafter, Fox "shall hold all Confidential Information in confidence and shall not directly or indirectly divulge or make use of … any Confidential Information or Trade Secrets outside of employment with [MiMedx]."

A true and correct copy of the Fox Confidentiality/Non-Solicitation Agreement is attached hereto as Exhibit 2 and incorporated herein by this reference.

20.     Both Fox's Non-Competition Agreement and Confidentiality/Non-Solicitation Agreement further expressly provide, to which Fox agreed, that a breach thereof would cause MiMedx irreparable injury for which there is no adequate remedy at law.

21.     In addition to the obligations and requirements contained in the Fox Confidentiality/Non-Solicitation Agreement and the Fox Non-Competition Agreement, at all times relevant hereto, Fox independently owed fiduciary duties to MiMedx as both an Area Vice President and Vice President of Federal & Academic Institutions.

22.     As part of his contractual and fiduciary duties to MiMedx, Fox had an obligation to abide by the provisions of MiMedx's Code of Conduct.  On February 10, 2013, Fox acknowledged receipt and review of MiMedx's Code of Conduct.  Among other things, the Code of Conduct provides:

    a.  MiMedx's "confidential information and Trade Secrets should not be transmitted, sent or forwarded to other employees inside the Company who do not have a legitimate need and authorization to know the information.";

    b.  "It is MiMedx's policy that no employee shall maintain any relationship, activity, or ownership interest that might create a conflict between his or her personal interests and the business interests of MiMedx.  Each employee is expected to adhere to a strict standard of loyalty and ethics in avoiding such situations that might be thought to influence her or his actions or prejudice her or his judgment in handling MiMedx's business.  Implicit in such standard is the obligation to make prompt and full disclosure of any potential conflict of interest.";

    c.  Non-exclusive examples of potential conflicts of interest listed in the Code of

Conduct include: "Employment by, or rendering advice or consulting services to, any business organization that does or seeks to do business with or is a competitor of, MiMedx, except as a representative of MiMedx with the written approval of MiMedx's General Counsel and the MiMedx officer having jurisdiction over the employee's activity.";

d. MiMedx employees must "disclose to the Company all possible conflicts of interest so that the Company can determine whether a conflict of interest exists and, if so, the appropriate corrective action" and "[w]henever a conflict of interest exists or may possibly exist and is not promptly eliminated, full disclosure of all relevant facts and circumstances must be made to the employee's immediate supervisor, who will transmit the information through the appropriate chain of authority to the Chairman & CEO."

23. Importantly, the Code of Conduct specifically provides that: "[i]t is expected that each employee, officer and director will have the sensitivity to recognize when he or she is in a situation that raises ethical or legal questions and to seek advice from a manager, the Corporate Compliance Officer or any Deputy Corporate Compliance Officer, the Human Resources Department, or the Company's General Counsel." Attached hereto as Exhibit 3 is the February 1, 2013 version of MiMedx's "Corporate Compliance and Ethics Plan" which contains the Code of Conduct in Section B. Attached hereto as Exhibit 4 is Fox's acknowledgement that had received and would comply with the Code of Conduct, and that strict compliance with the Code of Conduct was a condition of his employment with MiMedx.

**Fox's Access to MiMedx Confidential and Trade Secret Information**

24.     As a result of Fox's position as a Vice President – Central, Fox had access and was privy to trade secrets and other confidential business sales information of MiMedx concerning its customers located throughout the Central area of United States, including without limitation accounts receivables reports detailing the amounts owed by MiMedx's customers and the aging of those accounts.  As a result of his position with MiMedx, Fox also had access and was privy to trade secrets and other confidential business information of MiMedx concerning its customers located in the Central area of the United States, including without limitation sales reports (including the sale of each specific MiMedx product to each private hospital, Veterans' Administration hospital and Department of Defense ("DOD") facility, including specific woundcare clinics with specific doctor and/or practice group associated with each MiMedx customer), commissions reports, reports of variances against forecasts and quotas, and reports identifying the Group Purchasing Organizations, Integrated Delivery Networks, and Hospitals (which include actual and potential MiMedx customers) in his Area and their specific purchasing needs, as well as information concerning MiMedx business, product and sales strategy in his Area.

