**1**

1                UNITED STATES DISTRICT COURT
                 NORTHERN DISTRICT OF ILLINOIS
2                    EASTERN DIVISION

3    MIMEDX GROUP, INC.,          )
                             )
4            Plaintiff,     )
                             )
5      vs.                )  No. 16 C 11715
                             )
6    MICHAEL FOX,             )  Chicago, Illinois
                             )  March 8, 2017
7            Defendant.     )  9:33 o'clock a.m.

8

9                TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HONORABLE MANISH S. SHAH

10

    APPEARANCES:

11

12   For the Plaintiff:       WARGO & FRENCH
                           BY:  MS. SHANON J. McGINNIS
13                      999 Peachtree Street, 26th Floor
                           Atlanta, Georgia  30309
14                      (404) 853-1575

15                      SIDLEY AUSTIN, L.L.P.
                      BY:  MS. AMI N. WYNNE
16                      One South Dearborn Street
                      Chicago, Illinois  60603
17                      (312) 853-7000

18   For the Defendant:       GREIMAN, ROME & GRIESMEYER, L.L.C.
                      BY:  MR. CHRISTOPHER S. GRIESMEYER
19                        MR. ADAM C. MAXWELL
                      Two North LaSalle Street, Suite 1601
20                      Chicago, Illinois  60602
                      (312) 428-2750

21

22

23            COLLEEN M. CONWAY, CSR, RMR, CRR
                 Official Court Reporter
        219 South Dearborn Street, Room 1714
24             Chicago, Illinois  60604
                 (312) 435-5594
25           *colleen_conway@ilnd.uscourts.gov*

1       (Proceedings heard in open court:)

2           THE CLERK:  16 C 11715, MiMedx versus Fox.

3           MS. WYNNE:  Good morning, Your Honor.  Ami Wynne with

4    Sidley Austin on behalf of the plaintiff.

5           MS. McGINNIS:  Shanon McGinnis on behalf of Wargo --

6    or with Wargo & French on behalf of the plaintiff as well.

7           MR. GRIESMEYER:  Good morning, Your Honor.  Chris

8    Griesmeyer on behalf of the defendant, Mr. Fox.

9           MR. MAXWELL:  Adam Maxwell also on behalf of the

10   defendant, Mr. Fox.

11          THE COURT:  Good morning.  Before we talk about the

12   motion for an order of replevin or TRO or preliminary

13   injunction, let's talk about some issues raised in the status

14   report and let's get a schedule in place.

15          So the defense anticipates a motion to dismiss?

16          MR. GRIESMEYER:  Yes.

17          THE COURT:  At least it says so in the status report.

18          MR. GRIESMEYER:  We do, yes.  We need a little bit of

19   time.  We're hoping to get until next Friday.  We've obviously

20   been a little bit derailed over the past several days

21   responding to, you know, the motion for replevin, so we were

22   hoping to have an extension until next Friday to file our

23   motion to dismiss.

24          THE COURT:  And is that a motion that seeks to

25   dismiss all claims?

1           MR. GRIESMEYER:  It would, yes, Your Honor.

2           THE COURT:  That's fine with me.  I'll give you until

3   -- March 17th, is that the date you had in mind?  Is that what

4   you mean by next Friday?

5           MR. GRIESMEYER:  It is.

6           THE COURT:  Okay.

7           MR. GRIESMEYER:  Thank you, Your Honor.

8           THE COURT:  How much time would the plaintiff like to

9   respond to that motion?

10          MS. McGINNIS:  The -- 30 days, although I don't know

11  that it would take that much time, but I'd like the normal

12  amount of -- the normal allotted time.  If he's -- because this

13  is the first that we've heard that that motion to dismiss may

14  be addressed to all the claims, so --

15          THE COURT:  That's fine.

16          THE CLERK:  Counsel, that takes you to Monday, April

17  17th.

18          MS. McGINNIS:  Okay.

19          THE COURT:  And how much time would you like to

20  reply?

21          MR. GRIESMEYER:  If we could have 21 days?

22          THE CLERK:  May 8th, counsel.

23          MR. GRIESMEYER:  Thank you.

24          THE COURT:  Notwithstanding the notion of a motion to

25  dismiss coming that may resolve all the claims, I don't believe

1     that discovery should wait.  There is some history here.  There

2     is the prospect of -- if the motion to dismiss is not

3     successful, the prospect of counterclaims by the defendant.

