IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MIMEDX GROUP, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 1:16-CV-11715 |
| ) | |
| MICHAEL FOX, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
<u>RULE 12(b)(6) MOTION TO DISMISS</u>**

MiMedx is suing Mr. Fox for wrongdoing allegedly committed by *another* employee – but not him. The well-pled facts are simple, and accepted as true for purposes of this motion. Plaintiff complains that Mr. Fox: (a) shared confidential information with his fellow MiMedx employees during the course of his (and their) employment with the Company; and (b) failed to report another employee – Jason Manhke – who allegedly engaged in competitive behavior. Based on these allegations, Plaintiff asserts duplicative claims for breach of contract (Counts I and II) and breach of fiduciary duty (Counts IV and V). Each of these claims fails as a matter of law.

Plaintiff's breach of contract claims are belied by the clear language of the contracts themselves, which are attached as Exhibits 1 and 2 to the Amended Complaint. Neither contract prohibited Mr. Fox from sharing confidential information with his fellow MiMedx employees. And neither contract required Mr. Fox to "tattletale" on another employee who (allegedly) engaged in misbehavior unrelated to Defendant. Simply put, even if Plaintiff's accusations against Mr. Fox were true, his behavior would not constitute a breach of either contract. Counts

I and II of the Amended Complaint therefore fail to state a claim, and should be dismissed under Rule 12(b)(6).

Plaintiff's claims for breach of fiduciary duty (Count IV) and breach of the duty of loyalty (Count V) are duplicative of one another. The "duty of loyalty" is one of several "fiduciary duties" that employees owe to their employer. Plaintiff's breach of fiduciary duty claims were not pled "in the alternative," and each relies on (and expressly incorporates) the same factual allegations that underpin MiMedx's breach of contract claims. Setting aside the duplicative nature of these claims – which alone warrants dismissal under Rule 12(b)(6) – Mr. Fox's alleged conduct would not constitute a breach of his fiduciary duties as a matter of law. Mr. Fox was under no duty whatsoever (fiduciary, contractual, or otherwise) to refrain from sharing confidential information with his fellow MiMedx employees, or to report the alleged misbehavior of another employee. And none of the conduct of which he is accused contains any element of "self-dealing" or benefit to Mr. Fox. Counts IV and V thus fail to state a breach of fiduciary duty claim as a matter of law.

Plaintiff's remaining claims – for "specific performance" (Count III) and "replevin" (Count VI) – pertain to Mr. Fox's efforts to preserve the evidence contained on his MiMedx-issued computer devices. Those devices have been returned to MiMedx, thus rendering the Company's claims moot. Even if these claims were not dismissed as moot, however, Counts III and VI suffer fatal defects that would require their dismissal under Rule 12(b)(6). For all of these reasons, Plaintiff's Amended Complaint should be dismissed in its entirety.

### I. LEGAL STANDARD

A Rule 12(b)(6) motion tests the legal sufficiency of a complaint. *Bontkowski v. First Nat'l Bank of Cicero,* 998 F.2d 459 (7th Cir. 1993). To survive a motion to dismiss for failure to

state a claim upon which relief can be granted, the plaintiff's factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-56 (2007). Thus, a plaintiff is required to plead detailed facts – as opposed to "labels and conclusions" or a mere "formulaic recitation of the elements of a cause of action" sufficient to establish the grounds upon which its claims rest. *Id.* Thus, "the relevant question is whether, assuming the factual allegations are true, the plaintiff has stated a ground for relief that is plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 696 (2009).

