UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MIMEDX GROUP, INC.,

    Plaintiff,

  v.

MICHAEL FOX,

    Defendant.

No. 16 CV 11715

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

MiMedx Group, Inc., brings various contract and tort claims against Michael Fox, a former vice president of the company. Fox moves to dismiss all claims against him. For the following reasons, Fox's motion to dismiss is granted in part, denied in part.[1]

**I. Legal Standards**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain factual allegations that plausibly suggest a right to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). The court must accept all factual allegations as true and draw all reasonable inferences in the plaintiff's favor, but the court need not accept legal conclusions or conclusory allegations. *Id.* at 678–79.

---

[1] Diversity jurisdiction exists. MiMedx is incorporated in Florida and headquartered in Georgia, and Fox is a citizen of Illinois.

**II.     Background**

MiMedx Group, Inc., is a regenerative medicine company selling medical products throughout the United States. Michael Fox began working for MiMedx as a Sales Director in 2012. Prior to and as a condition of his employment with MiMedx, Fox executed a Non-Competition Agreement and a Confidentiality and Non-Solicitation Agreement. Fox became an Area Vice President in 2013, reporting directly to Mike Carlton, MiMedx's Vice President of Global Sales. Fox supervised more than 50 MiMedx employees, including regional managers and account executives and had access to MiMedx's trade secrets and confidential business sales information concerning its customers, including accounts receivables reports, sales reports (detailing the sale of every MiMedx product to hospitals and medical facilities), commission reports, forecasts, quotas, and other reports concerning MiMedx's business, product, and sales strategies. In January 2016, Fox assumed the newly-formed position of Vice President, Federal & Academic Institutions, with nationwide responsibility. He continued reporting directly to Carlton and to have access to MiMedx's trade secrets and confidential business sales information, but now on a national scale.

In early 2015, Jess Kruchoski, one of Fox's Regional Sales Directors, began exploring the option of selling non-MiMedx products. Around this time, Fox sent a confidential report detailing nationwide volumes and total sales to Kruchoski and several other MiMedx employees, stating: "DO NOT FORWARD TO ANYONE! FOR YOUR EYES ONLY." The report contained data outside the employees' regions of responsibility that they were not authorized to see. A few days after receiving the

report—and without the knowledge or approval of MiMedx's Chairman and CEO (as required by company policy)—Kruchoski executed an Independent Distributor Agreement with a MiMedx competitor. Kruchoski made non-MiMedx sales to at least three Veterans' Affairs hospitals listed on the report from Fox, all of which were outside of Kruchoski's assigned sales region. (Fox also sent Kruchoski another similar report in October 2016.)

MiMedx also alleges that Fox told Jason Mahnke, one of Fox's subordinates, that Mahnke could sell non-MiMedx products for a competitor selling wound care medical products. Fox told Mahnke it was permissible for him to sell non-MiMedx products and encouraged him to do so, even though Mahnke did not have approval from MiMedx's Chairman and CEO. Fox also did not report Mahnke's sale of non-MiMedx products.

MiMedx terminated Fox's employment on December 29, 2016, and filed this lawsuit the same day. [1].[2] MiMedx filed an amended complaint in February 2017, bringing claims for breach of the Confidentiality and Non-Solicitation Agreement (Count I), breach of the Non-Competition Agreement (Count II), specific performance (Count III), breach of fiduciary duty (Count IV), breach of the duty of loyalty (Count V), and a claim for replevin (Count VI), asserting that Fox had not returned three company devices (a laptop, iPad, and iPhone) since his termination despite MiMedx's repeated requests. [18]. Shortly thereafter, MiMedx moved for an order of replevin, or in the alternative for a preliminary injunction, for Fox to return

---

[2] Bracketed numbers refer to entries on the district court docket.

3

the devices. [24]. The motion was granted in part, and Fox was ordered to return the devices. [32]. Fox now moves to dismiss the amended complaint. [34].

**III. Analysis**

    **A. Choice of Law**

MiMedx raises a choice of law issue, invoking a Florida governing law clause in both agreements. Fox (who cited Illinois law) responds that MiMedx waived this clause by citing Illinois law in support of its preliminary injunction, that MiMedx should be judicially estopped from invoking Florida law, and that MiMedx has failed to identify an actual conflict between Illinois and Florida law. Fox further argues that the choice of law provision only applies to construction of the contract, not breach of contract claims arising from the agreements.

