**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MIMEDX GROUP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CASE NO. 1:16-cv-11715-MSS-SIS |
| -vs- | ) | |
| | ) | |
| MICHAEL FOX, | ) | |
| | ) | Judge Manish S. Shah |
| Defendant. | ) | |
| ——————————————— | ) | |
| | ) | Magistrate Judge Sidney I. Schenkier |
| MICHAEL FOX, | ) | |
| | ) | |
| Counter-Plaintiff | ) | |
| | ) | |
| -vs- | ) | |
| | ) | |
| MIMEDX GROUP, INC., | ) | |
| | ) | |
| Counter-Defendant, | ) | |
| ——————————————— | ) | |

## <u>MIMEDX GROUP INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL</u>

Plaintiff MiMedx Group, Inc. ("MiMedx") files this Motion to Compel Defendant

Michael Fox ("Fox") to produce responses to MiMedx's Interrogatories and Document Requests

pursuant to Fed. R. Civ. P. 33, 34 and 37.  MiMedx moves on two straightforward issues.  First,

following several telephone conferences, agreement of counsel and numerous letters, Fox agreed

to provide to provide MiMedx certain supplemental information and documents responsive to

MiMedx Interrogatories and Requests for Production by August 18, 2017.   Fox, however, failed

to meet this agreed upon deadline and, to date, has still not produced this admittedly relevant

information.  MiMedx moves to compel this agreed supplementation.  Second, Fox has

specifically refused to provide any information regarding outside third parties that he or his

counsel have spoken to about this litigation, improperly asserting that any such communications are privileged.  As a result of Fox's actions, MiMedx is forced to bring this motion to compel Fox to fully respond to the discovery requests served in this case over five (5) months ago.

## BACKGROUND

MiMedx brought this lawsuit against its former employee, Fox, as a result of his breaches of contractual and legal duties.  Specifically, Fox was a Vice President at MiMedx, and he was charged with overseeing various teams of MiMedx's sales associates.  Those sales associates were full time employees who were supposed to sell only MiMedx products and to devote their best efforts to MiMedx.  Fox was also supposed to be operating in the best interests of MiMedx. In late 2016, however, MiMedx learned that rather than acting in MiMedx's best interest, Fox was actually encouraging employees to sell non-MiMedx products on the side.  MiMedx also learned that Fox inappropriately disclosed confidential MiMedx information to employees not entitled to receive that information.  This conduct violated Fox's duties to MiMedx and breached his contracts with MiMedx.

On March 30, 2017, MiMedx served its written interrogatories and requests for production on Fox, seeking, among other things, information about Fox's knowledge about sales of non-MiMedx products and his communications with third parties about MiMedx and this lawsuit.[1]  Fox provided his responses on May 26, 2017.[2]  Those responses, however, were deficient in numerous respects.  Pertinent to this motion, Fox failed to fully provide information

---

[1] True and correct copies of Plaintiff's First Interrogatories to Defendant Michael Fox and Plaintiff's First Requests for Production to Defendant Michael Fox are attached hereto as Exhibits 1 and 2 respectively.

[2] True and correct copies of Defendant's Answers to Plaintiff's Interrogatories and Defendant's Responses to Plaintiff's Requests for Production are attached hereto as Exhibits 3 and 4 respectively.

ACTIVE 224889609

about the sale of non-MiMedx products and he failed to identify or produce communications with third parties, either about MiMedx or about this litigation.

In an effort to resolve these issues and pursuant to Federal Rule of Civil Procedure 37(a) and Local Rule 37.2, the parties engaged in multiple meet and confer efforts, both in written correspondence and during several telephonic meet and confer calls. Specifically, MiMedx sent Fox's counsel a letter on June 2, 2017 raising the issues addressed in this motion. Ex. 5. The parties then held a Rule 37.2 telephone conference on June 7, 2017, followed-up by an exchange of letters on June 7, 2017 and June 8, 2017. Exs. 6-7. The parties again discussed these issues at the June 9, 2016 status conference with the Court, and the Court provided guidance and ordered the parties to further meet and confer on these topics (ECF No. 45), which the parties did.

