1    **TRANSCRIBED FROM DIGITAL RECORDING**

2                   IN THE UNITED STATES DISTRICT COURT
                      NORTHERN DISTRICT OF ILLINOIS
3                          EASTERN DIVISION

4    MIMEDX GROUP, INC.,                    )
                                            )
5                   Plaintiff,              )
                                            )
6              vs.                          )  No. 16 C 11715
                                            )
7    MICHAEL FOX,                           )  Chicago, Illinois
                                            )  September 27, 2017
8              Defendant.                   )  11:09 A.M.

9           TRANSCRIPT OF PROCEEDINGS - Status and Motion
       BEFORE THE HONORABLE SIDNEY I. SCHENKIER, Magistrate Judge
10
     APPEARANCES:
11
     For the Plaintiff:        WARGO & FRENCH
12                             999 Peachtree Street
                               26th Floor
13                             Atlanta, Georgia  30309
                               BY:  MS. SHANON J. McGINNIS
14
                               SIDLEY AUSTIN LLP
15                             One South Dearborn Street
                               Chicago, Illinois  60603
16                             BY:  MR. JASON GREGORY MARSICO

17   For the Defendant:        HALUNEN LAW
                               80 South 8th Street
18                             IDS Center
                               Suite 1650
19                             Minneapolis, Minnesota  55402
                               BY:  MR. STEPHEN M. PREMO
20                                  (Appearing telephonically)

21                 PAMELA S. WARREN, CSR, RPR
                      Official Court Reporter
22            219 South Dearborn Street, Room 2342
                    Chicago, Illinois   60604
23                      (312) 408-5100

24   **NOTE:  Please notify of correct speaker identification.
     FAILURE TO SPEAK DIRECTLY INTO THE MICROPHONE MAKES PORTIONS
25   UNINTELLIGIBLE.**

1    (Proceedings held in open court:)

2         THE CLERK:  16 C 11715, MiMedx Group, Inc. versus Fox,

3    motion.

4         MS. McGINNIS:  Good morning, your Honor.  Shanon

5    McGinnis on behalf of plaintiff.

6         MR. MARSICO:  Good morning, your Honor.  Jason Marsico

7    on behalf of plaintiff.

8         MR. PREMO:  Good morning, your Honor.  Stephen Premo

9    of Halunen Law on behalf of defendant Michael Fox.

10        THE COURT:  Good morning.  So I have the motion and

11   the response, which I have reviewed.

12        Is there anything that anybody feels the need to say

13   further?

14        MR. PREMO:  Yes, your Honor.  Stephen Premo here.

15        Yesterday Michael Fox had reached out to opposing

16   counsel and asked for -- to see if they would -- MiMedx would

17   agree to allowing Mr. Fox to submit a reply brief.

18   Mr. -- Ms. McGinnis communicated to me that MiMedx opposed that

19   motion for leave to file a reply.  I contacted chambers --

20        THE COURT:  I'm aware of this Mr. Premo.  I didn't

21   provide for replies, and the reason I didn't provide for it is

22   because I see no need for it.  If there is something that was

23   said that you feel that you feel the need to respond to, you're

24   fully capable of doing that right now.

25        MR. PREMO:  Very well, your Honor.  In that case --

1    again Stephen Premo.

2         When -- we disagree with MiMedx's characterization

3    entirely about the meet and confer telephone conference.  On

4    September 12th I spoke to Ms. McGinnis, and I laid out all the

5    objections that are discussed in our brief.  And I specifically

6    addressed the overbreadth of (unintelligible) request for all

7    cellular data or subscriber information, not just the contents

8    of text messages, but also including phone and text logs.  And

9    the reply would have included a declaration to that effect.

10         And so Fox had to -- we had the phone conference.  We

11    did everything that local rule required, and, therefore, we

12    believe that the motion should be heard in its entirety.

13         THE COURT:  It will be.

14         It will be.

15         MR. PREMO:  Thank you, your Honor.

16         The other thing is that Fox has not consented in any

17    way to an MiMedx's subpoena or MiMedx's command to Verizon and

18    AT&T to produce the contents of text messages.  Those subpoenas

19    command a violation of the Stored Communications Act, and we do

20    not consent to that unlawful command.  Fox has offered to --

21         THE COURT:  Well, I'm sorry, counsel, you made a

22    proposal, correct?

