**1**

```
            UNITED STATES DISTRICT COURT
            NORTHERN DISTRICT OF ILLINOIS
                  EASTERN DIVISION

MIMEDX GROUP, INC.,              )
                                 )
            Plaintiff,           )
                                 )
     vs.                         )  No. 16 C 11715
                                 )
MICHAEL FOX,                     )  Chicago, Illinois
                                 )  November 9, 2017
            Defendant.           )  10:01 o'clock a.m.

            TRANSCRIPT OF PROCEEDINGS
       BEFORE THE HONORABLE MANISH S. SHAH
```

APPEARANCES:

For the Plaintiff:      WARGO & FRENCH, L.L.P.
                        BY: MR. DAVID M. PERNINI
                        999 Peachtree Street, N.E., 26th Floor
                        Atlanta, Georgia  30309
                        (404) 853-1500

                        SIDLEY AUSTIN, L.L.P.
                        BY: MR. JASON G. MARSICO
                        One South Dearborn Street
                        Chicago, Illinois  60603
                        (312) 853-7735

For the Defendant:      GREIMAN, ROME & GRIESMEYER, L.L.C.
                        BY: MR. ADAM C. MAXWELL
                        Two North LaSalle Street, Suite 1601
                        Chicago, Illinois  60602
                        (312) 428-2748


            COLLEEN M. CONWAY, CSR, RMR, CRR
                 Official Court Reporter
        219 South Dearborn Street, Room 1714
              Chicago, Illinois  60604
                    (312) 435-5594
          *colleen_conway@ilnd.uscourts.gov*

1  (Proceedings heard in open court:)
2  THE CLERK: 16 C 11715, MiMedx Group versus Fox.
3  MR. MAXWELL: Good morning, Your Honor. Adam Maxwell
4  on behalf of the defendant/counterplaintiff.
5  MR. PERNINI: Good morning, Your Honor. David
6  Pernini of Wargo & French on behalf of MiMedx.
7  MR. MARSICO: Good morning, Your Honor. Jason
8  Marsico, local counsel on behalf of plaintiff.
9  THE COURT: Good morning.
10  Motion to amend the counterclaim, I understand
11  there's an objection?
12  MR. PERNINI: Yes, Your Honor.
13  Your Honor, we understand that while leave to amend
14  is often freely given, there are limitations to that, as the
15  Seventh Circuit has held. It's inappropriate where there's
16  been undue delay, bad faith, or dilatory motive or prejudice,
17  and if there's futility in the amendment, and all of those are,
18  in fact, occurring in this case.
19  Your Honor, in their complaint -- or in their -- I'm
20  sorry, in their motion, they say this case is in its infancy.
21  That is simply not the case. This case has been pending since
22  December of 2016.
23  In March of 2017, they provided a joint status report
24  which -- in which they said, "We intend to bring claims,"
25  including Dodd-Frank retaliation claims. They did not bring

1  those claims at any time.  They did not bring any counterclaim
2  until this Court in August told them, "It's time.  Please bring
3  your counterclaims," and gave them a deadline.  They then
4  brought their counterclaims and specifically did not bring this
5  Dodd-Frank claim.  Instead, they waited until last week to file
6  an amendment -- a motion to amend to add this claim in there.
7        During this time, Your Honor, discovery has been
8  ongoing.  We have been working with the magistrate judge on ESI
9  terms and the scope of discovery.
10       I would say, you know, we had scheduled the
11 deposition of Mr. Fox.  I think the Court is aware that they
12 unilaterally canceled that deposition.  It now makes a lot more
13 sense as to why they did that.  It's because it apparently is
14 to avoid the claiming that we had already taken his deposition
15 before they tried to amend the complaint.
16       We have -- the reason that they're saying discovery
17 is -- their case is in its infancy has more to do with their
18 failure to prosecute this case.
19       THE COURT:  Can I pause you for a moment and --
20       MR. PERNINI:  Of course.
21       THE COURT:  -- ask you -- instead of the history of
22 the litigation and the dynamics of delay, keep in mind that
23 under the existing schedule, I built in an opportunity to amend
24 the pleadings up until February.
25       So I am not so troubled by the timing, although I

