**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MIMEDX GROUP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:16-CV-11715 |
| | ) | |
| MICHAEL FOX, | ) | Judge Manish S. Shah |
| | ) | Magistrate Judge Sidney I. Schenkier |
| Defendant. | ) | |
| | | |
| MICHAEL FOX, | ) | |
| | ) | |
| Counter-Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| MIMEDX GROUP, INC., | ) | |
| | ) | |
| Counter-Defendant. | ) | |

**DEFENDANT/COUNTER-PLAINTIFF MICHAEL FOX'S
MEMORANDUM IN SUPPORT OF MOTION TO COMPEL**

1

## INTRODUCTION

Defendant/Counter-plaintiff Michael Fox seeks to obtain deposition transcripts that MiMedx Group, Inc. has obtained in other, related cases it has launched against Fox's former co-workers and subordinates. The related cases arise out the same alleged wrongdoing by former employees—alleged sales of non-MiMedx products—and the facts, claims, and defenses involved in each action are nearly identical and otherwise substantially overlap.[1] Two of the cases also include claims relating to MiMedx's orchestration of a fraudulent channel-stuffing scheme and whistleblower retaliation—as is the case here. More than five months ago, on August 24, 2017, Fox issued a request for production seeking "all statements [MiMedx] obtained from any person relating to or concerning any of the facts, claims, defenses, or counterclaims at issue in this lawsuit." (Exhibit 1 at 10.) This Request plainly captures witness statements MiMedx has obtained through its other related litigation with Fox's former co-workers in the form of deposition transcripts. Thus began a months' long ordeal to obtain plainly relevant and discoverable deposition transcripts. MiMedx has avoided responding to this Request through (1) evasive discovery responses; (2) absurd interpretations of Fox's Request; (3) reneging on its promises; (4) ignoring Fox and unreasonably delaying production; and (5) finally producing some transcripts with heavy and indefensible redactions. Fox has endured MiMedx's jiggery-pokery for months. He need not endure it any longer. The Court should grant Fox's Motion.

---

[1] *E.g.*, *MiMedx Group, Inc. v. Tornquist*, 1:17-cv-00399-MLB (N.D. Ga.) (alleging claims against Tornquist for allegedly breaching his common-law and contractual obligations; counterclaims against MiMedx include Dodd-Frank retaliation and unlawful discharge in violation of Minnesota Whistleblower Act).

STANDARD OF REVIEW

"Discovery is a search for the truth." *Shapo v. Engle*, No 98 C 7909, 2001 U.S. Dist. LEXIS 2223, at *11 (N.D. Ill. Mar. 1, 2001). As such, it "is never limited to the narrow scope of a legal claim." *In re Peregrine Fin. Grp. Customer Litig.*, No. 12 C 5546, 2015 U.S. Dist. LEXIS 34829, at *9 (N.D. Ill. Mar. 20, 2015). Therefore, while Fox's "allegations are important to the scope of discovery," they "do not necessarily define the boundaries that separate what is appropriate from what is too far afield for discovery purposes." *See id.*

To effectuate the search for truth, Fed. R. Civ. P. 26(b)(1) permits litigants to obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the issues at stake in the action, the amount in controversy, the parties relative access to relevant information, the parties resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Although Rule 26 was amended in 2000 include the a so-called "proportionality" requirement, courts in this District have continued to hold: (a) that Rule 26 still "contemplate liberal discovery;"[2] (b) that "[t]he minimal showings of relevance and admissibility" required by amended Rule 26 "hardly pose much of an obstacle for