25.     As of January, 2016, as a result of Fox's position as MiMedx's Vice President, Federal & Academic Institutions, Fox continued to have access to the foregoing and also had access and was privy to trade secrets and other confidential business sales information of MiMedx concerning all Veterans' Administration Hospitals, DOD facilities associated doctors and practice groups, and MiMedx distributors and agencies and Veterans' Administration management personnel.  As a result of his national position, Fox also had access and was privy to trade secrets and other confidential business information of MiMedx concerning its customers

located throughout the United States, including without limitation sales reports (including the sale of each specific MiMedx product to each specific facility, doctor and/or practice group associated with each MiMedx customer), commissions reports, reports of variances against forecasts and quotas, and reports identifying the Federal hospitals and facilities nationally (which include actual and potential MiMedx customers) and their specific purchasing needs, as well as information concerning MiMedx business, product and sales strategy within the overall National Veterans' Administration and global DOD facilities.

26. The trade secret and other confidential information of MiMedx that Fox had access to shall be referred to collectively as the "Confidential Information and Trade Secrets."

27. The Confidential Information and Trade Secrets are not known by or available to the public or to MiMedx's competitors. Furthermore, the Confidential Information and Trade Secrets are not known by or available to all MiMedx employees; instead, MiMedx determines what information its employees have access to based on their job responsibilities (including territory) and seniority levels and controls access to its Trade Secrets in accordance with such determination, including without limitation by setting and administering access control lists.

28. In addition, MiMedx's Confidential Information and Trade Secrets derive economic value from not being generally known to, and not being readily ascertainable by proper means by others who can obtain economic value from its disclosure and use, including MiMedx's competitors. In this regard, if disclosed to and used by a competitor, MiMedx's Confidential Information and Trade Secrets would allow competitors to know the exact persons and/or medical practice groups who should be solicited for the sale of specific competitive or comparable product to that being sold by MiMedx, thereby usurping MiMedx's product sales. Disclosure to and use of MiMedx's Confidential Information and Trade Secrets by its

competitors would also enable MiMedx's competitors to cherry pick MiMedx's top sales people, including by disclosure of the economic terms which may lure them away from MiMedx's employ.

## Fox Wrongfully Disclosed MiMedx's Confidential Information and Trade Secrets to Unauthorized Recipients

29.     Without MiMedx's consent, Fox provided MiMedx's Confidential Information and Trade Secrets to then current employees of MiMedx, which information they were not entitled to access and would not otherwise have access.  These disclosures violated Fox's contractual and fiduciary duties to MiMedx.  These disclosures also directly contravened MiMedx above-alleged policies that prohibited forwarding confidential information to employees who lacked the authorization to review that information.

30.     For example, on February 16, 2015, Fox, without authorization from MiMedx, provided a confidential report to several employees of MiMedx, including without limitation Jess Kruchoski ("Kruchoski").  These individuals were not authorized to view the information that Fox sent and they would not otherwise have had access to such a report.  This report contained detailed volumes and total sales for each MiMedx customer nationwide, which included information outside the regions for which the employees were responsible.  When he provided this MiMedx confidential information to the unauthorized employees, Fox stated "DO NOT FORWARD TO ANYONE!  FOR YOUR EYES ONLY."

31.     Kruchoski admits in a sworn declaration filed in another action that he began "exploring the option" of selling non-MiMedx products in January or February 2015.  A few days after receiving the report from Fox, and without the knowledge or approval of MiMedx's Chairman & CEO (as required by MiMedx's policies), Kruchoski then executed an Independent Distributor Agreement with Academy Medical LLC ("Academy"), a competitor of MiMedx.

Academy sales records demonstrate that in March 2015, Kruchoski made non-MiMedx sales to at least three (3) Veterans' Affairs Hospitals that were included on the report forwarded by Fox on February 16, 2015. Because these hospitals were outside of Kruchoski's assigned Region, he would not have had access to MiMedx's confidential sales data for these MiMedx customers but for Fox's improper disclosure.

32. Fox also, without authorization from MiMedx, provided another confidential MiMedx report to then-current MiMedx employee, Kruchoski, in October, 2016; Kruchoski did not otherwise have access to such report and he was not authorized to access to it. This October 2016 confidential report contained detailed information about specific sales and sales efforts to existing and prospective customers, including specifically identifying hospitals and doctors, in a Region other than the Region for which Kruchoski was responsible.