4     And from what I've seen so far, I think the parties ought to

5     act early to get the actual facts known to both sides as

6     expeditiously as possible so that they can truly evaluate what

7     they want to do with this kind of case.

8          So I don't agree that discovery should wait until we

9     have the pleadings finalized.

10          MR. GRIESMEYER:  Understood.  Judge, our -- just on

11    behalf of the defendant, our motivation in making that request

12    was simply a matter of economics.  Mr. Fox is an individual.

13    He is not working.  He has attempted to find employment.

14    His -- you know, the current employer who he was about to go to

15    work for pulled the employment offer away from him when he saw

16    MiMedx's press release announcing this lawsuit.

17          So he has no income coming in and, you know, it was

18    just simply a matter of economics.  We were hoping to push off

19    the costs of discovery until we figured out if there's even

20    going to be a lawsuit here.

21          THE COURT:  And it's not an unreasonable position --

22          MR. GRIESMEYER:  Okay.

23          THE COURT:   -- to take, and I would expect the

24    parties on both sides to be cost-sensitive about early

25    discovery when you know that there is a motion -- and I am

1    directing this to the plaintiff, when you know there is a
2    motion to dismiss coming that's attacking all claims, you know
3    that you have to spend time briefing that motion.  Maybe you
4    don't also want to be spending time on contentious discovery in
5    these next few weeks.  And I would expect both sides should be
6    able to figure out what it makes sense to do early, and
7    hopefully largely by agreement.  There might be key facts that
8    both sides agree both sides ought to know now, and those are
9    the kinds of things I expect the parties to be able to meet and
10   confer on in these first weeks while I am also going to be
11   occupied with your motion to dismiss as well.
12              So my guess is you won't want to distract me from
13   resolving the motion to dismiss by filing a bunch of discovery
14   disputes with me either.  So everyone keep that in mind.
15              I think it makes sense for the parties to exchange
16   initial disclosures by March 22nd.  And then I am going to set
17   a close of fact discovery of October 9th -- actually, October
18   10th, 2017.
19              I am not going to set an expert schedule or
20   dispositive motions schedule until we have a better handle on
21   what actual experts might be needed and whether there would be
22   dispositive motions.
23              MS. McGINNIS:  I understand.
24              THE COURT:  I am also going to set a date that any
25   requests to amend the pleadings must be made by August 8th,

1    which would then give you two months of fact discovery to wrap

2    things up, but also an incentive to amend your pleadings at a

3    point after you've gotten some facts under your belts and you

4    can intelligently choose what claims are really worth bringing

5    while giving you sufficient time to continue some discovery to

6    wrap that up.

7              MS. McGINNIS:  Thank you.

8              THE COURT:  So I think that is a schedule that makes

9    sense where things stand right now.

10             Does anyone have any strong objections to that plan?

11             MS. McGINNIS:  No, Your Honor.

12             MR. GRIESMEYER:  No, Your Honor.  It seems just fine.

13             THE COURT:  Okay.

14             MR. GRIESMEYER:  Thank you.

15             THE COURT:  Okay.  So let's talk about the motion.

16             The motion to file excess pages on the response is

17   granted.

18             I will say that I don't think you needed that many

19   pages, and don't expect that I will grant excess pages going

20   forward.  I think you could have cut ten pages out of the

21   response.

22             MR. GRIESMEYER:  Understood, Judge.  If you --

23             THE COURT:  But things are moving fast --

24             MR. GRIESMEYER:  Yes.

25             THE COURT:  -- and I read it.  It's fine.

1          MR. GRIESMEYER:  Thank you.  That's exactly it.  If I
2    had more time, I could have given you a shorter brief.
3          THE COURT:  But I have the motion, I have the
4    response.  Both sides have submitted evidence by way of
5    affidavit.  I don't need anybody to repeat what's in the
6    briefs.  I have a few questions --
7          MS. McGINNIS:  Absolutely.
8          THE COURT:  -- that I think would be a better use of
9    our time to stay focused on.
10         So Mr. Fox has now repeatedly disclaimed any property
11   interest in these devices, and he was not served with the
12   complaint until mid-January.
13         MR. GRIESMEYER:  January 16th.
14         THE COURT:  The contract pretty clearly says he had
15   to return the devices within three days of his employment being
16   terminated, and nothing in the contract says that the plaintiff
17   had to request the devices to be returned.
18         So my question is why didn't he return the devices on
19   January 4th or 5th, taking into account the holiday?
20         MR. GRIESMEYER:  Sure.  Candidly, he -- he didn't --
21   it occurred to him that he had them.  He has not accessed these
22   devices, he hasn't turned them on since he was terminated on,
23   you know, December 29th.
24         You know, it -- you know, it's not unimportant to
25   note that, you know, MiMedx did terminate him and then less

1    than two hours later filed the lawsuit, and it really was at

2    that point in time that whatever sort of evidence he had he had

3    an obligation to preserve.