When deciding a motion to dismiss under Rule 12(b)(6), the court considers only well-pled allegations of fact in the complaint, and must reject conclusions of fact or law. *Northern Trust Co. v. Peters*, 69 F.3d 123, 129 (7th Cir. 1995) ("For the purpose of testing the trial court's action, well pleaded allegations of the complaint are to be taken as admitted, but mere unsupported conclusions of fact or mixed fact and law are not admitted."), *citing Tamari v. Bache & Co. (Lebanon) S.A.L.,* 565 F.2d 1194, 1198–99 (7th Cir. 1977). Nor may the Court "ignore any facts set forth in the complaint that undermine the plaintiff's claim." *Scott v. O'Grady*, 975 F.2d 366, 368 (7th Cir. 1992). Moreover, documents attached as exhibits to a complaint are "part of the pleading for all purposes." Fed. R. Civ. P. 10(c); *see also, Int'l Mktg., Ltd. v. Archer–Daniels–Midland Co.,* 192 F.3d 724, 729 (7th Cir.1999). When the allegations in a complaint are contradicted by an exhibit to the complaint, "[i]t is a well-settled rule that…the exhibit trumps the allegations." *Northern Indiana Gun & Outdoor Shows, Inc. v. City of S. Bend,* 163 F.3d 449, 454-55 (7th Cir. 1998) (citing *Graue Mill Dev. Corp. v. Colonial Bank & Trust Co. of Chicago*, 927 F.2d 988, 991 (7th Cir. 1991)).

Thus, the exhibits a plaintiff attaches to its complaint "may permit the court to determine that the plaintiff is not entitled to judgment" as a matter of law. *Hecker v. Deere & Co.,* 556 F.3d 575, 588 (7th Cir. 2009). Indeed, a plaintiff can easily "plead [it]self out of court" by attaching documents to the complaint that belie its allegations and defeat its claims. *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010). That is precisely what MiMedx has done here.

## II. ARGUMENT

### A. COUNTS I AND II OF THE AMENDED COMPLAINT FAIL TO STATE A CLAIM FOR "BREACH OF CONTRACT," AND SHOULD BE DISMISSED

Plaintiff alleges Mr. Fox has breached two contracts: his "Confidentiality/Non-Solicitation Agreement" (Count I) and "Non-Competition Agreement" (Count II). (Dkt. No. 18, pp. 13-14). Based upon the clear language of the agreements themselves – attached as Exhibits 1 and 2 to the Amended Complaint – the conduct complained of by MiMedx does not constitute a breach of *either* contract. Counts I and II of the Amended Complaint thus fail to establish the elements for a breach of contract claim, and should be dismissed under Rule 12(b)(6).[1]

#### 1. Count I of Plaintiff's Amended Complaint Should be Dismissed

In Count I of its Amended Complaint, MiMedx alleges that Mr. Fox breached "Sections 2 and 3" of his Confidentiality Agreement by: (a) disclosing confidential information and trade secrets to his fellow MiMedx employees; and (b) failing to report the alleged misconduct of

---

[1] The required legal standards for a breach of contract claim are well-settled. MiMedx was required to assert well-pled allegations of fact (not conclusions of fact or law) establishing each of the following elements: "(1) the existence of a valid and enforceable contract; (2) plaintiff's performance of all required contractual conditions; (3) defendant's breach of the terms of the contract; and (4) damages resulting from the breach." *F.D.I.C. v. Masarsky*, 968 F. Supp. 2d 915, 922 (N.D. Ill. 2013) (citations omitted). *See also, Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 560 (7th Cir. 2012) ("elements of a breach of contract claim in Illinois are the standard ones of common law"). Where a complaint does not sufficiently allege a claim for breach of contract, it must be dismissed. *Id.* at 924.

4

another employee (Jason Mahnke). (Dkt. No. 18, ¶¶ 29-32, 43).[2] Assuming, *arguendo,* that MiMedx's allegations were true, the complained-of conduct would not violate either Section 2 or Section 3 of the Confidentiality Agreement.

> a. **The alleged conduct by Mr. Fox would not breach "Section 2" of the Confidentiality Agreement**

Section 2 of the Confidentiality Agreement concerns "employment," and provides as follows:

> Employee agrees to faithfully perform the duties assigned to Employee, and will not engage in any other employment or business activity while employed by Company which would interfere with Employee's full-time performance of Employee's duties for Company, or cause a conflict of interest. Employee covenants that Employee is not subject to any agreements with a prior employer restricting Employee's ability to work for Company. Employee further covenants that Employee does not possess any property or Confidential Information belonging to any prior or existing employer for use on behalf of Company. Employee agrees to abide by all of the Company's policies and procedures, which may be amended from time to time.

(Dkt. No. 18, Ex. 2, p. 1, at § 2).

The clear language of Section 2 of the Confidentiality Agreement does not cover ***any*** of the complained-of conduct in this case. Section 2 does not address MiMedx's confidential information in any respect, and it certainly did not prohibit Mr. Fox from sharing information with his fellow MiMedx employees. Nor did Section 2 require Mr. Fox to report the alleged misconduct of other employees.