When sitting in diversity, federal courts apply the forum state's choice-of-law rules. *Spitz v. Proven Winners N. Am., LLC*, 759 F.3d 724, 729 (7th Cir. 2014). Illinois holds that a choice-of-law determination is required only if the party seeking a choice-of-law determination has established an actual conflict between state laws. *Id.* (citing *Bridgeview Health Care Ctr., Ltd. v. State Farm Fire & Cas. Co.*, 2014 IL 116389, ¶ 14 (2014)). MiMedx has raised the choice-of-law issue and seeks to apply Florida law, but MiMedx has not identified any actual conflict between Illinois and Florida law that would make a difference in the outcome of this motion. *See Bridgeview*, 2014 IL 116389, ¶ 14 ("The party seeking the choice-of-law determination bears the burden of demonstrating a conflict, i.e., that there exists a difference in the law that will make a difference in the outcome."). In these circumstances, no choice-of-law determination is required, and I will apply Illinois

4

law. *See Spitz*, 759 F.3d at 729 (no choice-of-law determination was required, and the district court was correct to apply Illinois law, where plaintiff failed to identify the purported conflict between Illinois and California law).

**B.  Breach of Contract**

1.  *Confidentiality and Non-Solicitation Agreement*

To state a claim for breach of contract, a plaintiff must allege: (1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) defendant's breach; and (4) resultant damages. *Reger Dev., LLC v. National City Bank*, 592 F.3d 759, 764 (7th Cir. 2010). Fox argues that his alleged conduct does not amount to breach of the Confidentiality and Non-Solicitation Agreement.

The Confidentiality and Non-Solicitation Agreement required Fox to "faithfully perform the duties assigned to [him]," "to abide by all of the Company's policies and procedures," and to "not directly or indirectly divulge or make use of, copy, publish, summarize or remove any Confidential Information or Trade Secrets outside of employment with Company without prior written consent." [18-2] §§ 2–3. It also required Fox to return all MiMedx property within three days of the end of his employment. [18-2] § 4. MiMedx asserts that Fox breached the Confidentiality Agreement by sending confidential reports to MiMedx employees who were unauthorized to see them, by ignoring company policy on reporting conflicts of interest, and by failing to return the company's devices upon the termination of his employment. Fox argues that the Confidentiality Agreement did not prevent his disclosure of confidential information to other MiMedx employees, did not require

5

him to report other employees' misconduct, and did not incorporate the terms of MiMedx's Code of Conduct. The Code of Conduct directed all employees "to make prompt and full disclosure of <u>any</u> potential conflict of interest" to the employee's immediate supervisor (who would then transmit that information up through the chain of authority to the Chairman and CEO, who decided whether a conflict exists and if so, any corrective action to take). [18-3] at 17, 19. The Code of Conduct also lists business dealings with competitors of MiMedx as an example conflict of interest. [18-3] at 18.

MiMedx argues that Fox did not report Mahnke's sales to a competitor as a conflict of interest, in violation of company policy expressed in its Code of Conduct, and therefore that Fox breached the Confidentiality Agreement's requirement that he abide by all company policies. Fox contends that internal employment policies do not create contractual rights, the Code includes a disclaimer that it is not an employment contract, [18-4] at 2, and that the Code cannot be incorporated into the Confidentiality Agreement, which contains a merger clause. Fox cites to a few cases holding that internal policies (such as a code of business conduct or employee handbook) do not themselves create contractual rights. These cases explain that "[i]n Illinois, the general rule is that an employment handbook is not part of an employment contract" because it is "a gratuity which merely serves as a code of conduct and to define general duties" but does not alter the at-will relationship between the employer and employee. *Enis v. Continental Ill. Nat'l Bank & Trust Co. of Chicago*, 582 F.Supp. 876, 878 (N.D. Ill. 1984), *aff'd sub nom. Enis v. Continental*

6

*Ill. Nat'l Bank & Trust Co. of Ill.*, 795 F.2d 39 (7th Cir. 1986); *see Miller v. Illinois Bell Tel. Co.*, 157 F.Supp.3d 749, 758 (N.D. Ill. 2016) (employee failed to state statutory wage payment claim, which required a valid employment contract, because employer's code of business conduct was not an employment contract and contained a disclaimer to that effect). But as recognized in *Enis*, there is an exception to this general rule "where another document exists which can be construed as an express employment contract and the contract can be construed as subject to the 'policies' of the employer. In this situation, the personnel policies contained in an employee handbook will be deemed incorporated into the contract." *Enis*, 582 F.Supp. at 879 (citing *Piper v. Board of Trustees of Cmty. Coll. Dist. No. 514*, 99 Ill.App.3d 752 (4th Dist. 1981)). Although Fox argues that mere reference to another contract or document is not sufficient to incorporate its terms into a contract because there must be "an express intent to incorporate," *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 666 (7th Cir. 2002), this agreement expressly required Fox to abide by company policies. The Code of Conduct, which outlines MiMedx's policies, required disclosure of any potential conflict of interest to be transmitted up the chain of authority to the company's Chairman and CEO. MiMedx has sufficiently alleged that Fox breached the Confidentiality Agreement's requirement that he abide by company policies when he failed report a subordinate's conflict of interest.