Specifically, as previously agreed between the parties (*see* Ex. 6), Fox provided supplemental responses to MiMedx's discovery requests on June 16, 2017. Exs. 8-9. However, because the same deficiencies remained, the parties held another Rule 37.2 telephone conference on July 6, 2017. During that call, the parties agreed that Fox would produce further supplemental discovery based on a revised definition of "non-MiMedx products," but did not reach agreement on the issue of Fox's communications with third parties, as discussed in the letters from July 6, 2017 and July 12, 2017. Exs. 10-11.

The parties further corresponded via letter on August 1 and August 2, in advance of the status conference with the Court held on August 3, 2017. Exs. 12-13. In this correspondence, MiMedx asked for the agreed production related to non-MiMedx products, but noted that the parties appeared to be at an impasse on production related to third-party communications about MiMedx and the litigation. Ex. 12. Fox, however, requested a further meet and confer regarding the third-party communications (Ex. 13), which the parties held on August 9, 2017. During that

call, Fox agreed to produce communications with certain individuals where those communications relate to MiMedx, as confirmed in Fox's counsel's letter dated August 9, 2017. Ex. 14.  Fox also agreed to update his response to Interrogatory 10 to indicate the third parties who provided him certain evidence (something he had previously agreed to do).  *Id.*[3]  Indeed, Fox's counsel represented in such August 9, 2017 letter that "[a]s we agreed, we will endeavor to supplement Mr. Fox's discovery in accordance with this letter by the end of next week, August 18, 2017."  *See* Ex. 14; *see also* Ex. 15.  The parties came to an impasse, however, on the issue of Fox's failure to produce communications about the litigation with third party witnesses.

Despite Fox's agreement to produce the agreed supplementation **by August 18, 2017**, as of the date of this filing, Fox still has not produced the documents and other information that he specifically agreed to produce.  Additionally, the parties remain at an impasse on the issue of whether Fox and his counsel's communications with independent third parties about this litigation should be produced.

## ARGUMENT

## I.     Fox Should Be Compelled to Provide Information and Documents Requested by MiMedx in Discovery That He Already Agreed to Produce.

The parties have made arduous and continuous efforts to resolve the discovery issues, resulting in an agreement between the parties that Fox would produce three items by **August 18, 2016**:  (1) information responsive to various interrogatories and documents responsive to various document requests containing the term "non-MiMedx products" as now defined by the agreed-upon definition; (2) documents responsive to RFPs 31-43 that relate to MiMedx, and (3) a supplemental response to Interrogatory No. 10.  *See* Exs. 5-15.  Specifically, Fox agreed to

---

[3] True and correct copies of the foregoing documents are attached hereto as Exhibits 5-13 respectively.

answer a number of Interrogatories and RFPs with a narrowed definition of "non-MiMedx products" that the parties negotiated over several phone calls.[4] Fox also agreed to produce all communications from July 1, 2012 through the present that are between Mr. Fox and all the individuals listed in Requests for Production 31-43 and that "relate to MiMedx." Finally, Fox agreed to update his response to Interrogatory 10—which requested that he identify all individuals (other than his counsel) with whom he communicated regarding this litigation—to include information about the individuals who provided Fox with internal MiMedx documents dated after Fox was terminated from the company.[5]

Despite this agreement, to date Fox has failed to provide any of the agreed-upon supplementation by the self-set deadline of August 18, 2017, and has provided no justification for such failure. Rules 33 and 34 of the Federal Rules of Civil Procedure require full and complete answers to the Interrogatories and production of all responsive, non-privileged documents in Fox's possession, custody or control to the full extent permitted by the standard articulated in Rule 26(b) of the Federal Rules of Civil Procedure. Fox's failure to meet the very deadline to which he himself agreed is especially egregious in light of the several month delay in production (his responses were originally due May 8, 2017) and the extensive efforts by MiMedx to address and compromise on his objections.

Accordingly, Fox should be compelled to provide the supplemental information and

---

[4] The parties' agreed definition of "Non-MiMedx products" is: Non-MiMedx products sold or marketed by MiMedx employees to any MiMedx customer, and/or (ii) non-MiMedx medical products sold or marketed by MiMedx employees to any person or entity. "Medical products" was defined as including but not limited to: "dressings," products used in "wound care," allografts, tissue membranes, and any products sold by Academy Medical, LLC, Kandu Medical, Halo Wound Solutions (a/k/a Bioresolutions, LLC) or CPN Biosciences.