23         MR. PREMO:  Yes, your Honor.

24         THE COURT:  And that was that Verizon and AT&T would

25    produce text messages from phones -- well, that you would issue

1    a subpoena to Verizon --

2          MR. PREMO:  Yes, your Honor.

3          THE COURT:  -- and for text messages and phones

4    registered in Fox's name.  They would produce -- Verizon and

5    AT&T would produce that information you to, and you would

6    review it, produce messages that were relevant, but also log

7    anything where you thought there was privilege.

8          Is that a proposal that made?

9          MR. PREMO:  Yes, your Honor.

10          THE COURT:  And the counter-proposal by MiMedx was

11    that the documents, the records be produced pursuant to their

12    subpoenas, but would be produced to Mr. Fox's counsel to do the

13    same kind of review, production, logging that you proposed, is

14    that correct?

15          MR. PREMO:  That -- that's fair, your Honor.

16          THE COURT:  Okay.

17          MR. PREMO:  I would add that they also conditioned

18    that proposal on a scope that we believed was not --

19          THE COURT:  I understand.

20          MR. PREMO:  Okay.

21          THE COURT:  I'm just talking about the mechanics of

22    the proposal.

23          MR. PREMO:  Yes, your Honor.

24          THE COURT:  So the real difference is whose subpoena

25    the carriers respond to.

1    MS. McGINNIS:  With respect to text messages, your

2    Honor, yes, that's correct.

3    THE COURT:  Yes, with respect to text messages.

4    So the objection that MiMedx had to the Fox proposal

5    of issuing new subpoena was that it is an unnecessary step and

6    there be a time lag and maybe the carriers would lose five days

7    of information.

8    Well, what about an order that simply says the

9    carriers are to respond to the subpoenas for the time period

10   indicated, with whatever other revisions I make today, but they

11   are to respond by delivering the materials to Fox's counsel?

12   That seems to address both of your issues, doesn't it?

13   Mr. Premo?

14   MR. PREMO:  Your Honor, I -- I agree functionally,

15   yes, but Fox's -- what Fox's counterproposal indicated was that

16   Fox would agree to the normal discovery process.  And so Fox's

17   position is that his counter-proposal to comply with the normal

18   discovery rules does not transform MiMedx's unlawful subpoena

19   into a lawful one.

20   THE COURT:  So when your proposal says you would

21   produce relevant text messages and you're -- you're actually

22   not proposing to do that?

23   MR. PREMO:  No, we are.

24   THE COURT:  Okay.

25   MR. PREMO:  In fact, your Honor --

1          THE COURT:  So then you are -- so I understand your

2     position about what the Stored Communication Act provides.  But

3     what you are saying is that your proposal was that text that

4     met a definition of relevance that you agreed to you would

5     produce, subject to a privilege.

6          MR. PREMO:  Yes, your Honor.

7          THE COURT:  Okay.  So right now I understand, you

8     know, that you have a dispute about what the proper scope is,

9     and we're going to get to that.  But I'm talking about the

10    mechanics here of the proposal, which in large measure, were

11    designed to address not only relevance but also issues of

12    privilege.  By having whoever subpoena it is, by having the

13    carriers deliver the materials to Mr. Fox's counsel, that

14    certainly addresses the privilege issue, would you not agree?

15         MR. PREMO:  Yes, your Honor.

16         THE COURT:  And so do we need to stand on ceremony as

17    to whose subpoena they're responding to?

18         MS. McGINNIS:  Your Honor, if I --

19         THE COURT:  I'm asking Mr. Premo.

20         MS. McGINNIS:  Sorry.

21         MR. PREMO:  I'm sorry, your Honor, could you repeat

22    that?

23         THE COURT:  Do we need to stand on ceremony as to

24    whose subpoena is being responded to so long as there is a

25    definition of relevance that is a reasonable one, and that the

1    materials are produced -- I'm talking about the text messages

2    now -- to Mr. Fox's counsel for review?

3            MR. PREMO:  Well, we would insist that we do stand on

4    ceremony, your Honor, because if -- if we do not, there is no

5    deterrent function from MiMedx in the future from issuing

6    unlawful commands again.

7            THE COURT:  Well, let me ask a question.  On these

8    subpoenas were they served without delivering them first to

9    defense counsel?