1  appreciate that the nature of the allegations is such that it
2  could very well impact the scope of the case, but that happens.
3  What I am most interested in -- and I might want to take briefs
4  on this, so you don't necessarily have to say everything you
5  want to say. But the thing I am most interested in would
6  probably be futility and whether, based on the allegations of
7  the proposed amendment, Mr. Fox, in fact, falls under the
8  whistleblower protections as pled.
9         MR. PERNINI: Certainly, Your Honor. And it is clear
10 that Mr. Fox does not, even as alleged in the complaint. To be
11 a whistleblower under the Act, you have to be someone who
12 has -- and this is under 15 U.S.C. 17 -- 78u-6. And you have
13 to be a person who has reported the activity to -- the
14 commission, which, in his complaint, he admits didn't occur
15 until January. He was terminated in December of 2016. So he
16 was not a whistleblower at the time of the employment action
17 that would be relevant here.
18        Your Honor, another judge in this court, Judge
19 Shadur, or Shadur I believe his name is --
20        THE COURT: Shadur.
21        MR. PERNINI: -- Shadur, I apologize -- recently
22 addressed this very same issue and granted a 12(b)(6) motion to
23 dismiss without even waiting for the reply -- or a response
24 because he thought the issue was that clear. And that's at
25 2017 Westlaw 246, 1548. It simply on its face does not fit.

1  But, Your Honor, there is one other issue I'd like to
2  address, and that is the dilatory motive and bad faith aspect
3  here, because that does come into play here.
4  The complaint's -- the amended complaint's very long
5  and it includes a lot of very spurious allegations, including
6  whole sections having to do with allegations of the company's,
7  MiMedx's, activities in regards to people other than Mr. Fox,
8  specifically allegations regarding a gentleman named
9  Mr. Tornquist and a gentleman named Mr. Kruchoski.  These two
10 ex-employees of MiMedx are in litigation with MiMedx and were
11 previously represented by Mr. Fox's new counsel, the Halunen
12 firm.
13 He -- in the amended complaint, he adds whole
14 sections of discussions that Kruchoski and Tornquist had with
15 different people, not ever alleging that Mr. Fox either knew
16 about these conversations or was a party to these
17 conversations.
18 Perhaps most egregiously, in paragraph 118, they
19 attach to the complaint a settlement offer made by my law firm,
20 Wargo & French, to the Halunen firm to settle not the Fox case,
21 but the Kruchoski and Tornquist cases.  The settlement offer
22 was made after Mr. Fox was terminated.  It has nothing to do
23 with any retaliation made against Mr. Fox.  He was not copied
24 on that communication.
25 And moreover, Your Honor, it would -- it was improper

for them to attach it because it had to do with communications regarding a party not to this case.

So the question comes, why would they, first, not bring this Dodd-Frank's claim when they knew about it in March and the Court told them to add a claim? And then why would they add it now and add allegations that don't help support the claim?

And unfortunately, the most obvious answer has to do with the press. Right now, MiMedx is in a very difficult battle with short sellers, people who are trying to put out bad press about the company in order to drive its stock price down.

Mr. Fox, we know through discovery in this case, and other cases as well, has said that he wants to drive MiMedx's stock price down by 75%. Mr. Fox has stated he wants to see blood dripping from the company.

We know through confidential discovery that we've received from Mr. Fox that he has been in contact with some of these short sellers. So when they filed a complaint, they put it in the record, they attach this settlement discussion, which has nothing to do with this case, and what happens? Not unexpectedly, the short sellers pick it up, and it has been all over the internet, Twitter. There's been -- a full copy of the settlement agreements now have been published. And sure enough, what happened yesterday? Our stock price went down.

We believe that's the motive going on here for

1 bringing a claim, which is otherwise frivolous and other -- and
2 could have been brought at the time. And the Court is allowed
3 to take that into account when determining whether or not to
4 allow an amendment.
5     THE COURT: Okay. Is there some particular reason
6 why Mr. Fox didn't bring this counterclaim, which he did say he
7 planned on bringing at the very beginning of this case, is
8 there some reason he didn't bring it the first time he filed a
9 counterclaim?
10     MR. MAXWELL: Sure, Your Honor. And just to address
11 some of these allegations that Mr. Pernini just stated with
12 regard to what Mr. Fox has said and things of that nature.
13     None of that has been disclosed in discovery. That's
14 the first I've ever heard of it, number one.
15     Number two, MiMedx has not answered any discovery to
16 that nature at all. The only thing they've produced is
17 Mr. Fox's personnel file, which was produced in February of
18 2017 at our request under an Illinois statute, and then it was
19 reproduced in discovery. That's the only thing that's been
20 produced. That relates to undue delay. It relates to
21 prejudice.
22     MiMedx supplemented their initial disclosures
23 yesterday.
24     THE COURT: Let me pause you there and just ask you
25 to focus on my question. Why didn't you bring this