---

[2] *Saket v. American Airlines, Inc.*, No. 02 C 3452, 2003 U.S. Dist. LEXIS 2797, at *4 (N.D. Ill. Feb. 26, 2013); *see also Burkybile v. Mitsubishi Motors Corp.*, No. 04 C 4932, 2006 U.S. Dist. LEXIS 57892, at *(N.D. Ill. Aug. 2, 2006) (noting that "[b]oth the text of Rule 26(b) and the decisions interpreting it attest to the extraordinary breadth of discovery in the federal courts"). Other courts across the country have held similarly, explaining that the 2000 "amendments to Rule 26(b)(1) do not dramatically alter the scope of discovery." *World Wrestling Federation Entertainment, Inc. v. William Morris Agency, Inc.*, 204 F.R.D. 263, 265 n.1 (S.D.N.Y. 2001); *see also Richmond v. UPS Service Parts Logistics*, No. IP01-1412-C-H/G, 2002 U.S. Dist. LEXIS 7496, at *4 (S.D. Ind. Apr. 25, 2002) (noting that "[t]he implementation of amended Rule 26 did not necessarily impact the so called 'liberal discovery' standard as evidenced by cases interpreting the post-amendment rule").

an inquiring party to overcome, even considering the recent amendment to Rule 26(b)(1);"[3] (c) that "[d]iscovery is ordinarily allowed" if there is even "'a possibility that [it] may lead to information relevant to the subject matter in the action;"[4] (d) that "[t]he party opposing discovery *always* carries the burden of showing why the requested discovery is improper;"[5] (e) that "generalized boilerplate objections have no effect;"[6] and (f) that litigants who oppose discovery cannot meet their burden by a reflexive invocation of the same baseless, often abused litany that the requested discovery is vague, ambiguous, overly broad, [or] unduly burdensome," but rather must make a "specific showing of what is involved." *In re Peregrine Fin. Grp. Customer Litig.*, 2015 U.S. Dist. LEXIS 34829, at *11-12, 13 (citation omitted).

In short, while "the scope of discovery has narrowed somewhat under the revised rule [26(b)]," the change "is not dramatic, and broad discovery remains the norm." *Sanyo Laser Prods. v. Arista Records, Inc.*, 214 F.R.D. 496, 500 (S.D. Ind. 2003). Accordingly, "before restricting discovery, the court should consider the totality of the circumstances, weighing the value of the material sought against the burden of providing it, and taking into account society's interest in furthering the truth-seeking function in the particular case before the court." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002).

---

[3] *Anderson v. Hale*, No. 00 C 2021, 2001 U.S. Dist. LEXIS 6127, at *8 (N.D. Ill. May 10, 2001); *see also NDK Crystal, Inc. v. Nipponkoa Ins. Co.*, No. 10 C 1824, 2011 U.S. Dist. LEXIS 1050, at *12-13 (N.D. Ill. Jan. 4, 2011) (confirming that "[u]nder the revised version [of Rule 26], however, a liberal discovery standard still applies").
[4] *In re Peregrine Fin. Grp. Customer Litig.*, No. 12 C 5546, 2015 U.S. Dist. LEXIS 34829, at *6 (N.D. Ill. Mar. 20, 2015) (emphasis added) (citation omitted).
[5] *Id*. at *10.
[6] *Id*. at *11.

## A History of Meet-and-confer Efforts, Starring MiMedx's Bad Acts

**Act I:** *Evasion.* **Fox Asks for Deposition Transcripts from MiMedx's Other Litigation; MiMedx Posits that Deposition Transcripts Are Not "Statements."**

As stated above, in August 2017, Fox sought from MiMedx in discovery "all statements you have obtained from any person relating to or concerning any of the facts, claims, defenses, or counterclaims at issue in this lawsuit." (Exhibit 1 at 10, Request No. 30.) This plainly captured deposition transcripts MiMedx obtained in its litigation against Fox's former co-workers arising out of many of the same operative facts. In signaling that it had no intention to read and respond to Fox's Request in good faith, MiMedx adopted a transparently contortionist construction of the Request, so as to evade its discovery obligations: specifically, and incredibly, MiMedx claimed that "a 'deposition' is not a 'statement' that MiMedx has 'obtained'" but rather constitutes only "oral testimony taken down by a court reporter.'" ECF No. 105 n.2. Although it took much coaxing, MiMedx wisely chose not to die on that hill. But that did not mean MiMedx would begin to cooperate.