33. At all times material hereto, Fox was aware of MiMedx's policies preventing disclosure of materials to any employees lacking the correct authorization.

**Fox Failed to Report Known Misconduct by MiMedx Employees**

34. In contravention of his contractual and fiduciary duties, Fox was aware of misconduct by MiMedx employees and failed to report that misconduct to his superiors as required by the above-alleged MiMedx company policies.

35. Fox was aware of—and failed to report—sales of non-MiMedx products to MiMedx customers by MiMedx employees. Jason Mahnke ("Mahnke"), a subordinate of Fox, sold non-MiMedx products for a company called Halo Wound Solutions LLC ("Halo"). Halo distributes medical products, including those used for wound care applications, a segment of the medical industry in which MiMedx competes.

36. Mahnke's sales were made without the knowledge or approval of MiMedx's Chairman & CEO (as required by MiMedx's policies relating to potential or actual conflicts of

interest).  However, Mahnke asserts that Fox informed him that it was permissible for him to sell non-MiMedx products and encouraged him to sell the Halo products.  Mahnke's sale of non-MiMedx products created an actual, or at least a potential, conflict of interest.  However, Fox did not report this conflict of interest to his direct report, Mike Carlton, or otherwise through "the appropriate chain of authority to the Chairman & CEO" as he was required to do under MiMedx's Code of Conduct.

### Fox Failed to Return MiMedx Property Following His Termination

37.     During his employment with MiMedx, Fox was given the following electronic devices for use in connection with his employment by MiMedx:

> a.   An HP EliteBook Folio laptop, model: 9480M J5P81UT#AB;
>
> b.   An Apple® iPad® with Retina Display 16GB in Black, device ID: 9900013382347503; and
>
> c.   An Apple iPhone® 7 128GB in Black, device ID: 355310080960530.

38.     MiMedx believes the value of the MiMedx-owned electronic devices is more than $2,000.00.

39.     MiMedx terminated Fox's employment on December 29, 2016.  Pursuant to the Fox Confidentiality/Non-Solicitation Agreement, Fox was required to return to MiMedx his company-issued electronic devices, as well as any other MiMedx property in his possession, within three (3) days of his termination.

40.     To date, Fox has not returned his company-issued electronic devices or any other MiMedx property he may have in his possession, despite MiMedx's demand, made on January 23, 2017, for their return.  On February 17, 2017, MiMedx's outside counsel demanded return of the company-owned electronic devices by February 21, 2017.  Fox did not comply.  Attached

hereto as Exhibit 5 is a true and correct copy of the February 17, 2017 letter from MiMedx's counsel regarding the electronic devices.

## COUNT I

## BREACH OF CONTRACT – CONFIDENTIALITY/NON-SOLICITATION AGREEMENT

41. MiMedx realleges each of the allegations in the foregoing paragraphs of this Amended Complaint as if fully set forth herein.

42. MiMedx has complied with its obligations under the Fox Confidentiality/Non-Solicitation Agreement, except and to the extent that the same have been excused or prevented.

43. Fox has violated and is in material breach of his obligations under Sections 2 and 3 of the Fox Confidentiality/Non-Solicitation Agreement as a result of at least the following:

   a. His disclosure of MiMedx Confidential Information and Trade Secrets to unauthorized individuals, including Kruchoski; and

   b. His failure to report Jason Mahnke's engaging in side sales of non-MiMedx products, without obtaining the appropriate approvals.

44. Fox has violated and is in material breach of his obligations under Section 4 of the Fox Confidentiality/Non-Solicitation Agreement as a result of his failure to return to MiMedx his company-issued electronic devices, despite MiMedx's demand for their return.

45. As a direct and proximate result of Fox's above-alleged material breaches of his obligations under the Fox Confidentiality/Non-Solicitation Agreement, MiMedx has paid for services (including salaries) not rendered to it, has lost sales of MiMedx's products that its employees would have otherwise made, and has suffered other damages, all to MiMedx's injury in an amount to be proven at trial.

46.     Pursuant to the terms of the Fox Confidentiality/Non-Solicitation Agreement, MiMedx is also entitled to recovery of its attorneys' fees and costs incurred in this action should it prevail.

## COUNT II

## BREACH OF CONTRACT – NON-COMPETITION AGREEMENT

47.     MiMedx realleges each of the allegations in the foregoing paragraphs of this Amended Complaint as if fully set forth herein.