4              And that's all that has happened here.  He doesn't

5    want these computers.  He would very much like to return them.

6    The only thing he has done is after he got the complaint, he

7    hired counsel.  And then after he received the letter on the

8    24th, he realized, "Oh, that's right, I have computers."  He

9    gave them to us.  We opened the box, took an inventory, figured

10   out what was there, and then that same day sent them off to the

11   computer forensic expert for imaging -- standard protocol --

12   and they've been sitting with the computer forensic expert in

13   the evidence preservation vault ever since.

14             THE COURT:  Okay.  The problem, though, is the --

15   Mr. Fox is placing a condition on the return of property that

16   he agrees is not his.  The condition is that he get

17   confirmation that he has successfully imaged the property.

18             I am -- let me --

19             MR. GRIESMEYER:  Yeah.

20             THE COURT:  I'm going to --

21             MR. GRIESMEYER:  Yeah.

22             THE COURT:  -- cut you off only because I am going to

23   tell you, I understand why he's done what he's done.  I am just

24   narrowing our conversation on to what I view as the key

25   facts --

1           MR. GRIESMEYER:  Uh-huh.

2           THE COURT:  -- which is he says he doesn't want these

3    devices, he's acknowledged they're not his and they're not his

4    property, but he's not going to return them because he wants

5    confirmation that he's got a forensically-sound image.  That

6    condition that he's placing on the return of the property is

7    just that, it's a condition.  It's not an unconditional

8    agreement to return the property, and it is a type of refusal

9    to return the property.

10          And my -- the idea that he gave the devices to his

11   attorneys who then gave it to StoneTurn, and so he's not in

12   possession of them, I think is not quite right, because my

13   guess is if he ordered StoneTurn to release the devices, they

14   would follow his direction because they are his agent.

15          And do I have that right?

16          MR. GRIESMEYER:  Correct, Your Honor.

17          THE COURT:  Okay.

18          MR. GRIESMEYER:  That is correct.

19          THE COURT:  And then the question I had for the

20   company, from the plaintiff is when did the company activate

21   the access restrictions on the devices?

22          MS. McGINNIS:  That is a standard protocol upon

23   termination.  I don't know the exact date that it happened.

24   But any time that an employee leaves voluntarily or is

25   otherwise terminated, in order to protect confidential

```
 1    information/trade secrets, so that it doesn't fall into the
 2    wrong hands, that is a standard protocol.  My -- I suspect that
 3    it happened -- if it didn't happen the day that he was
 4    terminated, it happened within a day or two after that, so --
 5              MR. GRIESMEYER:  Well, then it would have happened
 6    after the lawsuit was filed, and that is tampering with
 7    evidence, and they shouldn't have done that.
 8              MS. McGINNIS:  It --
 9              THE COURT:  It may or may not be tampering with
10    evidence.  It may be an act of evidence preservation.
11              MS. McGINNIS:  Exactly.
12              THE COURT:  It's not --
13              MR. GRIESMEYER:  Understood.
14              THE COURT:  That's not an issue that I think is
15    particularly relevant to our debate right now, which is where
16    should these devices be right now.
17              MR. GRIESMEYER:  I understand.
18              THE COURT:  Do they belong in the StoneTurn vault or
19    do they belong someplace else?  That's the only question I am
20    going to address this morning.  Whether people were bad actors
21    with respect to the devices in a way that led us here today is
22    not really the limited question that I think I can answer this
23    morning based on what's been presented.
24              If I ordered the return of the devices, do you have
25    the mechanism in place to have someone available to receive
```

1    them?

2          MS. McGINNIS:  Yes, Your Honor.  As a matter of fact,

3    we had even offered that on Friday to have somebody from DTI go

4    and pick them up from StoneTurn.  I've got somebody on standby.

5          THE COURT:  Okay.  Do you want to comment, plaintiff,

6    on the idea that your replevin action wasn't verified, so it

7    doesn't comply with the Illinois statute?