Plaintiff tries to escape the limitations of its own contract by accusing Mr. Fox of "[failing] to abide by the provisions of MiMedx's Code of Conduct." (Dkt. 18, ¶ 22). Thus,

---

[2] Plaintiff also alleges Mr. Fox breached "Section 4" of the Confidentiality Agreement because he "failed to return" his Company-issued electronic devices to MiMedx. (*Id.*, ¶ 44). As this Court is already aware, Mr. Fox did not "refuse" to return those devices – and, in fact, the devices have already been returned to MiMedx. (Dkt. Nos. 28, 32). As explained more fully below, Plaintiff's breach of contract claim premised on those devices is now moot, and should be dismissed accordingly. (*See,* Section II(C), *infra.*).

Plaintiff's breach-of-contract theory in Count I is *not* premised on a breach of the Confidentiality Agreement itself, but rather on alleged violation of MiMedx's internal "Code of Conduct." (*Id.*). But even if one were to accept the conclusory premise that Mr. Fox violated the Code of Conduct, Plaintiff's breach-of-contract claim would nonetheless fail for at least two reasons.

First, internal employment policies – such as employee handbooks and "codes of conduct" – do not constitute "contracts" as a matter of Illinois law. *See*, *e.g., Miller v. Illinois Bell Tel. Co.*, 157 F. Supp. 3d 749, 758 (N.D. Ill. 2016) (employer's "Code of Business Conduct" was not a contract and did not create contractual rights); *see also Enis v. Cont'l Illinois Nat. Bank & Trust Co. of Chicago*, 582 F. Supp. 876, 878 (N.D. Ill. 1984), aff'd *sub nom*, *Enis v. Cont'l Illinois Nat. Bank & Trust Co. of Illinois*, 795 F.2d 39 (7th Cir. 1986) (In Illinois, the general rule is that an employment handbook is not part of an employment contract); *Belline v. K-Mart Corp.*, 940 F.2d 184, 190 (7th Cir. 1991) (disclaimer negates any contract claim); *Sample v. Aldi Inc.*, 1994 WL 48780, at *13 (N.D. Ill. Feb. 15, 1994) ("A number of Illinois cases have found the existence of disclaiming language in an employee handbook to preclude the formation of a contract"). This long-standing legal precedent is directly on point, as the MiMedx "Code of Conduct" contains a clear and unequivocal disclaimer: "***the Code does not, in any way, constitute an employment contract*** or an assurance of continued employment." (Dkt. No. 18, Ex. 4) (emphasis added). Having expressly affirmed that the "Code of Conduct" is *not* a contract, MiMedx cannot base a breach-of-contract claim on the alleged violation of that internal policy.

Second, even if MiMedx's internal "Code of Conduct" could be viewed as a contractual agreement – and as a matter of law, it cannot – the merger clause in the Confidentiality Agreement would preclude any reference to, or incorporation of, that agreement. More

6

specifically, the merger clause (titled "Entire Agreement and Modification") expressly states, "[t]his Agreement represents the entire understanding between Employee and the Company on the matters addressed herein and may not be modified, changed or altered by any promise or statement by the Company other than in writing signed by Employee and an authorized representative of Company." (Dkt. No. 18, Ex. 2, p. 2, § 11). In this case, neither the Code of Conduct nor the acknowledgement form were signed by MiMedx (*see id.*, Exs. 3-4), and the merger clause therefore precludes incorporating the Code into the Confidentiality Agreement.[3]

### b. The alleged conduct by Mr. Fox would not breach "Section 3" of the Confidentiality Agreement

Section 3 of the Confidentiality Agreement concerns the protection of confidential information, and reads in relevant part:

> Employee agrees that during employment with the Company…Employee shall hold all Confidential Information in confidence and shall not directly or indirectly divulge or make use of, copy, publish, summarize or remove any Confidential Information or Trade Secrets *outside of employment with Company* without prior written consent of the Company, except as otherwise required [under circumstances not present here].

(*Id.* at § 3) (emphasis added).