MiMedx also alleges that Fox disclosed confidential information to unauthorized MiMedx employees like Kruchoski. Fox contends that the

Confidentiality Agreement prohibited only disclosure of confidential information "outside of employment with Company," [18-2] § 3, meaning that he was prohibited from disclosing information outside MiMedx but not from disclosing it to other MiMedx employees. In support of his interpretation, Fox looks to the agreement's definition of "Confidential Information" as "information about the Company . . . which is not generally known outside of the applicable entity." [18-2] § 1(d).

The interpretation of an unambiguous contract is a question of law appropriate for determination on a motion to dismiss, but the interpretation of an ambiguous contract is a question of fact. *Quake Constr., Inc. v. American Airlines, Inc.*, 141 Ill.2d 281, 288–89 (1990) ("If the language of an alleged contract is ambiguous regarding the parties' intent, the interpretation of the language is a question of fact which a circuit court cannot properly determine on a motion to dismiss."). Whether a contract is ambiguous—i.e., whether it is reasonably susceptible to more than one meaning—is a question of law for the court. *Morningside N. Apartments I, LLC v. 1000 N. LaSalle, LLC*, 2017 IL App (1st) 162274, ¶ 15. At this stage of the case, Fox has not shown that "outside of employment with Company" unambiguously means outside of Fox's employment with MiMedx, as opposed to outside the scope of an employee's area of responsibility within MiMedx. The definition of Confidential Information refers, in part, to "information about the Company, its parent and the other subsidiaries of its parent and their respective employees, Customers, products, patients and/or business relationships with other parties which is not generally known outside of the

applicable entity, which Employee learns of . . . in connection with Employee's employment with the Company, and which would be useful to competitors of the applicable entity." [18-2] § 1(d). Fox's argument implies that the "applicable entity" means MiMedx, but the agreement defines and refers to MiMedx as the "Company." [18-2] at 2. "Applicable entity" does not have a separate definition in the agreement, and Fox does not explain how "applicable entity" specifically means MiMedx and not something else—for example, a separate division or unit of organization within MiMedx. Therefore, the Confidentiality Agreement is ambiguous on this point, and Fox has not shown that MiMedx's interpretation is unavailing as a matter of law. This theory of breach survives Fox's motion to dismiss.[3]

Fox also argues that MiMedx's argument that he breached the confidentiality agreement by failing to return his electronic devices is now moot. That argument is addressed in relation to MiMedx's specific performance and replevin claims.

## 2. *Non-Competition Agreement*

Fox also moves to dismiss the breach of contract claim based on the Non-Competition Agreement, which required that during his employment, Fox "will faithfully devote [his] best efforts to advance the interests of the Company and will not directly or indirectly, on Employee's own behalf or another's behalf, engage in any manner in any business" competing with MiMedx. [18-1] § 1(c). Fox contends that this provision only prevents him competing with MiMedx and there is no

---

[3] MiMedx argues that under the Code of Conduct, conduct noncompliant with company policy is "outside the scope of employment." *See* [18-3] at 6, ¶ 1. This, however, is extrinsic evidence that is not considered in determining whether an agreement is ambiguous on its face.

9

allegation that he competed with MiMedx. In the alternative, Fox argues that there is no allegation that he failed to devote his best efforts to his job. MiMedx does not assert that Fox himself competed with the company but maintains that this provision involves independent clauses that obliged him to both (1) devote his "best efforts" to advance MiMedx's interest and (2) to not compete with MiMedx.

MiMedx's interpretation is correct. The Non-Competition Agreement unambiguously required Fox to both devote his "best efforts" to advance MiMedx's interest and to not compete with MiMedx. MiMedx has alleged that Fox failed to devote his "best efforts" to advance the company's interests by turning a blind-eye to and encouraging a subordinate's conflict of interest and by disclosing sensitive information to unauthorized employees, who then used that information to compete with MiMedx. MiMedx has sufficiently alleged a breach of contract claim based on the Non-Competition Agreement.