[5] Notably, Fox indicated on the August 9, 2017 call that the documents came from an "anonymous" source, and Fox agreed to update his response to reflect this new assertion.

ACTIVE 224889609

documents he already agreed to provide, and further should be required to pay the expenses incurred by MiMedx in bringing this Motion to enforce the discovery commitments he made to MiMedx in the meet and confer process.  Fed. R. Civ. P. 37(a)(5)(A).

## II.  Fox Should Be Compelled to Provide Discovery Regarding Communications With Third Parties.

Fox should further be compelled to respond fully to the discovery requests seeking communications with third-party witnesses regarding this litigation.  Fox has taken the position that any and all communications that Fox or his counsel had with third-party witnesses—for example, former MiMedx employees—are somehow privileged.  But as set forth below, both (1) the identities of the third parties with whom Fox and his counsel have spoken or had any written communications, and (2) documents exchanged with such third parties are discoverable and not protected from disclosure by any privilege.

### A.  MiMedx's Requests Seek Relevant Communications With Independent Third Parties.

MiMedx has served discovery requests seeking all of Fox's communications with independent third parties.  Specifically, MiMedx's Interrogatory 10 seeks the identification of "any and all Persons or Entities" that Fox (or his counsel) "Communicated with about this lawsuit" and asks that Fox "describe in detail the date and substance of such Communications." Similarly, RFP 47 seeks documents and communications Fox (or his counsel) "Sent to or Received from any third party in connection with this Litigation."[6]  As MiMedx made clear in the meet and confer discussions, MiMedx is not requesting privileged information.  Indeed, these requests are not directed to the legal activities of any attorney, but rather, seek information

---

[6] RFPs 31-43, discussed above, also relate to Fox and his counsel's communications with specific third parties about MiMedx.  Fox has agreed to produce documents in response to these RFPs, but to the extent he has withheld any such communications as privileged, those are also discoverable and non-privileged, as outlined below.

generally about the third party individuals that Fox or his agents (including counsel) have spoken to about this litigation. Yet, to date, Fox has refused to respond fully to these discovery requests on the grounds that ***any communications*** he or his counsel had with third parties—and indeed, even the identities of the persons with whom he or his counsel has spoken about this litigation— are privileged or work product.

Initially, it is clear that such communications exist and have not been produced by Fox. MiMedx has received discovery responses and text messages in other litigations indicating that Fox has discussed the facts of this litigation with at least three third parties: Lex Harris, Hal Purdy, and Jess Kruchoski. Similarly, Fox's counsel has communicated with at least one other former MiMedx employee (Tracy Lucas) and his counsel in an attempt to obtain an affidavit from him for this litigation.[7] Despite this, Fox has refused to produce any such documents or information in this case, even though they are responsive to MiMedx's requests.

Such communications are also relevant to the claims and defenses in this litigation, and are thus discoverable. Fed. R. Civ. P. 26(b)(1). The identities of third parties with whom Fox or his counsel have communicated about the litigation are individuals from whom or MiMedx may need to seek further discovery, including deposition testimony, to prepare its case. Moreover, the contents of the communications with third parties about the lawsuit contain relevant information about the claims and defenses. For example, the text messages between Fox and Kruchoski demonstrate that he and Fox were exchanging confidential MiMedx information after both of them had been terminated from the company. *See* Ex. 17. This evidence demonstrates

---

[7] True and correct copies of samples of the produced Harris discovery responses are attached hereto as Exhibit 16, true and correct copies of the text messages are attached hereto as Exhibit 17, and true and correct copies of the e-mail correspondence between Fox's counsel and Tracy Lucas's counsel are attached hereto as Exhibit 18.

ACTIVE 224889609

another potential breach of Fox's confidentiality agreement and belies his denials that he has never improperly disclosed MiMedx confidential information.

To be clear, MiMedx is ***not seeking*** discovery concerning Fox's counsel's mental impressions or litigation strategy. For example, MiMedx has stated multiple times during meet and confers, and now represents directly to this Court, that it is not seeking Mr. Griesmeyer's notes from interviewing a third-party witness, outlines he prepared for those interviews, discussions with Fox about such interviews, or any similar privileged or work product information. Nor is MiMedx seeking communications with any outside consultants hired by counsel (such as Fox's discovery vendor). Rather, MiMedx is seeking information related to communications with third parties, which, as set forth below, is by definition not privileged.