10           MS. McGINNIS:  No, your Honor.  Shanon McGinnis.  We

11   served a notice of intent to serve the subpoenas on defense

12   counsel --

13           THE COURT:  With the --

14           MS. McGINNIS:  -- before they were served.

15           THE COURT:  With the subpoenas themselves?

16           MS. McGINNIS:  Yes, your Honor.

17           THE COURT:  And is that correct, Mr. Premo?

18           MR. PREMO:  That's correct, your Honor.

19           THE COURT:  Okay.  And when were they served?

20           MR. PREMO:  They were served on September 6th.

21           THE COURT:  And the motion was filed September 15th?

22           MS. McGINNIS:  Correct, your Honor.

23           MR. PREMO:  Correct.

24           THE COURT:  Okay.  So why did it take so long?

25           I mean, the deterrent function, Mr. Premo, of having

1  someone serve the -- or provide the subpoenas to the opposing

2  parties is that if there is an issue such as the one you are

3  describing, you have a chance to raise that issue before the

4  subpoenas are served.

5          Is there a reason you didn't do that here?

6          MR. PREMO:  Yes, your Honor.  I had raised the

7  objection to the subpoena on September 7th, one day after, and

8  asked for confirmation whether the subpoenas or asked not --

9  that MiMedx not serve the subpoenas.  Or if they had, to

10  withdraw them pending the resolution of -- of Fox's objections.

11          THE COURT:  Okay.

12          MR. PREMO:  I did not receive any word about the

13  status of those subpoenas until Thursday of the next week

14  where -- whereupon Ms. McGinnis confirmed to us that the

15  subpoenas had been served.

16          At the time of our Tuesday conference, Ms. McGinnis

17  did not have the information regarding the status of those

18  subpoenas.

19          THE COURT:  So notice of the subpoenas was delivered

20  on September 6th?

21          MS. McGINNIS:  Yes, your Honor.

22          THE COURT:  And when were they sent out for service?

23          MS. McGINNIS:  They were sent out for service the

24  following day.  I believe the AT&T subpoena was delivered to

25  AT&T on the 7th.  The Verizon subpoena, I believe, was

1  delivered -- yeah, a few days later, your Honor.

2       THE COURT:  And so the Verizon one at least was served

3  after you had notice of the objection by the defendant.

4       MS. McGINNIS:  Yeah, it had already been out for

5  service, yes.

6       But I can tell your Honor that so far neither AT&T or

7  Verizon has produced anything.

8       THE COURT:  Okay.

9       MS. McGINNIS:  AT&T has been -- with communicating

10 with AT&T, and that there is an objection.  And I believe we

11 have done the same thing with Verizon, but we haven't received

12 anything.

13      THE COURT:  All right.  Is there anything further?

14      MR. PREMO:  No, your Honor.

15      THE COURT:  Okay.  With respect to this particular

16 issue?

17      MS. McGINNIS:  With respect to the --

18      THE COURT:  The text messages and whose subpoenas.

19      MS. McGINNIS:  Yes.  There is nothing further with

20 respect to the text messages, your Honor.

21      THE COURT:  All right.  Going back -- let me go to the

22 issue of the relevance concerning the text messages.  We are

23 looking at page 7 of the plaintiffs's response.

24      And do you have that in front of you, Mr. Premo?

25      MR. PREMO:  Yes, your Honor.

1      THE COURT:  And do you agree with what the differences

2 are between the parties's proposals concerning scope?

3      MR. PREMO:  I -- I will say generally, yes, your

4 Honor.

5      THE COURT:  Okay.  And, you know, I don't know what

6 generally, yes, means, so frankly I'm taking that as a yes.

7      When I look at the differences, when MiMedx says we

8 want discovery that goes to the issues, allegations, claims or

9 defenses in the litigation, as opposed to the -- MiMedx's

10 proposal of claims and defenses, what is it that issues an

11 allegations have?

12      MS. McGINNIS:  The -- Shanon McGinnis, your Honor.

13      The issues and allegations are a more than just, in

14 our opinion, I think that it is broader than just the actual

15 claims.  We have, through other cases, developed some

16 additional information about Mr. Fox's conduct.

17      THE COURT:  Okay.

18      MS. McGINNIS:  And so we intend to, you know, once we

19 lock that down, we intend to amend the complaint to identify

20 further breaches of his duty of loyalty, further breaches of

21 (unintelligible) so it is not just limited to expressly what's

22 pled in the complaint.  What's pled in the complaint are some

23 examples and some more instances, but we have uncovered more

24 than that.