1  counterclaim at the time you brought the counterclaim that you
2  did bring?
3  　　　　MR. MAXWELL: Your Honor, as a matter of course, we
4  do an ongoing investigation. We -- in the course of discovery,
5  we did issue an extensive set of requests for admissions.
6  Those demonstrate -- the answers to those we received on
7  October 11th. They demonstrate more of MiMedx's retaliatory
8  animus in this case.
9  　　　　MiMedx also on the date that we amended our
10 complaint, September 7th, the same day, made a press release
11 that confirmed, admitted that they suspected that Mr. Fox
12 himself assisted these whistleblowers, Tornquist and Kruchoski,
13 in December of 2016 while he was employed.
14 　　　　That information certainly sheds light on MiMedx's
15 motive in bringing this lawsuit, which their theory has
16 completely changed from the date that they first filed their
17 complaint and their amended complaint. That's another matter.
18 But it does shed light on the retaliatory animus and their
19 motive. And in retaliation cases, intent to retaliate is a key
20 factor.
21 　　　　THE COURT: Do you agree that the way you've pled the
22 new counterclaim is likely full of unnecessary detail for
23 purposes of pleading?
24 　　　　MR. MAXWELL: No, Your Honor, I don't.
25 　　　　And with respect to the settlement communication

Case: 1:16-cv-11715 Document #: 119 Filed: 11/09/17 Page 9 of 12 PageID #:2309

9

aspect of it, MiMedx sent us a letter about that, asking us to withdraw the allegation. We responded fully with a three-page letter that that communication's not privileged under 406(b), the exclusion to settlement communications, first. And second, we're not trying to use it in evidence at this point.

But to the extent that there's more information in the complaint than necessary for a notice pleading, that's certainly true, but I think that's our prerogative on what to include. And what has been included mainly are conversations showing bad acts of MiMedx employees and also their retaliatory animus in that regard. So I don't think -- I think it does color the allegations and color the claims, which is I think what's necessary in this case.

THE COURT: What I would propose is that I take a -- I brief the motion to amend the counterclaim.

I think MiMedx has a reply brief due on the motion to dismiss the breach of contract, defamation, and the declaratory judgment claims, and that right now would be due on November 15th.

MR. PERNINI: That's correct, Your Honor.

THE COURT: Do you think you could file your response to the motion to amend by November 15th as well?

MR. PERNINI: And that is -- I don't have my calendar. That is next what?

THE COURT: It is next Wednesday. So it's less than

1  a week from today.
2           MR. PERNINI:  Could we have till the 16th, Your
3  Honor?
4           THE COURT:  Yes.
5           MR. PERNINI:  Yes.  Thank you.
6           THE COURT:  And I'll move your date to file your
7  reply brief to the 16th as well.
8           MR. PERNINI:  Thank you, Your Honor.
9           THE COURT:  Because we might as well brief -- I might
10 as well complete briefing on whether the breach of contract,
11 defamation, declaratory judgment claims are adequately pled as
12 well.  Might as well brief that -- finish briefing that.
13 Those, as I -- as far as I could tell, I don't think those
14 changed in the proposed amended counterclaim.
15          MR. MAXWELL:  The proposed amended counterclaim does
16 not have an impact on the claims that are currently being
17 briefed.
18          THE COURT:  Okay.  So let's complete that briefing.
19 I'll take your response as well on the motion to amend to add
20 the whistleblower retaliation claims.
21          How much time would you like to reply?
22          MR. MAXWELL:  14 days, Your Honor.
23          THE COURT:  That would be November 30th.
24 Thanksgiving's in the middle there.
25          MR. MAXWELL:  That's okay, Your Honor.

1 THE COURT: Is that okay? Okay. Then I will issue
2 something in writing and set any dates based on that.
3 In the meantime, you've got your discovery issues
4 with Magistrate Judge Schenkier, and I'll leave you to that.
5 MR. PERNINI: Okay.
6 MR. MAXWELL: Thank you, Your Honor.
7 MR. PERNINI: Thank you, Your Honor.
8 THE COURT: Okay. Thank you.
9 (Proceedings concluded.)

```
 1                          C E R T I F I C A T E
 2
 3
 4
 5              I, Colleen M. Conway, do hereby certify that the
 6      foregoing is a complete, true, and accurate transcript of the
 7      proceedings had in the above-entitled case before the
 8      HONORABLE MANISH S. SHAH, one of the Judges of said Court, at
 9      Chicago, Illinois, on November 9, 2017.
10
11
12              /s/ Colleen M. Conway, CSR, RMR, CRR        11/09/17
13                      Official Court Reporter              Date
                       United States District Court
14                     Northern District of Illinois
                              Eastern Division
15
```

Colleen M. Conway, Official Court Reporter