**Act II:** *Delay*. **MiMedx Feigns Cooperation to Delay Discovery.**

On November 17, 2017, Fox sent MiMedx a letter detailing the Company's numerous discovery deficiencies.[7] Fox specifically demanded the production of transcripts that relate to the facts, claims, defenses, or counterclaims in this lawsuit. (Exhibit 2 at 5.)

On November 28, 2017, the parties met and conferred. (*See* Exhibit 3 at 2.) Although Fox's position has always been clear, unwavering, and well-known to MiMedx, MiMedx indicated that it would need to further confer internally and provide Fox its final position on the

---

[7] Some of these matters have been resolved. On others, the parties have reached an impasse and an additional motion to compel is forthcoming. However, the matter of outstanding deposition transcripts is time-sensitive in light of Fox's upcoming deposition on February 8, 2017.

production of statements obtained in other litigation. (*See* Exhibit 3 at 2.) On December 1, 2017, MiMedx offered a dubious bargain in stating that it would "review the deposition transcripts from the other matters involving former MiMedx employees, and will produce the portions of transcripts that *relate to the claims and defenses* in this matter . . . ." (Exhibit 4 at 3 (emphasis added).)

**Act III:** *The Bait and Switch*. **Apparently After Reading the Transcripts, MiMedx Reneges on Its Promise.**

Over a month later, on January 12, 2018, MiMedx reneged on its promise. Whereas MiMedx initially agreed to produce portions of transcripts that *related to the claims and defenses*, (Exhibit 4 at 3) MiMedx suddenly backpedaled and stated that it would produce portions of deposition transcripts that include testimony *related only to Mr. Fox specifically*—not the claims and defenses as well. (Exhibit 5 at 2.) Fox suspects that in that one-month period MiMedx's counsel had enough time to read through the deposition transcripts at issue. In its review, MiMedx very likely saw some testimony it did not like. Fox quickly identified the discrepancy and on January 18, 2018, and asked MiMedx to confirm that it would honor its previous promise to produce transcripts to the extent that they relate to the claims and defenses in the case—not just portions of the testimony that relates to Fox specifically. (Exhibit 6 at 1.) *MiMedx ignored Fox, refused to so confirm, and failed to provide any explanation for its about-face.* (Premo Decl. ¶ 5.)

**Act IV:** *Denouement.* **MiMedx Reveals the Trick, Producing Fragmented Transcripts and Omitting Crucial Testimony That is Unfavorable to MiMedx.**

In the intervening period, on January 24, 2018, Judge Shah entered an Order permitting Fox to amend his Counterclaim to add claims under the Illinois Whistleblower Act and Dodd-Frank Act. ECF No. 145. Fox hence demanded the complete and immediate production of

6

unredacted transcripts in light of MiMedx's delays, the recently added Counterclaims expanding the scope of discovery, and documents MiMedx produced. (Exhibit 7 at 1.) In response, finally confirming that it had indeed backpedaled from its prior promise, MiMedx stated that it was producing only those limited portions of transcripts that *specifically relate to Fox*. (Exhibit 8 at 1.) Then, channeling Kafka, MiMedx claimed that if Fox was asking for complete transcripts, this was an altogether new request and Fox would have to re-initiate the meet-and-confer process anew. (*See* Exhibit 8 at 1.) As is clear from the correspondence and the Parties' meet and confer efforts, MiMedx's position is untenable. Fox need not go through the needless rigmarole and countenance further bad-faith delays in the Company's production.

Even assuming MiMedx had honored its previous agreement to produce all transcripts as they relate to *the claims and defenses*, and not just Fox, MiMedx's production would still have been inadequate. Fox's counsel has communicated with Harold Purdy's counsel, who confirmed that he had posed questions to MiMedx's 30(b)(6) witness relating to the Lilly Memo, (ECF No. 147 Ex. 13; Premo Decl. ¶ 3.), in which Lilly which admits to the non-competitiveness of Halo and CPN products—a central issue in both Purdy's and Fox's lawsuit. Tellingly, MiMedx omitted any reference to Lilly Memo from the 30(b)(6) deposition transcript, apparently believing that it could get away with its ploy.