48.     MiMedx has complied with its obligations under the Fox Non-Competition Agreement, except and to the extent that the same have been excused or prevented.

49.     Fox has violated and is in material breach of his obligations under Section 1(c) of the Fox Non-Competition Agreement as a result of at least the following:

        a.   His disclosure of MiMedx Confidential Information and Trade Secrets to unauthorized individuals, including Kruchoski; and

        b.   His failure to report Jason Mahnke's engaging in side sales of non-MiMedx products, without obtaining the appropriate approvals.

50.     As a direct and proximate result of Fox's above-alleged material breaches of his obligations under the Fox Non-Competition Agreement, MiMedx has paid for services (including salaries) not rendered to it, has lost sales of MiMedx's products that its employees would have otherwise made, and has suffered other damages, all to MiMedx's injury in an amount to be proven at trial.

51.     Pursuant to the terms of the Fox Non-Competition Agreement, MiMedx is also entitled to recovery of its attorneys' fees and costs incurred in this action should it prevail.

## COUNT III

## SPECIFIC PERFORMANCE

52.     MiMedx realleges each of the allegations in the foregoing paragraphs of this Amended Complaint as if fully set forth herein.

53.     MiMedx has complied with its obligations under the Fox Confidentiality/Non-Solicitation Agreement, except and to the extent that the same have been excused or prevented.

54.     Fox has violated and is in material breach of his obligations under the Fox Confidentiality/Non-Solicitation Agreement as a result of his continued failure to return to MiMedx his company-issued electronic devices after the termination of his employment, despite MiMedx's demand for the same.

55.     As a direct and proximate result of Fox's above-alleged material breach of his obligations under the Fox Confidentiality/Non-Solicitation Agreement, MiMedx has suffered and will continue to suffer irreparable injury which is not adequately compensated by remedies available at law.   Indeed, Fox has already agreed in the Fox Confidentiality/Non-Solicitation Agreement that breach of that agreement results in irreparable injury to MiMedx.

56.     Accordingly, MiMedx is entitled to a court order requiring Fox to comply with his obligations under the Fox Confidentiality/Non-Solicitation Agreement.   Specifically, the Court should issue an order requiring Fox to specifically perform his obligation under the Fox Confidentiality/Non-Solicitation Agreement to return his MiMedx issued electronic devices to MiMedx.

57.     Pursuant to the terms of the parties' contracts, MiMedx is also entitled to recovery of its attorneys' fees and costs incurred in this action should it prevail.

## COUNT IV

## BREACH OF FIDUCIARY DUTY

58.     MiMedx realleges each of the allegations in the foregoing paragraphs of this Amended Complaint as if fully set forth herein.

59.     At all times relevant hereto, Fox was an Area Vice President and then Vice President of Federal & Academic Institutions for MiMedx.

60.     As an Area Vice President and as the Vice President, Federal & Academic Institutionsfor MiMedx, Fox owed a fiduciary duty to MiMedx.

61.     Fox breached his fiduciary duty to MiMedx, including without limitation, by through breaches of his contractual agreements and company policies, through:

    a.  His disclosure of MiMedx Confidential Information and Trade Secrets to unauthorized individuals, including Kruchoski; and

    b.  His failure to report Jason Mahnke's engaging in side sales of non-MiMedx products, without obtaining the appropriate approvals.

62.     As a direct and proximate result of Fox's breaches of his fiduciary duty to MiMedx, MiMedx has paid for services (including salaries) not rendered to it, has lost sales of MiMedx's products that its employees would have otherwise made, and has suffered other damages, all to MiMedx's injury in an amount to be proven at trial.

63.     Fox willfully and maliciously engaged in the above-alleged breaches of his fiduciary duty to MiMedx, and as a result, MiMedx is entitled to an award of exemplary damages.

## COUNT V

## BREACH OF DUTY OF LOYALTY

64.     MiMedx realleges each of the allegations in the foregoing paragraphs of this Amended Complaint as if fully set forth herein.