8          MS. McGINNIS:  I do, Your Honor.  As Your Honor

9    knows, there is no mechanism for verified complaints in federal

10   court.  That is a strictly state-court procedural issue, not a

11   substantive issue.  But regardless, I think that we've

12   addressed any need for verification, assuming that the Court

13   thinks that there's a need for verification, by the submission

14   of the declarations of Ms. Lawson and Mr. Pearson.  They're

15   declarations, which are sworn statements under oath, which is

16   the exact same thing as a verification.  Addressed all of the

17   facts with respect to the replevin cause of action.

18         THE COURT:  Okay.  Here's what we are going to do.  I

19   have read the motion, the response, the affidavits, and I do

20   find that a preliminary injunction should issue pursuant to

21   Rule 65.

22         The plaintiff has demonstrated a likelihood of

23   success on the merits of both its specific performance claim

24   and its replevin actions, because it's not contested that the

25   devices belong to plaintiff.  Defendant has expressly

1    disclaimed any property interest in the devices, or their
2    contents for that matter.  And it is likely that the contract
3    covers the identified devices, including the data contained
4    therein, and is a reasonable enforceable covenant as part of a
5    confidentiality/noncompete contract.

6           The defendant detained the devices well past the
7    three-day grace period provided for in the contract, and it's,
8    therefore, likely that he breached that provision of the
9    contract.  It's also likely, as a result, that he has
10   wrongfully detained the property.

11          And plaintiff's interest in the property is superior,
12   in my view, to defendant's litigation interest in preserving
13   the evidence because he was not supposed to have the devices in
14   his possession in mid-January of 2017.  Giving the property to
15   his agents, his lawyers, StoneTurn, did not relieve him of
16   possession or control.

17          There is no dispute that the plaintiff's data is
18   contained on the devices, and I do find it likely that the
19   nature of the data is such that plaintiff is irreparably harmed
20   by being unable to inspect and analyze its own property.  And
21   remember, these are their devices in the first place.

22          That defendant has elected to use a reputable company
23   to attempt to preserve the data doesn't, in my view, alleviate
24   the harm to plaintiff in being able to control its own
25   property.  And that harm is not adequately remedied by money

1    damages, even in a breach of contract claim, because here we

2    are talking about specific performance of Mr. Fox's obligation

3    by contract to return the property, and that's an equitable

4    remedy that I think would be appropriate here where there is

5    proprietary data that belongs to plaintiff and does not belong

6    to defendant, and the parties have agreed by contract that

7    defendant can't keep it.  So money damages are not an adequate

8    remedy and the harm to plaintiff from continued separation from

9    its property is irreparable.

10           Mr. Fox will not be harmed at all because he has no

11   property interest in the devices.  And his obligation to

12   preserve evidence related to this litigation does not give him

13   any right to possess property that doesn't belong to him.

14           I don't agree that the allegations that the plaintiff

15   is a bad actor with respect to ESI are sufficient to create a

16   risk of harm to the defendant here, certainly not one that

17   outweighs the plaintiff's interest in having its property

18   returned unconditionally.

19           MR. GRIESMEYER:  Sure.

20           THE COURT:  The public interest is negligible but

21   generally favors the enforcement of the parties' contract.  The

22   balance of harms favors the plaintiff.

23           No bond is necessary because the risk that defendant

24   is wrongfully enjoined is quite low here.  And the injunction

25   that I am issuing will not cause Mr. Fox to incur any costs

1    that he hasn't already accepted a willingness to bear by taking

2    his devices and hiring StoneTurn to maintain them.

3              So I am going to enter an injunction later today

4    directing Mr. Fox, his agents, and anyone acting in concert

5    with him with notice of the injunction to return the original

6    devices, the HP laptop, the iPad, the iPhone, to plaintiff's

7    designated agent by 5:00 p.m. tomorrow.

8              And is that going to happen here?

9              MS. McGINNIS:  Yes, Your Honor.

10             THE COURT:  Okay.

11             MR. GRIESMEYER:  The devices are in Boston, in

12   StoneTurn's office in Boston, so it will take -- I will contact

13   them immediately after we're done with court and find out -- I

14   would imagine they would be able to have them delivered, you

15   know, tomorrow.