None of the complained-of conduct at issue in this case – neither Mr. Fox's alleged disclosure of confidential information to *fellow MiMedx employees*, nor his failure to report alleged misconduct by another employee – would constitute a breach of Section 3 of the

---

[3] Under Illinois law, the Court "must interpret the words of the contract with their common and generally accepted meanings" and "construe the words of a contract within the context of the contract as a whole." *Hoenig v. Karl Knauz Motors, Inc.*, 983 F. Supp. 2d 952, 962 (N.D. Ill. 2013). Moreover, "[m]ere reference to another contract or document is not sufficient to incorporate its terms into a contract. There must be an express intent to incorporate…" *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 666 (7th Cir. 2002). *See also Martinez v. Utilimap Corp.*, 2015 WL 3932151, at *5 (S.D. Ill. June 25, 2015) (finding that an employee handbook was not a part of a separate agreement between the employer and employee because (a) the handbook required a separate signature from the agreement, (b) the agreement contained a merger clause, and (c) the handbook could be unilaterally modified whereas modification of the agreement required a writing signed by both parties).

7

Confidentiality Agreement. Even if true, Mr. Fox's disclosure of confidential information to "then-current employees" could not be considered "outside of [his] employment with MiMedx," and would not constitute a breach of the Confidentiality Agreement as a matter of law.

### 2. Count II of Plaintiff's Amended Complaint should be Dismissed

In Count II of the Amended Complaint, Plaintiff alleges Mr. Fox breached "Section 1(c)" of his Non-Competition Agreement. (Dkt. No. 19, ¶ 49). Section 1(c) reads as follows:

> The Employee agrees that while employed by the Company, Employee will faithfully devote Employee's best efforts to advance the interests of the Company and will not directly or indirectly, on Employee's own behalf or another's behalf, engage in any manner in any business of the type described in subsection 1(a) other than as an employee of the Company.
>
> (*Id.* at Ex. 1, p. 1).

According to Plaintiff, Mr. Fox breached Section 1(c) of the Non-Competition Agreement *not* by engaging in competitive business activities, but rather by: (a) disclosing confidential information to his fellow MiMedx employees; and (b) failing to report *Mr. Mahnke's* improper conduct. (*Id.* at ¶ 49). Based on a clear reading of the Non-Competition Agreement, the conduct of which MiMedx complains would not constitute a breach of Section 1(c). In fact, the Amended Complaint is completely devoid of any allegation that Mr. Fox himself engaged in any competitive activity vis-à-vis MiMedx. Rather, the allegations regarding unfair competition all pertain to activity engaged in by *other employees* – specifically, Mr. Mahnke and Mr. Kruchoski. (*Id.*, ¶¶ 31, 35-36, 49(b)).

Thus, neither the Confidentiality Agreement nor the Non-Competition Agreement prohibited Mr. Fox from disclosing confidential information to his fellow MiMedx employees; and neither agreement required Mr. Fox to report allegedly improper conduct committed by third parties. The Amended Complaint thus fails to state a claim for breach-of-contract, and Counts I and II should be dismissed pursuant to Rule 12(b)(6).

B. **COUNTS IV AND V OF THE AMENDED COMPLAINT ARE DUPLICATIVE, AND FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

In Count IV of the Amended Complaint, Plaintiff attempts to state a "breach of fiduciary duty" claim against Mr. Fox. (Dkt. No. 18, p. 16). In Count V, Plaintiff alleges Mr. Fox breached his "duty of loyalty" to MiMedx. (*Id.*, p. 17). Plaintiff's claims in Counts IV-V are duplicative of one another, and also duplicative of its breach of contract claims. Where a claim is not pled in the alternative and relies on the same factual allegations asserted in another count, the claim is duplicative and should be dismissed. *Calderon v. Sw. Bell Mobile Sys.*, *LLC*, 2003 WL 22340175, at *6 (N.D. Ill. Oct. 10, 2003) (dismissing a breach of fiduciary duty claim based on allegations duplicative of contract claim).