### C. Breach of Fiduciary Duty and the Duty of Loyalty

Fox moves to dismiss the breach of fiduciary duty and breach of the duty of loyalty claims against him (Counts IV and V) as duplicative of each other and the breach of contract claims. Fox also contends that these claims fail because MiMedx fails to allege that Fox engaged in self-dealing for his own benefit. MiMedx responds that its claims are not duplicative, are not pled in the alternative, and that self-dealing is not required to allege breach of fiduciary duty or the duty of loyalty.

MiMedx's claims for breach of fiduciary duty and breach of the duty of loyalty are duplicative. To state a claim for breach of fiduciary duty, a plaintiff must allege: (1) that a fiduciary duty exists; (2) that the fiduciary duty was breached; and (3)

10

that such breach proximately caused plaintiff's injury. *Lawlor v. North Am. Corp. of Illinois*, 2012 IL 112530, ¶ 69. The duty of loyalty is a fiduciary duty owed by both employees and corporate officers, *id.*, although (as MiMedx points out) corporate officers owe a heightened fiduciary duty of loyalty to their corporate employer. *Enterprise Recovery Sys., Inc. v. Salmeron*, 401 Ill.App.3d 65, 81 (1st Dist. 2010). But the elements and relief for these claims are the same, as is the underlying conduct. MiMedx's claim for breach of the duty of loyalty is therefore dismissed as duplicative.

MiMedx's breach of fiduciary duty claim is not duplicative of its breach of contract claims, however. Although based on the same alleged conduct by Fox, the claims have different elements, and MiMedx seeks additional relief (i.e., punitive damages) through its breach of fiduciary claim that is not available through its breach of contract claims. *See, e.g., ICD Publ'ns, Inc. v. Gittlitz*, 2014 IL App (1st) 133277, ¶ 59 (punitive damages may be awarded for breach of fiduciary duty).

Fox also argues that MiMedx cannot state a claim for breach of fiduciary duty without alleging that he engaged in self-dealing or in an activity that benefitted himself. Fox cites several cases where a defendant breached their fiduciary duty through self-dealing or by seeking personal gain. None of these cases hold, however, that self-dealing is the only way to breach a fiduciary duty. A breach of fiduciary duty may involve hindering the plaintiff rather benefitting the defendant. *See Veco Corp. v. Babcock*, 243 Ill.App.3d 153, 160 (1st Dist. 1993) (corporate officers "owe a fiduciary duty of loyalty to their corporate employer not to (1) actively exploit their

positions within the corporation for their own personal benefit, *or* (2) hinder the ability of a corporation to continue the business for which it was developed") (emphasis added); *see also Halperin v. Halperin*, 750 F.3d 668, 672 (7th Cir. 2014) (Under Illinois law, "[a] failure to comply with the duty to inform that prevents the beneficiary from learning something the fiduciary is duty-bound to communicate to him . . . is taking advantage of the beneficiary's dependence on the fiduciary."). Self-dealing or personal gain is not necessarily required to state a claim for breach of fiduciary duty. A corporate officer who sabotages the company may do so for no personal gain, but nevertheless breach a fiduciary duty owed to the firm.

MiMedx has stated a claim for breach of fiduciary duty, but its claim for breach of the duty of loyalty (Count V) is dismissed as duplicative.

### D. Specific Performance and Replevin

Fox moves to dismiss the specific performance and replevin claims (Counts III and VI), arguing that they are moot after the preliminary junction was granted and he returned his MiMedx devices. He also seeks dismissal by arguing that specific performance is a remedy, not a cause of action, and that MiMedx failed to file a verified pleading. MiMedx responds by requesting entry of judgment and damages for these claims because Fox returned the property after the court order.

MiMedx's claim for specific performance is dismissed because "specific performance is a remedy, not a cause of action." *LaSalle Nat'l Bank v. Metropolitan Life Ins. Co.*, 18 F.3d 1371, 1376 (7th Cir. 1994). This principle was also recognized in *AT & T Capital Services, Inc. v. Shore Financial Services, Inc.*, cited by MiMedx. No. 09 CV 1360, 2010 WL 2649874, at *17 (N.D. Ill. June 30, 2010) ("[I]njunctive

relief and specific performance are remedies, not independent causes of action."). As MiMedx concedes, courts often interpret a "claim" for specific performance as a breach of contract claim seeking specific performance. *See, e.g., JNS Power & Control Sys., Inc. v. 350 Green, LLC*, 624 Fed. App'x 439, 445 (7th Cir. 2015) (affirming remedy of specific performance where damages were inadequate remedy for breach of contract, noting that "[t]o state a cause of action for specific performance, there must first be a valid, binding, and enforceable contract"); *Ladien v. Presence RHC Corp.*, 2017 IL App (1st) 152778-U, ¶¶ 21–22 (A cause of action for "specific performance" is "essentially a claim for breach of contract, but with its remedy limited to specific performance."). But here, MiMedx's claim for specific performance is duplicative of its claim that Fox breached the Confidentiality Agreement by failing to return the company's devices after his employment was terminated (Count I). Therefore, MiMedx's claim for specific performance (Count III) is dismissed.