### B.    Communications With Independent Third Parties Are Not Privileged.

Notwithstanding MiMedx's assurances that it is not seeking attorney mental impressions, case strategy, or other attorney work product and the clear relevance of Fox's and his counsel's third-party communications, Fox continues to assert that all communications with independent third parties—including direct communications by Fox himself without the presence of counsel—are privileged and/or protected by the work product doctrine. The law is clear, however, that the identities of the third parties that Fox or his counsel spoke with—and any communications Fox or his counsel exchanged with those third parties—are not privileged.

Fox first is claiming that ***his*** communications with third parties are privileged, as these communications have not been disclosed in response to Interrogatory 10 or produced in response to RFP 47. However, it is axiomatic that Fox's communications with third parties are not privileged. Fox is not an attorney to, nor the client of, the third party. *See, e.g.*, *Equity Residential v. Kendall Risk Mgmt., Inc.*, 246 F.R.D. 557, 563 (N.D. Ill. 2007) (noting that a party must show that "the statement originated in a confidence that it would not be disclosed, was

made to an attorney acting in his legal capacity for the purpose of securing legal advice or services, and remained confidential.").  Moreover, Fox's communications with third parties are not attorney work product, as Fox is not himself an attorney nor are the third parties with whom Fox is communicating his counsel.  Information about these communications Fox had with third parties—as well as copies of any written communications—should therefore be produced.

Moreover, Fox's counsel's discoverable communications with third parties are also not privileged from disclosure and should be produced.  First, the identities of third parties with whom counsel has spoken are simply not protected by the work product doctrine.  *See, e.g.*, *E.E.O.C. v. Jewel Food Stores, Inc.*,  231 F.R.D. 343, 347 (N.D. Ill. 2005) (Schenkier, J.) ("[W]e think the fact that [defendant] (or its counsel) has talked to certain persons who are potential witnesses, without more, reveals little or nothing about which witnesses [defendant] considers important."); *Whitchurch v. Canton Marine Towing Co., Inc.*, No. 16-cv-3278, 2017 WL 1165988, at *4 (C.D. Ill. Mar. 23, 2017) ("The [work product] privilege, therefore, does not extend to the identity of individuals with knowledge" pertinent to a claim); *Gingerich v. City of Elkhart Prob. Dep't*, 276 F.R.D. 532, 540 (N.D. Ind. 2011) ("[F]actual interrogatories concerning the identities of potential witnesses . . . do not provide insight into the attorney's mental process. . . .Interrogatories concerning the identity of individuals who may have information and the content of any statements they provided is the type of factual inquiry that is routinely sought in discovery.").  Thus, the names of any independent third parties with whom Fox's counsel have communicated are not privileged, and Fox should be required to disclose them.  *Id*. at 346.

Second, documents obtained from third parties and communications with those third parties likewise do not somehow become privileged or protected from disclosure merely because

9

they were sent to or from a third party by Fox's counsel. The *Jewel* court noted that "a substantial body of case law holds that the work product doctrine does not protect from production documents that attorneys ***obtain from third parties*** during their investigation in connection with a lawsuit." *Id.* at 347 (citations omitted; emphasis added). Similarly, in *Ricoh Co. v. Aeroflex Inc.*, 219 F.R.D. 66 (S.D.N.Y. 2003), the court held that documentation prepared by a third party witness (IBM) was not work-product because, as the court reasoned, it would be "a stretch to apply the attorney work product privilege to documents created by a third party and then sent to counsel for a party." *Id.* at 69. The *Ricoh* court also held that emails from the attorney to the third party were discoverable and any privilege that might have existed had been waived by the disclosure to the third party. *Id.* at 60. A Northern District of Illinois court is in accord, noting:

> Clark's belated assertion of the work product privilege also misses the mark. If counsel, in discussions with third parties, reveals his mental impression, etc. to such third parties, any claim of work product privilege is waived.