25      THE COURT:  Okay.  Limited to claims and defenses.

1 Rule 26 doesn't say issues and allegations. It doesn't say we

2 search for new claims to make. It means claims and defenses.

3         MS. McGINNIS: Well --

4         THE COURT: That is how it is limited.

5         Related to MiMedx that certainly is true that anything

6 that would be relevant to a claim or defense would relate to

7 MiMedx. But not everything that relates to MiMedx relates to a

8 claim or defense.

9         Can we agree on that?

10         MS. McGINNIS: We can, your Honor.

11         THE COURT: So something that says, it is related to

12 MiMedx expands the scope to things that would in no way be

13 relevant.

14         MS. McGINNIS: We agree with that, your Honor, that

15 there are things. However, I will say, that with respect to

16 the written discovery that we have already served --

17         THE COURT: Uh-huh.

18         MS. McGINNIS: -- specifically that we addressed last

19 week, that part of what of opposing counsel has agreed to

20 produce is communications and documents with certain

21 individuals over certain current and former employees that

22 relate to MiMedx. And they have already agreed to produce

23 that.

24         THE COURT: And they have, and this is a different

25 thing. It is a third-party subpoena. We're dealing with text

1    messages.  We're dealing with a statute that does cover this

2    way in a fairly restrictive -- this area in a fairly

3    restrictive manner.

4           So I will limit the scope to the time period in the

5    subpoenas, but limited to the claims or defenses in the

6    litigation.

7           With that limitation, what -- you are prepared,

8    Mr. Premo, to serve subpoenas on Fox and Verizon for the text

9    messages that cover the same period as the MiMedx subpoenas,

10   but with the limited relevance scope that I have described?

11          MR. PREMO:  Yes, your Honor.  In fact, the subpoenas

12   have already gone out -- or the subpoena -- sorry, singular --

13   has already gone out.

14          THE COURT:  Well, I thought there were two of them.

15          MR. PREMO:  I'm referring to Fox had served his own

16   subpoena on Verizon.

17          THE COURT:  Does it comport with what I just

18   described?

19          MR. PREMO:  Absolutely, your Honor.

20          THE COURT:  All right.  And serve one on AT&T and do

21   it tomorrow.

22          MR. PREMO:  Yes, your Honor.

23          THE COURT:  And what I will do is not quash the

24   subpoenas that have been served until I have a statement on the

25   record that both subpoenas have been served to AT&T and Verizon

1    so there is no gap.

2            MS. McGINNIS:  Your Honor, if I may also, with respect

3    to the documents -- the text messages that are going to be

4    provided by either AT&T or Verizon, I understand your Honor's

5    ruling that it is only to the claims and defenses.

6            I would like, if we can, a preservation that

7    the -- whatever is produced not be destroyed or --

8            THE COURT:  Any objection?

9            MS. McGINNIS:  -- thrown out or in any way --

10           THE COURT:  Any objection to that, Mr. Premo?

11           MR. PREMO:  No, your Honor.

12           THE COURT:  Okay.

13           MS. McGINNIS:  Thank you, your Honor.

14           THE COURT:  All right.  Now what about the telephone

15   call logs?  They don't implicate the same issues as the text

16   messages.

17           You agree with that, Mr. Premo?

18           MR. PREMO:  They -- they do not, yes, your Honor.

19           THE COURT:  Okay.  So do you have objection or what is

20   your objection specifically to producing the call logs?

21           MR. PREMO:  Your Honor, my objection is that they are

22   over -- so overbroad, and it is -- it is unduly burdensome on

23   Fox and other non-parties privacy interests.  Courts that have

24   addressed this, and we laid out and in pages 11 through 14.

25           THE COURT:  Yes.

1          MR. PREMO:  -- of our brief, have repeatedly quashed

2     similar objections because it encourages the other side to play

3     go fish and review phone numbers that have absolutely no

4     relevance to the claims or defenses in the case and discover

5     who Fox has been communicating with and when, regardless of

6     whether it had any relevance to the claims and defenses of the

7     case.

8          And so we object to that scope of a request for phone

9     records, particularly over a two-year time period.