## ARGUMENT

**A.  MIMEDX MUST PRODUCE DEPOSITIONS IN RELATED LITIGATION ARISING OUT OF THE SAME SETS OF FACTS**

MiMedx fired Fox for his opposition to an expansive fraudulent channel-stuffing scheme, orchestrated at the highest levels of MiMedx. ECF No. 147 ¶ 3. In November 2016, Fox's former subordinates—Jess Kruchoski and Luke Tornquist—reported the Company's failure to pay commissions as well as the Company's fraudulent channel-stuffing scheme. ECF No. 147 ¶ 3,

7

77, 79. In response, MiMedx engaged in a retaliatory, swamp-dredging investigation, culminating in the termination of Fox, Kruchoski, and later Fox. ECF No. 147 ¶ 3. After his termination, on January 17, 2017, Fox assisted in an SEC investigation into MiMedx, lifting the veil on a fraudulent scheme that could carry severe civil and criminal penalties. ECF No. 147 ¶ 4. As a result, and in further retaliation, MiMedx tortiously interfered with Fox's subsequent employment with a non-competitor. ECF No. 147 ¶ 4. The existence, gravity, and breadth of MiMedx's fraud, combined with the Company's repeated denials of any wrongdoing, explains MiMedx's attempts to silence, punish, and discredit known or suspected whistleblowers, including Fox.

MiMedx, on the other hand, asserts that Fox was terminated for cause, like the rest of his co-workers, for breaching his contractual and common-law obligations to the Company. *See, e.g.*, ECF No. 18 ¶¶ 29–36; 41–63. MiMedx apparently contends that Fox is essentially vicariously liable for the alleged side-selling of his former subordinates and providing information or documents to his co-workers without authorization. *See, e.g.*, ECF No. 18 ¶¶ 29–36; 41–63. MiMedx's treatment and categorization of these companies: first, as "ancillary and noncompetitive", and then later, in the midst of litigation, as "directly competitive." MiMedx further alleges that, as a result of Fox's action or inaction with respect to some or all of these sued former co-workers, MiMedx has been damaged in the form of lost customer relationships, lost profits, and other out-of-pocket costs and expenditures. *See, e.g.*, ECF No. 18 ¶¶ 45, 50, 62, 67.

### 1. The *Kruchoski* and *Tornquist* Litigation.

As stated above, Jess Kruchoski and Luke Tornquist are former MiMedx employees and subordinates of Fox. MiMedx identified both employees as individuals with knowledge

regarding the claims and defenses in the Company's initial disclosures. On December 12, 2016, MiMedx terminated Kruchoski and Tornquist and later brought suit against them, ECF No. 147 ¶ 90 n.1., alleging they had breached the contractual and common-law duties by selling competitive products—conduct for which MiMedx apparently claims Fox is liable. *See, e.g.*, ECF No. 18 ¶¶ 61–62. Kruchoski and Tornquist countersued, alleging they were terminated for reporting MiMedx's legal violations, including the fraudulent channel-stuffing scheme.

Kruchoski and Tornquist have each been deposed, almost certainly on topics that bear directly on the issues in this case. MiMedx has failed to produce complete copies of Kruchoski and Tornquist's depositions. Instead (and contrary to the MiMedx's oral and written statements through meet and confer efforts), MiMedx has produced only portions of the transcripts that specifically reference Fox. But Fox's Request for these individuals' testimony is proportional and relevant to the claims and defenses in this case that extend beyond specific reference to Fox. Both Kruchoski and Tornquist are believed to have provided testimony that (a) corroborates Fox's allegations of the channel-stuffing scheme, (b) identifies party admissions, (c) shows that they, too, were terminated after reporting and opposing MiMedx's scheme, and (d) discusses the amount in sales of non-MiMedx products they generated, for which MiMedx presumably wants to hold Fox liable. MiMedx's retaliatory conduct toward other former employees is relevant and discoverable in this case. *See Zafar Hasan v. Foley & Lardner LLP*, 552 F.3d 520, 529 (7th Cir. 2008) ("[T]his kind of 'me too' evidence can be relevant to a discrimination claim."); *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 491 (7th Cir. 2007) (behavior toward or comments directed at other employees in the same protected group constitutes evidence of intentional discrimination). Case law across the country is in accord.[8]