65.     As an employee, Fox owed a duty of loyalty to MiMedx.

66.     Fox's above-alleged breaches of his contractual and legal duties to MiMedx violated his duty of loyalty, including without limitation, through:

> a.  His disclosure of MiMedx Confidential Information and Trade Secrets to unauthorized individuals, including Kruchoski; and
>
> b.  His failure to report Jason Mahnke's engaging in side sales of non-MiMedx products, without obtaining the appropriate approvals.

67.     As a direct and proximate result of Fox's breaches of his duty of loylty to MiMedx, MiMedx has paid for services (including salaries) not rendered to it, has lost sales of MiMedx's products that its employees would have otherwise made, and has suffered other damages, all to MiMedx's injury in an amount to be proven at trial.

68.     Fox willfully and maliciously engaged in the above-alleged breaches of his duty of loyalty to MiMedx, and as a result, MiMedx is entitled to an award of exemplary damages.

## COUNT VI

## REPLEVIN

69.     MiMedx realleges each of the allegations in the foregoing paragraphs of this Amended Complaint as if fully set forth herein.

17

70.     Fox was issued the following company-owned electronic devices during his employment:

    a.   An HP EliteBook Folio laptop, model: 9480M J5P81UT#AB;

    b.   An Apple® iPad® with Retina Display 16GB in Black, device ID: 9900013382347503; and

    c.   An Apple iPhone® 7 128GB in Black, device ID: 355310080960530.

71.     MiMedx is the owner of these electronic devices and is lawfully entitled to possession of the same following Fox's termination of employment.

72.     Specifically, pursuant to the Fox Confidentiality/Non-Solicitation Agreement, Fox was required to return these electronic devices to MiMedx no later than January 1, 2017.

73.     Despite repeated demands from MiMedx, as of the date of this filing, Fox has yet to return these electronic devices.

74.     MiMedx has a superior right to possession of the MiMedx-owned electronic devices, and Fox is wrongfully detaining the company-owned electronic devices.  Fox has not taken the company-owned electronic devices for any tax, assessment, or fine levied by virtue of any law, against the property of MiMedx, or against Fox.  Fox has not seized the company-owned electronic devices under any lawful process against the goods and chattels of MiMedx.  Nor has Fox held the company-owned electronic devices by virtue of any order for replevin against MiMedx.

75.     Accordingly, MiMedx seeks an order pursuant to 735 Ill. Comp. Stat. Ann. 5/19-104 that the company-owned electronic devices be seized and returned to MiMedx.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff MiMedx prays for the following relief:

A.  A temporary, preliminary and permanent injunction against Fox, his agents and those acting in concert with them, requiring the return of the MiMedx electronic devices to MiMedx;

B.  For a judgment of compensatory damages against Fox, according to proof at trial;

C.  For a judgment of exemplary damages against Fox;

D.  For an order of replevin with respect to the MiMedx-owned devices and judgment against Fox;

E.  For a judgment of attorneys' fees against Fox;

F.  For a judgment of costs against Fox; and

G.  For a judgment awarding such other and further relief that the Court deems just and proper.

<u>**JURY DEMAND**</u>

Plaintiff MiMedx requests a trial by jury on all matters as to which it is entitled by law.

Respectfully submitted, this 22nd day of February, 2017.

**PLAINTIFF MIMEDX GROUP, INC.**

<u>/s/ *Joseph D. Wargo*</u>
One of Its Attorneys

Joseph D. Wargo, *pro hac vice*, Georgia Bar
    No. 738764
Shanon J. McGinnis, *pro hac vice*, Georgia
    Bar No. 387598
WARGO & FRENCH, LLP
999 Peachtree Street, NE
26th Floor
Atlanta, Georgia 30309
Telephone: (404) 853-1500
Facsimile: (404) 853-1511
E-mail: jwargo@wargofrench.com
E-mail: smcginnis@wargofrench.com

19

Ami N. Wynne
Jason G. Marsico
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, Illinois 60603
Phone: (312) 853-7000
Fax: (312) 835-7036
Email: awynne@sidley.com
Email: jmarsico@sidley.com


Counsel for Plaintiff
MiMedx Group, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on February 22, 2017, I electronically filed the foregoing with the

Clerk of Court using the Court's CM/ECF system, which will send notification of such filing to

the counsel of record for the parties in this action.


*/s/ Ami N. Wynne*

Ami N. Wynne
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, Illinois 60603
Phone: (312) 853-7000
Fax: (312) 835-7036
Email: awynne@sidley.com