16             MS. McGINNIS:  Your Honor --

17             THE COURT:  I am asking --

18             MS. McGINNIS:  -- I'm quite certain that there's a

19   DTI representative in --

20             MR. GRIESMEYER:  That's fine.  If they're really that

21   concerned about it, that's fine.

22             THE COURT:  I am asking because --

23             MR. GRIESMEYER:  Judge -- yes.

24             THE COURT:  -- I am either going to say 5:00 p.m.

25   Eastern time or 5:00 p.m. Central time.  I'll give you 5:00

1    p.m. Eastern time.

2              MR. GRIESMEYER:  Fair enough.

3              Judge, can I ask this?  With --

4              THE COURT:  Let me finish --

5              MR. GRIESMEYER:  Oh, I'm sorry.

6              THE COURT:  -- the scope of my injunction.

7              MR. GRIESMEYER:  I apologize.

8              THE COURT:  Because I am also enjoining the defense

9    from accessing or attempting to access any images or copies of

10   the data contained -- that was contained on the original

11   devices until further order of the Court.

12             You, the defense, must maintain any images or copies

13   that might exist in a secure environment without accessing

14   them.  I am not ordering them to return copies because I

15   conclude a more narrowly-tailored injunction limited to the

16   original devices and preserving without access the images while

17   litigation commences will best preserve both sides' incentive

18   to be cooperative and efficient in discovery and won't cause

19   any irreparable harm to the plaintiff.

20             And if at some point down the road there is an

21   argument that the plaintiff has not fully complied with some

22   discovery request or is hiding the ball about data that should

23   be contained on the devices, then there may be an argument that

24   I should let someone look at the images and confirm what's on

25   there.  We'll see if that happens.  But I am not convinced that

1  we need assurance now that those images were successfully

2  duplicated.  That's a risk that I think is borne by the

3  defendant by the nature of the choices he made leading up to

4  today.

5      But, as I said, if there's an argument, I'll

6  certainly hear it out and we might be able to revisit the

7  images, and we'll leave it at that.

8      MR. GRIESMEYER:  Judge, could I interject?

9      THE COURT:  You may.  So that will be the injunction.

10     MR. GRIESMEYER:  Could we also ask, Judge, that the

11  order require the devices to be delivered not to plaintiff but,

12  rather, to DTI, where DTI would hold them in an evidence

13  preservation vault?  They could do imaging, but they're not

14  going to release the original devices back to the plaintiff,

15  because Mr. Fox is very concerned about the information that is

16  on these devices and he wants to make sure that that

17  information is preserved, and he wants to make sure that, you

18  know, there is no issue about that information potentially

19  being deleted.

20     MS. McGINNIS:  Your Honor, we -- we've already

21  represented to counsel as an officer of the court that the

22  image -- that the devices would go to DTI, be maintained in an

23  evidence locker for preservation after a mirror image is made,

24  and that any ESI or any discovery would be done off of the

25  mirror image, so --

1          THE COURT:  So let me ask it a different way.

2          MS. McGINNIS:  Yes.

3          THE COURT:  Do you have any objection to the

4     injunction saying the devices are to be turned over to

5     plaintiff's designated agent, namely DTI, by 5:00 p.m.?

6          MS. McGINNIS:  I do not have any problem with that,

7     Your Honor.

8          THE COURT:  Okay.

9          MS. McGINNIS:  So no objection.

10          THE COURT:  I will make that clear in the injunction.

11          MR. GRIESMEYER:  Thank you.

12          MS. McGINNIS:  Your Honor, I do have two issues that

13     I'd like to discuss.

14          THE COURT:  Go ahead.

15          MS. McGINNIS:  First of all, in our papers, we

16     identified that Mr. Fox had possession of a laptop, an iPad, an

17     and iPhone -- and in defendant's papers, they referenced two

18     laptops and an iPhone -- and I just want to make sure that

19     we're talking about the same stuff, because if there's another

20     laptop they want to --

21          MR. GRIESMEYER:  That is a good point.  In fact --

22     yes.  There's actually four devices.

23          MS. McGINNIS:  Okay.

24          MR. GRIESMEYER:  We received two laptops and an

25     iPhone, and then very recently, Mr. Fox located an iPad.  He

1  recently went through a divorce.  The iPad was sitting in a

2  file folder, a vertical file folder with a bunch of papers, and

3  he happened to be going through it at his new residence and he

4  saw it and he said, "Oh, shoot."