In this case, Plaintiff's claims for breach of fiduciary duty, breach of the duty of loyalty, and breach(es) of contract ***each rely on the <u>same</u> alleged conduct:*** (a) Mr. Fox's disclosure of confidential information to his fellow MiMedx employees; and (b) his failure to report Mr. Mahnke's allegedly competitive activities. (*Cf.* Dkt. No. 18, ¶¶ 43(a)-(b), 49(a)-(b), 61(a)-(b), and 66(a)-(b)). The material allegations in each count are ***identical***, and none of the claims are pled in the alternative – to the contrary, the first paragraph of each Count carefully "realleges each of the allegations in the foregoing paragraphs" as if fully set forth therein. (*Id.* at ¶¶ 41, 47, 58, 64). Plaintiff's claims for breach of fiduciary duty and breach of the duty of loyalty are duplicative of its claims for breach of contract (and of themselves) and should dismissed on this ground alone. *See Calderon*, 2003 WL 22340175, at *6. *See also, Reger Dev.,* 592 F.3d at 764 (Plaintiff has "pled itself out of court" in Counts I, II, IV and V).

Setting aside these pleading defects, the conduct of which Plaintiff complains – ***i.e., that <u>other employees</u> engaged in misconduct*** – would not give rise to a breach of fiduciary duty claim against Mr. Fox. Under Illinois law, to state a claim for breach of fiduciary duty, a

9

plaintiff must plead facts sufficient to establish "that a fiduciary duty exists, that the fiduciary duty was breached, and that such breach proximately caused the injury of which the plaintiff complains." *Avila v. CitiMortgage, Inc.*, 801 F.3d 777 (7th Cir. 2015) (citations omitted).

Thus, an employee cannot be found to have breached his/her fiduciary duties unless the employee engages in "self-dealing" conduct that **benefits** the employee, to the detriment of the employer. *See*, *e.g.*, *MJ & Partners Restaurant Ltd. Partnership v. Zadikoff*, 10 F.Supp.2d 922, 931 (N.D. Ill. 1998) (acts of misappropriation and solicitation); *Dames & Moore v. Baxter & Woodman, Inc.*, 21 F.Supp.2d 817, 823 (N.D. Ill. 1998) (misappropriation and solicitation of customer for employee's own benefit); *TMF Tool Co., Inc. v. Siebengartner*, 899 F.2d 584, 589 (7th Cir. 1990) (commingling funds in order to pay personal debts); *LaSalle Bank Lake View v. Seguban*, 937 F.Supp. 1309, 1324 (N.D. Ill. 1996) (embezzlement); *Ladenberger v. Gen. Signal Pump Group/Aurora Pump*, 2001 WL 709488, at *5 (N.D. Ill. June 22, 2011) (employee took advantage of knowledge acquired in business to generate self-profit at expense of employer). Under no circumstances is an employee liable for the actions of another employee, or for "not reporting" the alleged misconduct of another employee, as Plaintiff alleges here. To the contrary, Illinois employees are granted wide latitude in conducting themselves within the confines of their fiduciary duties. *Radiac Abrasives, Inc. v. Diamond Technology, Inc.*, 532 N.E.2d 428, 433-34 (Ill. Ct. App. 1988) ("An employee may even go so far as to form a rival corporation and outfit it for business while still employed by the prospective competitor" without breaching his fiduciary duties).

In this case, Plaintiff does not allege that Mr. Fox engaged in *any* form of "self-dealing," or took *any* action that benefitted himself to the detriment of MiMedx. Instead, Plaintiff seeks to expand the scope of an employee's fiduciary duties to cover the conduct of third-parties – well

10

beyond the fiduciary duties of an individual employee recognized under Illinois law. Because Mr. Fox has not engaged in any self-dealing, the conduct of which MiMedx complains is insufficient to state a claim for breach of fiduciary duty as a matter of law. Counts IV and V of the Amended Complaint should therefore be dismissed under Rule 12(b)(6).

  C. **PLAINTIFF'S REMAINING CLAIMS – FOR "REPLEVIN" (COUNT VI) AND "SPECIFIC PERFORMANCE" (COUNTS III AND I) – ARE MOOT (AND FAIL TO STATE A CLAIM IN ANY EVENT)**

Plaintiff has alleged several duplicative claims regarding Mr. Fox's alleged "refusal" to return his MiMedx-issued computer devices to the Company. In Count VI of the Amended Complaint, Plaintiff seeks an order of "replevin" for the return of those devices (Dkt. No. 18, pp. 16-17). Plaintiff seeks the identical relief in its purported claim for "specific performance" in Count III. (*Id.*, p. 15).[4] Each of these claims have been rendered "moot" – and must be dismissed under Rule 12(b)(6) – because Mr. Fox has returned the property upon which those claims are based. (Dkt. No. 32).[5]