In Illinois, a plaintiff may bring a replevin claim under 735 ILCS 5/19-101 to recover property or goods. Fox seeks dismissal of the replevin claim because Illinois law requires a complaint for replevin to be verified, 735 ILCS 5/19-104, and MiMedx did not file a verified complaint. MiMedx argues that Illinois pleading requirements do not apply in federal litigation, citing to *Farzana K. v. Indiana Department of Education*, 473 F.3d 703, 705 (7th Cir. 2007). Although Fox cites to several district court cases dismissing replevin claims because the complaint was not verified, MiMedx is correct that state pleading requirements are inapplicable here. Federal

13

Rule of Civil Procedure 11(a) provides that "[e]xcept when otherwise specifically provided by rule or statute, pleadings need not be verified or accompanied by affidavit." The "rule or statute" in Rule 11(a) "means *federal* rule or *federal* statute, because state requirements for pleading do not apply in federal litigation. Rules established under the Rules Enabling Act supersede state norms." *Farzana K.*, 473 F.3d at 705 (emphasis added) (citing *Walker v. Armco Steel Corp.*, 446 U.S. 740 (1980), and *Hanna v. Plumer*, 380 U.S. 460 (1965)); *see Royalty Network, Inc. v. Harris*, 756 F.3d 1351, 1360 (11th Cir. 2014) ("'[S]tate rules requiring verified pleadings . . . are wholly inapposite [in federal court]' in light of Rule 11.").[4] Fox's cited cases were decided before *Farzana K.* and therefore are not persuasive authority on this matter. *See Combined Metals of Chicago Ltd. P'ship v. Airtek, Inc.*, 985 F.Supp. 827 (N.D. Ill. 1997); *Metal Forge Co. v. Vogel Tool & Die Corp.*, No. 95 C 6045, 1995 WL 702628 (N.D. Ill. Nov. 27, 1995); *ITT Commercial Fin. Corp. v. Tuf Racing Prod., Inc.*, No. 94 C 50403, 1995 WL 57601 (N.D. Ill. Jan. 27, 1995).

Fox also contends that his return of the devices makes replevin moot, citing district court cases finding an action for replevin moot when the property had already been returned. But, as MiMedx argues, these cases did not involve a defendant who returned the property only *after* a replevin order was entered. MiMedx contends that, under 735 ILCS 5/19-125, it is entitled to judgment and

---

[4] Even if verification had been required, failure to verify a complaint is a technical defect curable by amendment. Moreover, within two weeks of filing its amended complaint, MiMedx moved for replevin and submitted affidavits corroborating the replevin allegations in its complaint. [24].

14

damages on its replevin claim because its motion for replevin or a preliminary injunction was successful and Fox was required to turn over the devices. In addition to the return of property, the Illinois replevin statute also contemplates an award of damages. *See* 735 ILCS 5/19-125 ("If judgment is entered in favor of the plaintiff in replevin, the plaintiff shall recover damages for the detention of the property while the same was wrongfully detained by the defendant."). MiMedx's replevin claim is not moot because it still may seek damages. *See, e.g.,* Wright & Miller, 13C Fed. Practice & Procedure § 3533.3 (3d ed.) ("The availability of damages or other monetary relief almost always avoids mootness.").[5]

MiMedx's request for entry of judgment and damages is essentially a request for summary judgment raised in an opposition brief to the defendant's motion to dismiss. I decline to enter judgment for MiMedx as procedurally premature, although MiMedx has already shown a likelihood of success, [32], and for a successful replevin claim, a plaintiff need only prove that it is lawfully entitled to the possession of property that the defendant wrongfully detained and refused to deliver—fault is not a defense. *See* 735 ILCS 5/19-107; *Carroll v. Curry*, 392 Ill.App.3d 511, 514–17 (2d Dist. 2009). MiMedx's replevin claim is not dismissed.

---

[5] For the same reason, MiMedx's breach of contract claim based on Fox's failure to return company devices is not moot either. Damages may be available, although specific performance is no longer a necessary remedy.

## IV. Conclusion

Defendant's motion to dismiss, [34], is granted in part, denied in part. Counts III and V are dismissed.

ENTER:

/s/ Manish S. Shah

Manish S. Shah
United States District Judge

Date: August 2, 2017