*Clark Equipment Co. v. Lift Parts Mfg. Co., Inc.,* 1985 WL 2917, *6 (N.D. Ill. E.D. 1985) (holding that company's communications with former employees were not privileged). As in *Clark Equipment,* Fox should be compelled to identify the third parties his counsel have communicated with about this litigation, to provide any factual information received from those third parties, and to produce responsive communications with or documents obtained from third parties (including without limitation written communications with those third parties).[8]

Accordingly, Fox should be compelled to identify the third parties with whom he and his

---

[8] To the extent that Fox still seeks to assert some privilege other than attorney-client privilege or work product (both are addressed herein) as to any documents evidencing communications with third parties, Fox should be required to include such documents on a privilege log. Fed. R. Civ. P. 26(b)(5).

ACTIVE 224889609

counsel have talked concerning this litigation (including the related facts, claims, and defenses) and to produce documents exchanged with such third parties because they are not protected by the attorney-client privilege or work product doctrine. Finally, Fox should be ordered to pay the attorneys' fees and expenses incurred by MiMedx in bringing this Motion.

## III.    Local Rule 37.2 Statement

Pursuant to Federal Rule of Civil Procedure 37(a) and Rule 37.2 of the Local Rules of the United States District Court, Northern District of Illinois, Counsel for the parties discussed the issues in this Motion and Memorandum in Support in the manner, and on the dates and times, specified above (and including three conference calls, on June 7, 2017, July 6, 2017, and August 9, 2017, between Counsel for the parties), but despite good-faith attempts to resolve differences were unable to reach an accord as to the such issues. Accordingly, Defendants now file the instant Motion.

**<u>CONCLUSION</u>**

For the reasons stated above, MiMedx respectfully requests that this Court order Defendant Fox to provide MiMedx with the requested information and documents by a date certain, the attorneys' fees and costs incurred in bringing this Motion and for any other relief the Court deems appropriate under the circumstances. First, Fox should be compelled to provide, within 10 days after the Court's ruling, those items he already agreed to provide, which specifically include: (a) information and documents involving Non-MiMedx Products responsive to Requests for Production Nos. 1-9, 11-12, 25 and 27 and Interrogatories Nos. 1-6, 13-14; (b) all communications from July 1, 2012 through the present that are between Mr. Fox and each of the individuals listed in Requests for Production 31-43 and that relate to MiMedx; and (c) information responsive to Interrogatory No. 10 identifying from whom Mr. Fox obtained various pieces of evidence. Second, Fox should be required to provide the identity of third

11

parties with whom Fox or his counsel have talked with regarding this litigation(s) (including the related facts, claims, and defenses) and documents exchanged with such third-parties.

Dated: September 7, 2017.

Respectfully submitted,

**PLAINTIFF MIMEDX GROUP, INC.**

/s/ *Shanon J. McGinnis*
One of Its Attorneys

Joseph D. Wargo, *pro hac vice*, Georgia Bar
    No. 738764
Shanon J. McGinnis, *pro hac vice*, Georgia
    Bar No. 387598
WARGO & FRENCH, LLP
999 Peachtree Street, NE
26th Floor
Atlanta, Georgia 30309
Telephone: (404) 853-1500
Facsimile: (404) 853-1511
E-mail: jwargo@wargofrench.com
E-mail: smcginnis@wargofrench.com

Ami N. Wynne
Jason G. Marsico
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, Illinois 60603
Phone: (312) 853-7000
Fax: (312) 835-7036
Email: awynne@sidley.com
Email: jmarsico@sidley.com

*Counsel for MiMedx Group, Inc.*

12

**CERTIFICATE OF SERVICE**

I hereby certify that on September 7, 2017, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system, which will send notification of such filing to the

following counsel of record for the parties in this action:

Christopher S. Griesmeyer
Greiman, Rome & Griesmeyer, LLC
Two North LaSalle, Suite 1601
Chicago, Illinois 60602
cgriesmeyer@grglegal.com

Clayton D. Halunen, Esq.
Halunen Law
IDS Center, Suite 1650
80 South 8th Street
Minneapolis, MN 55402

*/s/ Ami N. Wynne*

Ami N. Wynne
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, Illinois 60603
Phone: (312) 853-7000
Fax: (312) 835-7036
Email: awynne@sidley.com

ACTIVE 224889609