10         THE COURT:  Well, let me ask a question.  In the

11    response the plaintiff focuses on current or former MiMedx

12    employees to whom he has spoken, and that the defendant has not

13    disclosed that information.

14         Within the records of MiMedx, are in there phone

15    numbers for current employees?

16         MS. McGINNIS:  There are, your Honor.  Although I will

17    say that it is -- that the information that we think that the

18    call logs would undercover is broader than current and former

19    employees, and I would like to address that if your Honor would

20    allow me to.

21         THE COURT:  Well, since you didn't address it in your

22    response, why should I let you do it now?

23         MS. McGINNIS:  A couple reasons, your Honor.  First of

24    all, this was -- the call logs will not --

25         THE COURT:  Which just shows you why I shouldn't allow

```
 1    people to do all of this briefing.

 2              MS. McGINNIS:  The --

 3              THE COURT:  Because it doesn't really advance things,

 4    does it?

 5              And we're not going to do this anymore.  We're going

 6    to talk about that in a minute.

 7              MS. McGINNIS:  Understand, your Honor.

 8              The call logs -- we received some text messages just

 9    recently, in other cases, that, again, identify that Mr. Fox is

10    having communications, both pre-termination communications as

11    well as some post-termination communications, with individuals

12    that would be relevant to the claims and defenses in the case

13    that he hasn't identified in his initial disclosures, which he

14    just recently substituted.  One of which includes a current

15    employee that may be providing him information --

16              THE COURT:  Okay.

17              MS. McGINNIS:  -- that he hasn't disclosed, but

18    also --

19              THE COURT:  That's --

20              MS. McGINNIS:  -- one of them includes --

21              THE COURT:  But that's an employee.

22              MS. McGINNIS:  But another one includes communications

23    that Mr. Fox had with an individual at a competitor at the time

24    that he was employed with MiMedx that shows not only that

25    Mr. Fox knew that another MiMedx employee was selling for that
```

1   particular company, but that Mr. Fox himself considered, at the

2   very least, we don't know anymore, but that Mr. Fox at least

3   considered selling products or signing up with this particular

4   company as well.

5           And that person is not identified in his initial

6   disclosures.  So it does extend beyond that because we have got

7   duty of loyalty claims.  It is not just who was selling, but

8   what Mr. Fox knew and in fact --

9           THE COURT:  Well --

10          MS. McGINNIS:  -- it is something Mr. Fox --

11          THE COURT:  -- for a period of 20 months is what

12  you're looking for, right?  Since January of '16.

13          MS. McGINNIS:  Yes, it is much more narrow even than

14  our discovery requests.

15          THE COURT:  I just asked you how long.

16          So if you got this information, what you're going to

17  get, assuming that Mr. Fox is on the phone a lot, both outgoing

18  and incoming calls, right?

19          MS. McGINNIS:  Uh-huh.

20          THE COURT:  You're going to get 20 months worth of

21  calls.  How many calls is that going to be?

22          MS. McGINNIS:  I don't know, your Honor.

23          THE COURT:  What do you think?

24          MS. McGINNIS:  Probably a lot because I do believe

25  Mr. Fox called and texted quite a bit is our experience.

1        THE COURT.  Right.  So maybe -- I am just talking

2   about phone calls for that because we already talked about

3   texts.

4        MS. McGINNIS:  Well, the subpoena asked for text logs.

5   So to the extent -- not the content.

6        THE COURT:  All right.  So for, you know, if he only

7   made ten calls a day, and we're talking about 500-plus days,

8   that's 5000 calls.

9        If it is a hundred calls, that's 50,000.

10       What are you going to do with that?  How are you going

11  to go through and determine what phone numbers you're

12  interested in?

13       MS. McGINNIS:  I think initially, your Honor, we would

14  start with some online research to see -- you know, a work up

15  of the phone number to see who it belongs to, see if we can

16  tell whether that is a potential -- a competitor of MiMedx.

17       If it is, you know, somebody that runs a

18  distributorship that sells, you know, medical products, that

19  might be relevant to the case.  You know, to do that type of

20  thing.