---

[8] *Quigley v. Winter*, 598 F.3d 938, 951 (8th Cir. 2010) (same); *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1287 (11th Cir. 2008) (same); *Simpson v. Kay Jewelers*, 142 F.3d 639, 642 (3d Cir. 1998); *Barclay v. Mercy*

Further, in his 26(a) initial disclosures, Tornquist identified Jeff Garrett, MiMedx Manager of Distribution and Logistics, as someone likely to have discoverable information regarding MiMedx's orchestrated and systemic channel stuffing on a national level; MiMedx's orchestrated and systemic practice of delaying returns of unpurchased product to balance losses against equivalent or larger revenue; and adverse actions against comparator employees. (Exhibit 9 at 46.) On information and belief, Garrett has had his deposition taken in the *Tornquist* litigation. MiMedx has failed to produce Garrett's testimony—*save for about eight lines of testimony*. In light of Tornquist's initial disclosures, Garrett is believed to have provided testimony that relates to Fox's reports to the SEC as well information about "me too" comparator employees who engaged in protected activity and were later fired.

Tornquist also identified Gregory Handcock, a former MiMedx shipping employee, in his Rule 26(a) initial disclosures as someone likely to have discoverable information regarding MiMedx's orchestrated and systemic channel stuffing on a national level, as well as adverse actions against comparator employees. (Exhibit 9 at 46.) MiMedx took Handcock's deposition in the Tornquist matter and has failed to produce it—*save for just two lines of testimony*. Handcock is believed to provided testimony that corroborates Fox's allegations of channel-stuffing, discusses party admissions, and shows that he, too, was terminated after he engaged in protected activity.

**2. The *Mills* Litigation.**

Taft Mills is a former MiMedx employee and subordinate of Fox. MiMedx identified him in its initial disclosures as someone with relevant knowledge. During his employment at MiMedx, Mills allegedly sold products by CPN Biosciences, LLC. On April 28, 2017, MiMedx

---

*Health Servs.-Iowa Corp.*, No. C 07-4074-MWB, 2009 U.S. Dist. LEXIS 70549, at *18 (N.D. Iowa Aug. 12, 2009) (same).

sued Mills based on this alleged moonlighting, and apparently contends that Fox is somehow liable for Mills' conduct in this case. And yet MiMedx has failed to produce complete copies of Mills' deposition beyond discussions involving specific reference to Fox.

In addition, in a recent press release announcing the settlement, MiMedx noted that Mills never made any allegations that MiMedx was engaged in a fraudulent channel-stuffing scheme. Mills was able to keep his job at CPN and move on with his life. Fox, on the other hand, lost his job at CPN and remains embroiled in litigation against MiMedx. This disparate treatment is plainly relevant to Fox's retaliation and tortious interference claims. Mills has had his deposition taken. MiMedx has failed to produce a complete copy of Mills' deposition and, to the extent they exist, other depositions in the *Mills* litigation.

### 3. The *Purdy* Litigation.

Harold Purdy is a former MiMedx employee and subordinate of Fox. MiMedx identified Purdy in the Company's initial disclosures as someone with relevant knowledge. During his employment at MiMedx, and while under the supervision of Fox, he allegedly sold non-MiMedx products. Purdy has been deposed. In addition, MiMedx President and Chief Operating Officer William C. Taylor was MiMedx's 30(b)(6) representative in the *Purdy* litigation. Based on communications with Purdy's counsel, Fox's counsel has reason to believe MiMedx has withheld Company statements made during Taylor's 30(b)(6) deposition regarding the competitiveness *vel non* of Halo and CPN products. As stated above, Fox's counsel has communicated with Harold Purdy's counsel, who confirmed that he had posed questions to MiMedx's 30(b)(6) witness relating to the Lilly Memo, (ECF No. 147 Ex. 13; Premo Decl. ¶ 3. ), in which Lilly which admits to the non-competitiveness of Halo and CPN products—a central

issue in both Purdy's, Fox's, and Mills' lawsuits.  But MiMedx apparently omitted any discussion pertaining to the Lilly Memo and the statements therein.