5         That iPad is with StoneTurn.  Hasn't been imaged.

6  Nothing has been downloaded.  It's just sitting with StoneTurn.

7  That will be turned over, of course, with the two laptops and

8  the iPhone.

9         THE COURT:  Do you have any identifying description

10  for the second laptop?

11         MS. McGINNIS:  Second laptop, uh-huh.

12         MR. GRIESMEYER:  We do.  I -- we do.  I don't have it

13  at my fingertips right here, but I can -- I will find the

14  time --

15         THE COURT:  Well, I -- what I am going to --

16         MR. GRIESMEYER:  -- certainly.

17         THE COURT:  What the injunction will say is I'll

18  enumerate the three devices that I have specific identifying

19  information for, but it applies to all plaintiff-owned devices.

20  And I don't think there's going to be a dispute --

21         MR. GRIESMEYER:  There won't.  And we will --

22         THE COURT:  -- about what that covers.

23         MR. GRIESMEYER:  We will include that in the delivery

24  to DTI.

25         MS. McGINNIS:  Thank you.  The other issue that I'd

1    like to address -- you know, I understand Your Honor's order

2    that they get to maintain a copy of what -- or they get to

3    maintain whatever they copied and that they can't access it.

4    Is it possible -- we would request that we be permitted to have

5    a copy of what they have so that -- again, it can be maintained

6    in an evidence vault the same way that theirs is, but that way

7    we know what they have as well.  Obviously, as we've had --

8            THE COURT:  That's the kind of thing that falls under

9    what you had previously said as:  Let's do discovery in the

10   ordinary process.

11           MS. McGINNIS:  Okay.

12           THE COURT:  If you want to make --

13           MS. McGINNIS:  That's fine.

14           THE COURT:  -- a request through ordinary discovery

15   mechanisms of that kind of thing, you can meet and confer about

16   it and see if you can reach some kind of agreement.  Or if you

17   don't, then I'll hear you on it.  But let's just do things the

18   ordinary way at this point.

19           MS. McGINNIS:  Absolutely, Your Honor.  I just wanted

20   to make sure that I understood how far that went.

21           And just to clarify, the devices that were imaged was

22   a -- the two laptops and the iPhone, and the iPad has not been

23   imaged?

24           MR. GRIESMEYER:  The iPad has not been imaged.  I do

25   not recall if they were able to image the iPhone or not.  There

1     has been images taken of the two computers.

2                    MS. McGINNIS:  Okay.

3                    MR. GRIESMEYER:  There may have been an image taken

4     of the iPhone.  I will confirm with them.

5                    MS. McGINNIS:  Okay.

6                    MR. GRIESMEYER:  But I -- if I recall, I believe they

7     were unable to do it because the password was -- passcode was

8     changed on the iPhone.

9                    MS. McGINNIS:  Okay.

10                   THE COURT:  Okay.  Anything else?

11                   MS. McGINNIS:  No, Your Honor.  That's all I have.

12                   THE COURT:  All right.  I will set you down for a

13    status about a month after the motion to dismiss gets fully

14    briefed.

15                   THE CLERK:  Let's see.  Everyone, how does Friday,

16    June 9th at 9:30 work for you?

17                   MR. GRIESMEYER:  That will be fine.

18                   MS. McGINNIS:  I'm sure that will be fine, Your

19    Honor.

20                   MS. WYNNE:  That's fine.

21                   THE CLERK:  Thank you.

22                   THE COURT:  Is there anything else we should cover

23    this morning?

24                   MS. McGINNIS:  No, Your Honor.  I don't think so.

25                   MR. GRIESMEYER:  No, I don't believe so, Judge.

21

1          THE COURT:  Okay.  Thank you.

2          MS. McGINNIS:  Thank you.

3          MS. WYNNE:  Thank you, Your Honor.

4          MR. GRIESMEYER:  Thank you.

5     (Proceedings concluded.)

1              C E R T I F I C A T E

2

3

4

5              I, Colleen M. Conway, do hereby certify that the

6     foregoing is a complete, true, and accurate transcript of the

7     proceedings had in the above-entitled case before the

8     HONORABLE MANISH S. SHAH, one of the Judges of said Court, at

9     Chicago, Illinois, on March 8, 2017.

10

11

12          */s/ Colleen M. Conway, CSR, RMR, CRR*          *03/08/17*

13              Official Court Reporter                Date
               United States District Court
14             Northern District of Illinois
                    Eastern Division
15

16

17

18

19

20

21

22

23

24

25