By definition, "replevin" is a statutory remedy for the ***recovery of property*** by one who is entitled to possession. 735 ILCS 5/19-101 (emphasis added).[6] If a plaintiff is already in possession of the property, it is axiomatic that there is nothing to "recover" and the claim fails as a matter of law. *See, Balboa Capital Corp. v. Graphic Pallet & Transp., Inc.*, 2015 WL 514987,

---

[4] In Count I of the Amended Complaint, Plaintiff alleges that Mr. Fox's purported "refusal" to return the devices constituted a breach of "Section 4" of the parties' Confidentiality Agreement – Dkt. No. 18, ¶ 44 – which MiMedx seeks to redress through the equitable remedy of "specific performance." In this regard, Plaintiff's breach-of-contract claim is duplicative of the claims it has asserted in Counts III and VI.

[5] There is no dispute that Mr. Fox has fully complied with the Court's preliminary injunction order. Even if Mr. Fox had violated that order (and he did not), Plaintiff's remedy would be to enforce the injunction through an order of contempt – not a claim for replevin or specific performance.

[6] Similarly, in Count III Plaintiff seeks an order of specific performance, "requiring Fox to…return his MiMedx issued electronic devices to MiMedx." (Dkt. 18, ¶ 56). If the devices have already been returned to MiMedx, there is nothing for Mr. Fox to "specifically perform."

11

at *4 (N.D. Ill. Feb. 6, 2015) (dismissing claim for replevin where property that was the subject of claim was returned to claimant); *Peco Pallet, Inc. v. Nw. Pallet Supply Co.*, 2016 WL 5405107, at *5 (N.D. Ill. Sept. 28, 2016) ("The purpose of a replevin claim is to recover one's property. The Court thus finds that because [the claimant has recovered the property] at issue, its replevin claim is moot"). Plaintiff's specific performance claim is duplicative of its replevin claim, and therefore moot for the same reasons. *See AT&T Capital Services, Inc. v. Shore Financial Services, Inc.*, 2010 WL 2649874, at *18 (N.D. Ill. June 30, 2010) ("the claim for replevin would accomplish the purpose of repossessing the equipment…Thus, [the] motion to dismiss [the specific performance remedy] will be granted").

Because Plaintiff has in its possession the very property which it seeks to recover through its claims for replevin and specific performance, those claims are moot and should be dismissed. Even if those claims were not moot, the facts alleged in the Amended Complaint fail to state a cause of action for either specific performance or replevin, and Counts III and VI would need to be dismissed under Rule 12(b)(6). For starters, Count III should be dismissed because "specific performance is a remedy, not a cause of action." *LaSalle Nat. Bank v. Metro. Life Ins. Co.*, 18 F.3d 1371, 1376 (7th Cir. 1994); *see also Lagen v. United Cont'l Holdings, Inc.*, 920 F.Supp.2d 912, 919 (N.D. Ill. 2013) (dismissing specific performance on the grounds that "specific performance is not an independent cause of action"); *Artistic Framing, Inc. v. Hosp. Res., Inc.*, 2013 WL 2285797, at *2 (N.D. Ill. May 23, 2013) (specific performance is not a separate cause of action, but an equitable remedy for breach of contract).[7]

---

[7] Plaintiff's election of "specific performance" as its remedy (which relief Plaintiff no longer requires, by virtue of the Court's preliminary injunction order), also defeats its breach of contract claim related to "Section 4" of the Confidentiality Agreement. *See, e.g., JNS Power & Control Sys., Inc. v. 350 Green, LLC*, 624 F. App'x 439, 445 (7th Cir. 2015). The "law of the case" doctrine provides that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages
*– Footnote Continued Next Page…*

Count VI is also deficient as a matter of law because Plaintiff did not file a verified pleading in support of its claim. This Court requires strict adherence to each of the explicit statutory elements of a claim for replevin, *including* the statutory mandate that "[a]n action of replevin shall be commenced by the filing of a verified complaint." 735 ILCS 5/19-104. As this Court recently explained, "[s]ince the Replevin Act sets forth specifically what allegations shall constitute a cause of action, the ordinary rules of pleading must yield to the explicit requirements of the statute." *WG Technologies, Inc. v. Thompson*, 2013 WL 1943310 at *3 (N.D. Ill. May 8, 2013). There is no question that the Amended Complaint is not verified; nor can there be any question that Plaintiff has failed to satisfy the statutory requirements for asserting a claim under the Illinois replevin statute.