21       THE COURT:  Uh-huh.

22       MS. McGINNIS:  And then I would propose that to the

23  extent that there is somebody that we're not sure about, that

24  we have a communication with opposing counsel and see if

25  Mr. Fox can shed any light on those (unintelligible).

1    As a matter of fact, your Honor, we are taking

2    Mr. Fox's deposition on the 26th of October.

3    THE COURT:  Uh-huh.

4    MS. McGINNIS:  So we have those records.  We can ask

5    him in deposition, you know, who these people are, what his

6    relationship is.

7    THE COURT:  In the deposition you're going to run

8    through 50,000 phone calls?

9    MS. McGINNIS:  No.

10    THE COURT:  I doubt that.

11    MS. McGINNIS:  No, but we would go through the ones

12    that we --

13    THE COURT:  All right.

14    MS. McGINNIS:  -- don't know about.

15    THE COURT:  All right.  Well, let me ask, Mr. Premo,

16    you don't dispute that the plaintiff is entitled to know who

17    Mr. Fox may have discussed matters concerning the issues in

18    this case with?

19    MR. PREMO:  Correct, your Honor.

20    THE COURT:  And are they required to accept his

21    representation untested as to the universe of people that he

22    has spoken with?

23    MR. PREMO:  I'm sorry, your Honor.  Could you - I

24    didn't hear you.  Could you repeat that?

25    THE COURT:  Are they required to simply accept

1  Mr. Fox's representation as to the universe of people he has

2  spoken to about the issues in this case without an opportunity

3  to independently vet that in some way?

4          MR. PREMO:  I would say, yes, your Honor.  To -- and

5  here's --

6          THE COURT:  Well, let me -- stop.  I disagree with

7  that entirely.

8          MR. PREMO:  -- why.

9          THE COURT:  If he says I never took anything, are they

10  required to accept that because he says it?  Or are they

11  entitled to independently vet it?  Of course they are.

12          MR. PREMO:  Your Honor, if I may.  I -- the third --

13  third -- when you have a subpoena on phone records, and like

14  you do in this instance, for every phone call that Mr. Fox has

15  made over a nearly two-year time period, the defendant's

16  proposal is exactly the concern that we have, you know, that I

17  just expressed, that they would go one by one through each

18  phone number and find out who Mr. Fox has been talking to.

19          If there are -- if there are -- if there is some good

20  cause basis for that -- for MiMedx to learn about certain

21  entities, then -- then we could discuss broadening that scope.

22          But what my concern is and what Mr. Fox's concern is

23  is that seeking out all phone logs would uncover information

24  and communications that have no relation to the claims or

25  defenses in the case and could be embarrassing, expose him to

1   embarrassment, and it certainly exposes him to harassment to

2   know that MiMedx is now poring through every communication,

3   every person he has called over a two-year time frame.  That's

4   our concern.

5            THE COURT:  All right.  So -- and I understand that.

6   So -- and I don't know that the plaintiff would discount that

7   that's a legitimate concern that somebody would have with an

8   individual rummaging through phone records.

9            MS. McGINNIS:  But I --

10           THE COURT:  So how do we accommodate both of those

11  concerns?  Because the plaintiff has a right to make sure that

12  Mr. Fox isn't holding back on who he has communicated with

13  about the case.  And, on the other hand, Mr. Fox has a right to

14  make sure that the plaintiff isn't simply trying to troll for

15  information about calls that, you know, I don't know that there

16  is anything that would be embarrassing.  I am not assuming

17  there would be anything, but there are personal things that you

18  might say it is nobody's business.

19           So how do we accommodate those two concerns?

20           MS. McGINNIS:  Your Honor, if I --

21           MR. PREMO:  Your Honor, Stephen -- I'm sorry.  Go

22  ahead.

23           MS. McGINNIS:  I do have a proposal, your Honor.  And

24  a couple of things that I think address that.

25           First of all --

1    THE COURT:  Have you ever discussed these with

2  Mr. Premo?

3    MS. McGINNIS:  We have not because this is something

4  that came up yesterday.  We were not aware that the focus was

5  on (unintelligible) meet and confer, it was on the content of

6  the text messages.  So this is something that, you know, we

7  asked for clarification after our call on Monday, and we got

8  the email back yesterday.

9    THE COURT:  So what do you propose?

10    MS. McGINNIS:  Two things.  First of all, we do have a

11  protective order in the case.  So the call logs can be marked

12  confidential so that they can't go anywhere else.