## CONCLUSION

Fox seeks deposition transcripts obtained by MiMedx in litigation against its former employees. All of the cases arose out of many of the same sets of operative facts, and the transcripts are plainly relevant and discoverable. Each transcript is a document, contained within which is information that MiMedx, by virtue of having produced some of it, concedes is relevant and discoverable. The discovery rules are broad, and it is not up to MiMedx to cast itself in the role of sole arbiter as to the relevance of each utterance in a deposition.

In any event, MiMedx could not possibly be trusted to do so.  MiMedx's conduct and abuse of the discovery process—in reneging on its promises during meet and confer efforts, misconstruing the scope of discoverable information, utilizing expansive and selective redactions, and strictly and unreasonably interpreting simple discovery requests, especially when it perceives the evidence is unfavorable to MiMedx—has proven such.

Although the Company may ultimately have an objection to the admissibility of a particular utterance within a deposition transcript, that is a question of admissibility, and not a question of discoverability. For all the above reasons, the Court should grant Fox's Motion and order the Company to produce complete transcripts of all depositions in the *Kruchoski*, *Tornquist*, *Mills*, and *Purdy* litigation.

Dated: February 2, 2018					Respectfully submitted,

**MICHAEL FOX**


*/s/ Stephen M. Premo*
Clayton D. Halunen (N.D. Ill. Bar No. 219721)
Mack H. Reed (ARDC No. 6287171)
Stephen M. Premo (*admitted pro hac vice*)
Christopher J. Moreland *(admitted pro hac vice)*
Halunen Law
1650 IDS Center
80 South Eighth Street
Minneapolis, MN  55402
Telephone:  (612) 605-4098
Facsimile:  (612) 605-4099
halunen@halunenlaw.com
reed@halunenlaw.com
premo@halunenlaw.com
moreland@halunenlaw.com


*/s/ Christopher S. Griesmeyer*
Christopher S. Griesmeyer (ARDC No. 6269851)
Adam C. Maxwell (ARDC No. 6306534)
Greiman, Rome & Griesmeyer, LLC
Two North LaSalle, Suite 1601
Chicago, Illinois 60602
Bus: (312) 428-2750
Fax: (312) 332-2781
cgriesmeyer@grglegal.com
amaxwell@grglegal.com

*ATTORNEYS FOR DEFENDANT/COUNTER-PLAINTIFF MICHAEL FOX*

**CERTIFICATE OF SERVICE**

    I hereby certify that on February 2, 2018, I electronically filed the attached **Notice of Motion to Compel** with the Clerk of the Court via the CM/ECF System, which will send notification of such filing to those registered to receive electronic notices via email transmission at the email addresses provided by them:

| | |
|---|---|
| Ami N. Wynne | Joseph D. Wargo |
| Jason G. Marsico | Shanon J. McGinnis |
| SIDLEY AUSTIN LLP | David M. Perini |
| One South Dearborn | WARGO & FRENCH, LLP |
| Chicago, IL 60603 | 999 Peachtree Street, NE, 26th Floor |
| awynne@sidley.com | Atlanta, GA 30309 |
| jmarsico@sidley.com | jwargo@wargofrench.com |
| | smcginnis@wargofrench.com |
| | dpernini@wargofrench.com |

                                                       /s/ Stephen M. Premo
                                            Stephen M. Premo (*admitted pro hac vice*)
                                            Halunen Law
                                            1650 IDS Center
                                            80 South Eighth Street
                                            Minneapolis, MN 55402
                                            Telephone: (612) 605-4098
                                            Facsimile: (612) 605-4099
                                            premo@halunenlaw.com