Although Plaintiff's lawyer may argue (as she did during the March 8, 2017, preliminary injunction hearing) there is "no mechanism" for filing a verified complaint in federal court, she is wrong. Indeed, Rule 11 expressly contemplates the filing of verified pleadings when required by statute: "a pleading need not be verified" or accompanied by affidavit "*[u]nless* a rule or statute specifically states otherwise." Fed. R. Civ. P. 11(a) (emphasis added). In this case, the Illinois replevin statute expressly requires the filing of a verified pleading, and this Court not only acknowledges that requirement, but strictly enforces it. *Combined Metals of Chicago Ltd. P'ship v. Airtek, Inc.*, 985 F. Supp. 827, 831 (N.D. Ill. 1997) (***dismissing claim for replevin because claim was not verified***); *see also Metal Forge Co. v. Vogel Tool & Die Corp.*, 1995 WL 702628, at *2 (N.D. Ill. Nov. 27, 1995) (compliance with procedural requirements for claim for replevin

of the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983). In this case, the Court has decided that specific performance, and not monetary damages, would be the appropriate remedy for any purported breach of the Confidentiality Agreement. (Dkt. No. 32). Plaintiff is therefore unable to establish the necessary element of "damages," and its breach-of-contract claim in Count I should be dismissed accordingly.

includes filing of a verified complaint); *ITT Commercial Fin. Corp. v. Tuf Racing Prod., Inc.*, 1995 WL 57601, at *1 (N.D. Ill. Jan. 27, 1995) (Illinois replevin statute requires a verified complaint). Plaintiff's failure to follow the statutory mandate of the Illinois replevin act is fatal to its claim, and Count VI must be dismissed pursuant to Rule 12(b)(6).

### III. CONCLUSION

WHEREFORE, for all of the reasons set forth above, Defendant Michael Fox respectfully requests that this Court enter an Order under Fed. R. Civ. P. 12(b)(6) dismissing with prejudice all claims asserted in Plaintiff's First Amended Complaint, and awarding to Defendant any such other and further relief as the Court deems just and proper.

Dated: March 17, 2017	Respectfully submitted,

                                                 */s/ Christopher S. Griesmeyer*
Christopher S. Griesmeyer (ARDC No. 6269851)
Adam C. Maxwell (ARDC No. 6306534)
Greiman, Rome & Griesmeyer, LLC
Two North LaSalle, Suite 1601
Chicago, Illinois 60602
Bus: (312) 428-2750
Fax: (312) 332-2781
cgriesmeyer@grglegal.com
amaxwell@grglegal.com

**CERTIFICATE OF SERVICE**

    I hereby certify that on March 17, 2017, I electronically filed the foregoing *Memorandum of Law in Support of Defendant's Rule 12(b)(6) Motion to Dismiss*, with the Clerk of the Court via the CM/ECF System, which will send notification of such filing to those registered to receive electronic notices via email transmission at the email addresses provided by them:

| | |
|---|---|
| Ami N. Wynne | Joseph D. Wargo |
| Jason G. Marsico | Shanon J. McGinnis |
| SIDLEY AUSTIN LLP | WARGO & FRENCH, LLP |
| One South Dearborn | 999 Peachtree Street, NE, 26th Floor |
| Chicago, IL 60603 | Atlanta, GA 30309 |
| awynne@sidley.com | jwargo@wargofrench.com |
| jmarsico@sidley.com | smcginnis@wargofrench.com |

          /s/ Christopher S. Griesmeyer
        Christopher S. Griesmeyer (ARDC No. 6269851)
        GREIMAN, ROME & GRIESMEYER, LLC
        Two North LaSalle, Suite 1601
        Chicago, Illinois 60602
        Bus: (312) 428-2750
        Fax: (312) 332-2781
        cgriesmeyer@grglegal.com