13    The second thing that I propose is just what I said,

14  that we would do online research, reverse look ups, that type

15  of thing, to identify who the people are that Mr. Fox is

16  contacting and that we -- we would agree to not call anybody

17  until we have a further discussion with opposing counsel.

18    And in fact I would invite Mr. Fox to, at the same

19  time, he can provide, you know, with respect to the call logs,

20  here's who the people are, here is relationship with them.

21    We could compare the two and figure it out.  And then

22  once we agree, okay, this subset we agree upon, if there is a

23  subset that we don't agree upon, then we could come back to the

24  Court and ultimately we would have to explain to the Court why

25  we think this person might be relevant and that we should be

1  allowed to, you know, give them a call or seek, you know,

2  further discovery of a particular person.

3           We think that that would protect both the, you know,

4  potential calls to, say, doctors or, you know, healthcare

5  providers which, frankly, your Honor, I don't want to call all

6  those people.  I don't want to dig into that.  So --

7           THE COURT:  All right.  What do you say, Mr. Premo?

8           MR. PREMO:  Your Honor, again, I'm sorry, but we do

9  object to that, and here's why.  We don't want MiMedx's

10 attorneys or MiMedx to know who Fox has called because that --

11 our concern here is that MiMedx is -- continues to harass

12 Mr. Fox.  And that's noted by his most recent counterclaims of

13 a tortious interference, despite concessions from Mr. Lily

14 (phonetic) of MiMedx that (unintelligible) products are not

15 competitive and are (unintelligible.)

16          And so the proposal -- we can't agree to that

17 proposal.

18          THE COURT:  Okay.

19          MR. PREMO:  If there are -- if there are specific

20 individuals that MiMedx is concerned about or specific entities

21 that MiMedx is concerned about, if Mr. Fox is communicating

22 with certain competitors, we could a search for those

23 competitors's numbers.  There is -- their office numbers and

24 see if there are any matches.

25          THE COURT:  Okay.  All right.  My ruling is that the

1  call logs are to be produced.  And those I will require to be

2  give to plaintiffs's counsel.  I will order that it be

3  attorneys's eyes only.  I will further order that nobody on

4  that list be contacted until there has been a discussion with

5  the defense.

6       So, in other words, with respect to -- I want the

7  there to be conflicting production locations for AT&T and

8  Verizon.  So I will allow your subpoena, Mr. Premo, or your

9  subpoenas, to require production both the call logs and the

10 texts to you.

11      But once you get the call logs, they are to be

12 provided to plaintiffs's counsel with the limitations that I

13 described and what they can do with them.

14      With the texts you have first the opportunity to

15 review them to determine what's relevant based on what I have

16 described and to log anything that you withhold on the basis of

17 privilege.

18      MS. McGINNIS:  Your Honor if I may, the logs are not

19 subject to the Storage Communications Act and so the carriers

20 will provide those directly to us pursuant to our subpoena.

21      THE COURT:  Well, they won't because I'm quashing your

22 subpoena.

23      MS. McGINNIS:  Okay.

24      THE COURT:  Once there is a new subpoena -- that was

25 my whole point about them not having confusion about, do I give

1　this to this attorney, do I give that to another attorney.　I

2　don't want the carriers to be kind of betwixt and between.

3　　　　　MS. McGINNIS:　I understand, your Honor.

4　　　　　Then my -- with respect to the subpoenas that are

5　issued, the subpoena that Mr. Fox issued yesterday was only

6　with respect to text messages to Verizon.

7　　　　　THE COURT:　So we have to -- so if you don't wish to

8　subpoena that, Mr. Fox, then I'll let their subpoena stand with

9　respect to the call logs, and they will just get them directly.

10　It is your choice.

11　　　　　MR. PREMO:　Your Honor, we would -- we would agree to

12　add phone logs to our subpoena.

13　　　　　THE COURT:　Okay.　So you will amend your subpoena

14　that has already been served.　Was that on AT&T?

15　　　　　MR. PREMO:　It is Verizon.

16　　　　　THE COURT:　Okay.　Sorry.　Okay.　So then the you

17　issue to AT&T will have both.

18　　　　　MR. PREMO:　Correct, your Honor.

19　　　　　And, your Honor, may I please request just a slight

20　modification to your order with respect to attorneys's eyes

21　only?　We would ask that the contact information be kept, that

22　it be attorneys's eyes only, and that information only relating

23　to competitors be shared with MiMedx's -- with MiMedx.

24　　　　　THE COURT:　Well, let me say this.　Right now pending

25　any conversation that plaintiffs's counsel has with counsel for

1  Mr. Fox, they are not sharing anything with MiMedx.

2           MR. PREMO:  Very good, your Honor.

3           THE COURT:  Period.

4           MR. PREMO:  That's sounds fine.

5           MS. McGINNIS:  Your Honor, if I may, the subpoenas

6  for -- that Mr. Premo's office is going to send out, I believe

7  it should match the language of ours with respect to call and

8  text logs.  Because we specifically requested those.  It wasn't

9  just the call logs.

10          THE COURT:  All right.  Mr. Premo?

11          MR. PREMO:  No objection.

12          THE COURT:  All right.  Very good.

13          So why don't you do the amended one to Verizon and the

14  fresh one to AT&T, again, by tomorrow.

15          MR. PREMO:  Will do, your Honor.

16          THE COURT:  And my order will read that once those are

17  served, the subpoenas that MiMedx had served will be quashed.

18          MS. McGINNIS:  Once they are served or once the -- the

19  information is provided by Verizon, your Honor.  I thought

20  that's what you had said earlier.

21          THE COURT:  No, once they are served.  Because it is

22  the service that triggers the reservation.

23          MS. McGINNIS:  Okay.

24          THE COURT:  Your concern expressed that if I quash

25  these, and then they take five days to serve then

1    (unintelligible) in the gap.

2            MS. McGINNIS:  Uh-huh.

3            THE COURT:  Once they have the new subpoenas, they're

4    not allowed to destroy things that would be responsive to the

5    subpoenas.

6            MS. McGINNIS:  Okay.  The language that Mr. Premo has

7    put in his subpoena yesterday to Verizon included some language

8    about to the extent that any information was preserved in -- in

9    response to MiMedx's subpoena, that it be produced as well.

10   And so I'd ask that they continue to use that language in the

11   new subpoenas.

12           THE COURT:  I don't know what language you're talking

13   about.  Say that again.

14           MS. McGINNIS:  They included in their subpoena to

15   Verizon language that we had requested in the meet and confer

16   call.

17           THE COURT:  Okay.

18           MS. McGINNIS:  Which was that to the extent that the

19   carrier preserved information in response to our subpoena, that

20   their subpoena -- that information should be produced in

21   response to their subpoena as well.

22           THE COURT:  Is that language in the subpoena that you

23   served on Verizon?

24           MR. PREMO:  Yes, your Honor.

25           THE COURT:  So you will include that?

1          MR. PREMO:  Yes, your Honor.

2          THE COURT:  Okay.

3          MS. McGINNIS:  Thank you.

4          THE COURT:  Very good.

5          All right.  I think that takes care of the motion for

6  -- to quash and for protective order, which is granted in part

7  and denied in part.

8          I think that 26(a)(1) disclosures were due the 21st of

9  the month.  Were those made?

10         MS. McGINNIS:  They were, your Honor.

11         THE COURT:  And were they made by the defense?

12         MR. PREMO:  Yes, your Honor.

13         THE COURT:  Okay.  And I think today is the date for

14  the plaintiff to make certain proposal concerning sources and

15  custodians for electronically stored information searches and

16  search terms.

17         You are on track to do that?

18         MS. McGINNIS:  Yes, your Honor.  We are, your Honor.

19         THE COURT:  All right.  Very good.

20         So what should we do for another status?

21      (Discussion off the record.)

22         MS. McGINNIS:  I believe we have one the 16th.

23         THE COURT:  All right.  Then we'll hold that.  Okay?

24         MR. PREMO:  Yes, your Honor.

25         THE COURT:  All right.  Thank you very much.

1       MS. McGINNIS:  Thank you your Honor.

2       MR. PREMO:  Thank you, your Honor.

3       (Which concluded the proceedings.)

4                           CERTIFICATE

5       I certify that the foregoing is a correct transcript

6  from the digital recording of proceedings in the above-entitled

7  matter to the best of my ability, given the limitation of using

8  a digital-recording system.

9

10

11  /s/Pamela S. Warren                    September 28, 2017
    Official Court Reporter                      Date
12  United States District Court
    Northern District of Illinois
13  Eastern Division

14

15

16

17

18

19

20

21

22

23

24

25