**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MIMEDX GROUP, INC., )<br>)<br>Plaintiff, )<br>)<br>-vs- )<br>)<br>MICHAEL FOX, )<br>)<br>Defendant. )<br>_____ )<br>)<br>MICHAEL FOX, )<br>)<br>Counter-Plaintiff )<br>)<br>-vs- )<br>)<br>MIMEDX GROUP, INC., )<br>)<br>Counter-Defendant. )<br>_____ ) | CASE NO. 1:16-cv-11715-MSS-SIS<br><br>Judge Manish S. Shah<br><br>Magistrate Judge Sidney I. Schenkier |

**PLAINTIFF/COUNTER-DEFENDANT MIMEDX GROUP, INC.'S REPLY
MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT[1]**

---

[1] MiMedx respectfully requests oral argument regarding this Motion.

# INTRODUCTION

In a futile attempt to preserve his flawed claims, Fox's response brief ignores the dispositive evidence defeating his claims, fails to challenge (and therefore waives) many of MiMedx's arguments, and materially misstates the applicable law. In fact, the undisputed evidence from every CPN employee confirms that Fox was fired for poor performance and that MiMedx played no part in his termination from CPN. Fox's effort to cobble together a dispute with hearsay, conjecture, and speculation does not create a dispute of fact, and the Court should grant MiMedx summary judgment on Fox's claim for tortious interference.

Similarly, Fox's Illinois Whistleblower Act ("IWA") claim fails because the evidence does not show Fox's alleged "refusal to participate" in allegedly illegal activity in 2015 resulted in any adverse employment action. Remarkably, Fox continues to falsely argue he made less when promoted to a national vice president in 2015. But his pay records and his own damages expert confirm that Fox made more money in 2016 than he did in 2015—even if you consider restricted stock compensation.[2] Further, Fox fails to demonstrate any causal link between his alleged "refusal to participate" in Q3 2015 and MiMedx's alleged actions on December 29, 2016—some fourteen months later. Moreover, he fails to challenge in any way a number of MiMedx's legitimate, non-retaliatory reasons for his termination and misrepresents the record for the remaining reasons.[3] As result, all of Fox's remaining counterclaims fail.

# ARGUMENT

### 1. Fox Waived Challenges to Several of MiMedx's Arguments.

In his brief, Fox entirely fails to address a number of MiMedx's dispositive arguments:

---

[2] Moreover, Fox entirely ignores MiMedx's legitimate, non-retaliatory reasons for the promotion: MiMedx promoted Fox because of his skills.

[3] Fox presents no evidence challenging the amounts MiMedx paid him in October 2018 that he claims to be owed under the Illinois Wage Collections and Practices Act ("IWCPA"). Accordingly, MiMedx paid all amounts owed and his claim should be dismissed as moot.

- Fox did not challenge MiMedx's argument that he could not show the required element of "causation" for his tortious interference claim (Mot. 11-13) (addressing only the "wrongful conduct" and "continuing expectancy" prongs). (Opp'n at 9-14.)

- Fox did not challenge that developing his Code Red plan to compete with MiMedx and fostering animosity towards MiMedx's leadership among his subordinates constituted legitimate, non-retaliatory reasons to terminate him. (Opp'n at 20-23.)

- Fox did not challenge MiMedx's legitimate, non-retaliatory reasons for the alleged "reduction" in Fox's pay and "prevention" of his exercising stock. (*Id.*)

- Fox did not challenge MiMedx's arguments that Fox could not show causation between his alleged Q3 2015 refusal and any "threat" of retaliation. (Mot. at 23.)

In the Seventh Circuit, "[f]ailure to respond to an argument . . . results in waiver." *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010); s*ee Santos-Means v. Sheriff's Office of Cook Cty., Illinois*, No. 12 CV 8804, 2016 WL 6092600, at *5 (N.D. Ill. Oct. 19, 2016) (failing to challenge summary judgment arguments waives challenges). Based on this failure alone, the Court should grant MiMedx summary judgment on Fox's counterclaims for tortious interference and alleged IWA violations.[4]

### 2. Fox Cannot Demonstrate a Triable Issue of Fact as to Tortious Interference.

Fox has not shown a triable issue as to either (1) an interference that caused a breach of expectancy or (2) a continuing expectancy at CPN. *Byker v. Sequent Computer Sys., Inc.*, No. 96 C 2297, 1997 WL 639045, at *12 (N.D. Ill. Oct. 1, 1997). Try as he might, Fox cannot contradict the direct and dispositive evidence that MiMedx did not "interfere" or "cause" Fox's termination from CPN. Rather the evidence confirms that CPN terminated Fox ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌, (Ex. 12 to SUMF[5] at 63-64, 206.), ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ (Ex. 1 to SUMF at ¶ 7-8.)

Perhaps because of this overwhelming evidence, Fox entirely ignores MiMedx's arguments on causation. (Mot. at 11; Opp'n at 9-12.) Fox does not cite a *single* case where a

---

[4] To the extent Fox claims that he challenged any of these arguments in his Rule 56.1 statement, this is insufficient. *See Santos-Means*, 2016 WL 6092600, at *5.
[5] "SUMF" refers to MiMedx's Statement of Undisputed Material Facts (ECF No. 343).

2

claim survives summary judgment in the face of affirmative statements that a third party terminated an employee for reasons unrelated to alleged interference. To the contrary, in *Tyrrell v. Neiman-Marcus Grp., Inc.*, the court dismissed interference claims relying on similar third party affidavits. *See* No. 94 C 5979, 1996 WL 28478, at *4 (N.D. Ill. Jan. 19, 1996). Based on this undisputed evidence alone, the Court should grant MiMedx summary judgment.

Instead of addressing causation, Fox instead focuses solely on the "wrongful" conduct and "continuing expectancy" prongs, and improperly relies on speculation and inadmissible hearsay. Ignoring the direct evidence to the contrary, Fox contends MiMedx "threatened" to sue CPN[6] (Opp'n at 9), claims MiMedx caused "legal drama," and falsely states that CPN fired no other MiMedx employees but him (Opp'n at 11). In fact, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Ex. 6 to SUMF at 97.)[7] ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Ex. 52 to RSAF[8] ¶¶ 4-9; *see also* Ex. 58 to RSAF at 31; Ex. 62 to RSAF at 205-208.) In any event,

---

[6] Fox also asserts that this purported "threat" to file litigation is legally dispositive under Illinois law. (Opp'n at 9.) However, the case he cites ***does not*** support finding that his claim survives summary judgment, but merely states that allegations of someone threatening frivolous litigation were sufficient to survive a pre-discovery motion to dismiss. *See UIRC-GSA Holdings Inc. v. William Blair & Co., L.L.C.*, 264 F. Supp. 3d 897, 908 (N.D. Ill. 2017).

[7] ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Opp'n at 11), but as CPN's witness ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Ex. 58 to RSAF at 102.)

[8] RSAF refers to MiMedx's Response to Fox's Statement of Additional Facts, filed contemporaneously with this reply.

such self-serving hearsay statements are inadmissible and insufficient to warrant denial of a motion for summary judgment. *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009).

Outside of this inadmissible hearsay, Fox's theory that MiMedx engaged in "wrongful" conduct rests largely on speculation that MiMedx ███████████████████, apparently to entice CPN to fire Fox. (Opp'n at 10-11.) Again, Fox's theory is belied by CPN's express testimony ██████████████████████. (Ex. 1 to SUMF ¶ 12; *see also* Ex. 12 to SUMF at 131 ████████████████████

████████████████████████████

████████████ Similarly, Fox falsely argues that CPN ████████

████████████████████████████

████████████████████████████ (*Compare*

Ex. 20 to RSOF[9] *with* Ex. 23 to RSOF; *see also* Ex. 62 to RSAF at 142, 276-77.)

Based in part on his false claim that "ill will" alone suffices to sustain a tortious interference claim,[10] ████████████████████████

████████████ But here, Fox fails to demonstrate that any "wrongful" conduct[11] was actually directed towards Fox's expectancy. ████████████████

---

[9] "RSOF" refers to Fox's Response to MiMedx's Statement of Undisputed Material Facts (ECF No. 353).

[10] Fox argues that he need only show ill-will to support a claim of tortious interference, citing *Republic Gear*. (Opp'n at 10.) This argument is false. *Republic Gear*—which is not even about tortious interference—does not hold that ill-will alone is sufficient to support any claim. *Republic Gear Co. v. Borg-Warner Corp.*, 406 F.2d 57 (7th Cir. 1969).

[11] ████████████████████████████

████████████████████████████

████████████████████████ Even assuming this testimony could be credited, without any information about the contents, it is insufficient to support tortious interference on summary judgment. *Byker*, 1997 WL 639045, at *13 (tortious interference claim fails where there was no evidence negative "comments were actually made or of their content.").

4

████████████████████████████████████████, but presents no evidence CPN heard them.

Similarly, Fox cites the fact that ████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████ (Ex. 18 to RSOF at 82.)[12]

Finally, ████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████ (Opp'n at 11.) ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████ (Ex. 20, 23 to RSOF; Ex. 62 to RSAF at 155, 166-17.)

Turning to whether Fox had a continuing expectancy at CPN, Fox cites **Utah law** for the faulty argument that this is a jury question (Opp'n at 12), when **Illinois** courts routinely find at summary judgment that an employee lacked a continuing expectancy. *See, e.g.*, *Hindo v. Univ. of Health Scis./Chicago Med. Sch.*, 237 Ill. App. 3d 453, 461 (1992); *Cashman v. Shinn*, 109 Ill. App. 3d 1112, 1119 (1982). Then, Fox falsely claims that ████████████████████████

████████████████████████████████████████ (Opp'n at 14),[13] ████████████

████████████████████████████████████████████████████████

---

[12] Moreover, MiMedx was contractually permitted to raise its non-competition agreement with Fox's future employers. (Ex. 13 to SUMF at § 8.)

[13] Fox's legal argument is equally flawed, as it relies on an inapposite Title VII case holding only that a purportedly non-discriminatory justification shifted significantly over time might be suspect. *Loudermilk v. Best Pallet Co., LLC*, 636 F.3d 312, 315 (7th Cir. 2011). This case is unrelated to tortious interference, and in any event contrasts directly with the evidence here, where CPN relayed the ***very same*** justification for Fox's termination in previous administrative proceedings, numerous declarations, and all the depositions in this case. (*See, e.g.*, Ex. 64 to RSAF; Ex. 49 to SUMF; ECF No. 186 at Ex. E.)

5

███████████████████████████████████████████████████████

███████████████████████████████████ (Ex. 64 to RSAF.) And CPN consistently testified ██████████████████████████████████████████

██████████████████████████████████. (Ex. 49 to SUMF; ECF No. 186 at Ex. E.) Finally, Fox again relies on hearsay statements allegedly made by CPN employees as recited in his declaration in an attempt to create a dispute of fact (Opp'n at 13), but such purported evidence is inadmissible and contradicts the sworn statements from CPN. *Gunville*, 583 F.3d at 985. Because the undisputed evidence confirms that MiMedx did not interfere with Fox's employment with CPN, MiMedx is entitled to summary judgment as a matter of law.

### 3. Summary Judgment on Fox's IWA Claim Must Be Granted Because Fox Cannot Prove MiMedx Took Adverse Employment Actions "Because of" His Alleged Refusal to Participate in Q3 2015.

To prevail on his IWA claim, Fox must prove that MiMedx engaged in conduct that constitutes an "adverse employment action" and that MiMedx did so "because of" Fox's alleged refusal to participate. (Mot. at 15; Opp'n at 14-15.) For each act of claimed "retaliation," Fox fails to show a triable issue of fact as to one or both of those elements.

#### a. Fox Cannot Show His Promotion Was an Adverse Action and Fails to Dispute MiMedx's Legitimate, Non-Retaliatory Purpose.

In a quixotic attempt to claim that becoming national vice president was a "demotion" caused by his "refusal to participate," Fox ignores the undisputable evidence that he was given a raise and promotion in 2015. Specifically, in his brief, Fox ignores that:

- ████████████████████████████████████████████████████ ████████████████████████████████████ (Exs. 37, 38 to SUMF; Ex. 8 to SUMF at 180-181.)
- Fox's responsibilities expanded nationally, not regionally. (Ex. 2 to SUMF at ¶ 3.)
- Fox's own damages expert testified that Fox's compensation increased in 2016, after Fox took the national vice president role. (Ex. 7 to SUMF at 108-110.)

6

The move to national vice president was simply not "adverse." *Porter v. City of Chicago*, 700 F.3d 944, 954 (7th Cir. 2012) (employment change "must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'").

Instead of challenging this evidence, Fox doubles-down on lies regarding his pay. But no matter how you break it down, Fox indisputably made more in 2016 than he did in 2015.[14] (Ex. 51 to RSAF.) These figures come from Fox's pay stubs and are the same numbers his expert used. (Ex. 65 to RSAF.) As his expert testified: "Q. So it would be a true statement to say that Fox's -- Mr. Fox's total compensation from MiMedx in 2016 was higher than his total compensation from MiMedx in 2015, correct? A. Correct." (Ex. 7 to SUMF at 108.)

Fox attempts to confuse the issue by ignoring that he received a large jump in salary and asking this Court to compare his *total* compensation in 2015 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ to only his projected *salary and commissions* in 2016 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (Opp'n 15-16; *see also* Exs. 51, 65 to RSAF.) In the same breath, he ignores the significant increase in his total 2016 compensation because, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ But moreover, when one compares apples to apples and looks at either salary and commissions or salary, commissions and stock, Fox still made more in 2016 than he did in 2015. (Ex. 51 to RSAF; *see also* Ex. 7 to

---

[14] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. 51 to RSAF.)

SUMF at 110.) Fox's incorrect "understanding" of these issues does not create an issue of fact.

Fox's remaining challenges carry no weight. For example, Fox's position that a jury generally decides the question of adverse employment action (Opp'n at 16-17) is belied by Seventh Circuit cases he also cites, which uphold grants of summary judgment. *Porter v. City of Chicago*, 700 F.3d 944, 954–55 (7th Cir. 2012); *Crady v. Liberty Nat. Bank & Tr. Co. of Indiana*, 993 F.2d 132, 136 (7th Cir. 1993).[15] Indeed, Fox cites ***no cases*** where a court finds a shift to a nationwide position (from a regional one) ▮▮▮▮▮▮▮▮ and includes a significant bump in pay, to be "adverse." Instead, Fox falsely asserts that the Seventh Circuit has "no 'hard and fast rules'" about adverse employment actions.[16] (Opp'n 16-18.) First, courts in the Seventh Circuit do have rules: transfers that have the same salary and benefits are generally not adverse employment actions. *Smith v. Allstate Ins. Corp.*, No. 00 C 7822, 2001 WL 1000736, at *7 (N.D. Ill. Aug. 29, 2001). Even "lateral" moves are not adverse. *Keen v. Merck Sharp & Dohme Corp.*, No. 15-CV-1178, 2018 WL 1156203, at *8 (N.D. Ill. Mar. 5, 2018).[17] To survive summary judgment, Fox had to produce evidence that the move to national vice president involved a "dramatic downward shift in skill level," which he failed to do. *Smith*, 2001 WL 1000736, at *7. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, he presents no evidence that these

---

[15] Notably, the *Crady* court notes that an adverse employment action might include "a decrease in wage or salary" a "less distinguished title" or "a material loss of benefits" (*Crady*, 993 F.2d at 136), none of which apply to Fox.

[16] Fox misstates the Seventh Circuit's holding in *Porter*, which did not address adverse employment actions as a whole. Rather, in examining certain cases holding that schedule changes and reprimands are generally not adverse employment actions, the Seventh Circuit noted that ***those cases*** were not hard and fast rules. *Porter*, 700 F.3d at 955.

[17] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

8

changes resulted in his new duties being "less significant" than they had been in his previous role. *Crady*, 993 F.2d at 136. In fact, the evidence shows that Fox's duties in the new role were more significant, as they were national instead of regional. (Ex. 2 to SUMF at ¶ 3.)[18]

Moreover, Fox does not challenge that courts can dismiss an IWA case for lack of causation on summary judgment. *Morris v. Ashland, Inc.*, No. 12 C 5487, 2014 WL 4066213, at *4 (N.D. Ill. Aug. 15, 2014). However, Fox ignores the evidence of MiMedx's legitimate, non-retaliatory purpose for promoting him to national vice president: namely that MiMedx was starting a new initiative and believed Fox's skill set would be a good fit. Fox fails to discuss this evidence in his brief and provides no factual support to dispute it in his Rule 56.1 response; it is therefore deemed admitted. (RSOF ¶ 11.) *See* N.D. Ill. Local Rule 56.1(b)(3); *Ammons v. Cook Cty. of Illinois*, No. 11 CV 5010, 2014 WL 4116956, at *2, n.3 (N.D. Ill. Aug. 20, 2014).

Because Fox has no rejoinder to MiMedx's legitimate, non-retaliatory purpose, he advances a fiction in which his "refusal" was "ongoing" until the day he became national vice president. (Opp'n 17-18). He does so by misusing the "extreme" and "rare" cases where the timing of the events is so close—*e.g.*, after engaging in protected activity, an individual is *immediately* terminated—that the suspicious timing alone can create a dispute of fact.[19] These cases, however, specifically note that suspicious timing alone is generally ***not*** sufficient to survive summary judgment. And these cases do not apply because, by Fox's own testimony, his alleged refusal took place and "60 days later" or in "the next quarter" he was promoted to national vice president. (Ex. 5 to SUMF at 253, 366-367.) Furthermore, Fox cites no evidence that his "refusal" was "ongoing," and his sworn testimony is directly contrary. *See, e.g.*, Ex. 5 to

---

[18] The fact that Fox "described" the move as a demotion (Opp'n at 16) is irrelevant. *Keen*, 2018 WL 1156203, at *8 ("Whether a reassignment would be a promotion, demotion or lateral transfer *is not determined by the employee's perceptions*.") (emphasis added).
[19] *Casna v. City of Loves Park*, 574 F.3d 420, 427 (7th Cir. 2009); *Loudermilk*, 636 F.3d at 314.

9

SUMF at 253 (Fox testified "the one time I didn't do it I was demoted the next quarter."). Rather, Fox's argument appears to rely on a faulty theory that once someone "refuses" he/she continues to "refuse" for all time, which argument would run directly counter to Seventh Circuit case law dismissing claims where the time between events breaks the causal chain. *See, e.g.*, *Garcia v. U.S. Postal Serv.*, 414 F. App'x 855, 858 (7th Cir. 2011); *Elue v. City of Chicago*, No. 16 CV 9564, 2018 WL 4679572, at *8 (N.D. Ill. Sept. 28, 2018).

### b. Fox Cannot Show A Causal Connection Between His Alleged Q3 2015 Refusal to Participate and MiMedx's Actions on December 29, 2016.

The undisputed evidence further shows that MiMedx did not retaliate against Fox on December 29, 2016[20] "because of" his alleged refusal to participate in Q3 2015. Fox does not, and cannot, challenge the large 14-month time gap between his alleged refusal and the alleged December 29, 2016 retaliation. (Ex. 5 to SUMF at 253, 366-367 (alleged refusal occurred in October 2015).) *See, e.g.*, *Garcia*, 414 F. App'x at 858 (time gap of over a year, without more, requires dismissal of IWA claim); *Elue*, 2018 WL 4679572, at *8 (same).

Fox does not challenge these holdings, other than a footnote citing out-of-circuit cases about temporal proximity. (Opp'n at 19 n.11.) Rather, Fox claims only that he provided "more" evidence linking his Q3 2015 "refusal" to his termination over a year later. (Opp'n at 19.) Fox does not even attempt to connect the alleged actions in 2016 to his alleged "refusal" in 2015. On this ground alone, Fox has failed to create a dispute of fact. First, Fox's reliance on a purported ▬▬▬▬▬▬▬▬▬▬ is misplaced (Opp'n at 19), as it does not connect the Q3 2015 "refusal" to actions in December 29, 2016. (Ex. 5 to SUMF at 367.) Second, in the interim between Fox's alleged Q3 2015 refusal and December 29, 2016, Fox was promoted to national vice president, received a raise, and stayed in that new position for nearly a year (Mot. at 21;

---

[20] Fox appears to have dropped his assertion that MiMedx retaliated against him by refusing to give him enough team members. (RSOF ¶ 47.)

SUMF ¶ 7, 37), which promotion breaks any causal link. ███████████
███████████████████████████████████████████.[21] (Opp'n at 19.) At best, the evidence might show some negative views about Fox because of a belief Fox engaged in side sales, but nothing connects these statements to an alleged "refusal" fourteen months earlier. ███████████████████████████████████████████████████████████[22]

Even if Fox could bridge the time gap between his "refusal" and December 29, 2016, MiMedx presented legitimate, non-retaliatory reasons for its actions, and Fox was required—yet failed—to "produce evidence from which a rational factfinder could infer that the company *lied* about its proffered reasons for the employees' dismissal." *Morris*, 2014 WL 4066213, at *4 (emphasis added).[23] Fox failed to meet this burden. Fox does not dispute that:

- ███████████████████████████████████████████████████████████
- ███████████████████████████████████████████████████████████
- ███████████████████████████████████████████████████████████
- ███████████████████████████████████████████████████████████
- ███████████████████████████████████████████████████████████

---

[21] Fox attempts to rely on a press release to show that MiMedx falsely "stat[ed] it had terminated Fox for selling competitive products." (Opp'n at 19.) Fox made this same argument in an attempted defamation claim, which argument this Court already rejected. (ECF No. 145 at 16.)

[22] ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Accordingly, this call, which the witness claims she attended while employed by MiMedx, *could not* have referred to Fox's "refusing to participate."

[23] Fox's reliance on *Thomson v. Illinois Human Rights Comm'n*, 2016 IL App (2d) 160011-U, ¶ 76 is misplaced, as it is an employment discrimination case that applies the *McDonnel-Douglas* framework, a framework specifically rejected for Illinois retaliation claims. *See, e.g.*, *Zelenika v. Commonwealth Edison Co.*, No. 09 C 2946, 2012 WL 3005375, at *18 (N.D. Ill. July 23, 2012).

11

- █████████████████████████████████████████████████

Thus, Fox failed to provide evidence that each of MiMedx's reasons were "pretextual."

Turning to the arguments Fox does address, Fox's contention in his brief that "MiMedx does not have (or at least does not enforce) a policy that either prohibits its employees from side selling" (Opp'n at 21)[24] is not only false, it contradicts Fox's testimony. Fox admitted that a MiMedx employee who sold PalinGen—a non-MiMedx product—on the side would violate MiMedx policies. (Ex. 57 to RSAF at 122-123.) Fox then claims that MiMedx "selectively" enforced its policies ████████████████████████████████████████████████████████ ████████████████████ (Opp'n at 21-22.) Fox leaves out of this purported "comparator" analysis ███████████████████████████████████████████████████████████████████ (Ex. 59 to RSAF at 102-104.) Moreover, ████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████[25] (Ex. 59 to RSAF at 213; Ex. 53 to RSAF at 54-55.) Furthermore, Fox's cases apply Title VII's *McDonnel-Douglas* burden-shifting framework, which is inapplicable to Illinois retaliation claims. *Zelenika*, 2012 WL 3005375, at *18.[26] In any case, Fox did not establish that Ball was a proper "comparator." *See, e.g.*, *Holman v. Nicholson*, No. 07 CV 4518, 2009 WL 77528, at *6 (N.D. Ill. Jan. 9, 2009). ████████████████████████████████████, a position far below Fox as a national vice president. (Ex. 53 to RSAF at 43-44.)

---

[24] In some portions of his papers, Fox appears to assert something different, which is that MiMedx's policies only prevent side-sales of "competitive" products. (RSOF ¶ 25.) MiMedx's policies have no such limitations. (*See, e.g.*, SUMF ¶ 6; RSOF ¶ 6.)

[25] Moreover, Ball had no "Code Red Plan" to compete with MiMedx and acknowledged his conduct rather than lying as Fox did.

[26] Fox's reliance on *Coleman* for his comparator argument is also problematic in any event, as it applies the "convincing mosaic" test to retaliation (*Coleman v. Donahoe*, 667 F.3d 835, 860 (7th Cir. 2012)), a test the Seventh Circuit has now rejected. *See, e.g.*, *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016).

12

Similarly, Fox resorts to significant misstatements of the testimony in a failed attempt to show he did not violate MiMedx's confidentiality policies. It is undisputed that Fox circulated national information to individuals who would not otherwise have had access (RSOF ¶¶ 29-32) and that MiMedx's policies state that confidential information "*should not be* transmitted, sent or forwarded to other employees *inside the Company* who do not have a legitimate need and authorization to know the information." (RSOF ¶ 6(d) (emphasis added).) Moreover, contrary to Fox's arguments (Opp'n at 22), ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. 55 to RSAF at 145-146.) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. 59 to RSAF 14-15.) Further, contrary to Fox's argument, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Opp'n at 22.) In fact, Fox's own counsel admitted that Blocker's reports were not national in scope,[27] stating that: "it is now clear from Kruchoski's production that the document was in fact entitled 'Daily Sales Report'" and only contained data for Blocker's 'Central Area.'" (Ex. 66 to RSAF.)

Finally, Fox does not challenge that lying during an investigation is a legitimate, non-retaliatory reason for terminating him, claiming only that there is a "factual dispute" as to whether he actually "lied" because he thought he was being questioned solely regarding side sales of competitive products. (Opp'n at 23.) Fox, however, admits that he knew Taft Mills was side selling CPN products—which include collagen-based products—at the time he denied

---

[27] RSD Combined reports contain nationwide data; Daily Sales Reports contain regional data. (Ex. 51 to RSAF.)

13

knowledge of any side selling.[28] (RSOF ¶¶ 35-36.) Moreover, Fox's mere denial that he lied is insufficient to survive summary judgment, as Fox must show some evidence "that challenges the validity of the investigation, or shows that the conclusion reached by the investigation was invalid, and pretext for his discharge." *Morris v. Ashland*, 2014 WL 4066213, at *5 (though "there may be debate as to what actually happened" this is not enough "to show that the defendant's conclusion that Plaintiff lied in his reports was pretext."). Because Fox has made no such showing, MiMedx is entitled to summary judgment.

### c. Fox Has Failed to Establish a Causal Link Between Any Purported Threat and His Q3 2015 Retaliation.

Fox's brief entirely fails to address his claim that MiMedx "threatened" Fox with retaliation pursuant to 740 ILCS 174/20.2, which MiMedx argued must be dismissed for lack of evidence of causation. (Mot. at 23.) Fox therefore waived this claim. But moreover, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and allegedly occurred during a December 12, 2016 meeting, some 14 months *after* his alleged protected conduct. (Opp'n at 4-5.)[29] It simply does not follow that MiMedx would "threaten" to retaliate in the future for something that had purportedly already occurred.

### 4. MiMedx Has Proven that the After-Acquired Evidence Doctrine Should Be Applied to Limit Fox's Alleged Damages Under the IWA.

Finally, any claim for back-pay that survives summary judgment must be cut-off by the after-acquired evidence as of March 2017, as Fox has acknowledged that he engaged in a secret affair with his direct subordinate and failed to disclose that affair for nearly a year. (Mot. at 24;

---

[28] It is undisputed that Fox's non-competition agreement prohibits sales of "collagen-based products" and that CPN sells collagen based products. *Compare* Ex. 13 to SUMF § 1(a) (Fox's non-competition agreement ) *with* Ex. 11 to SUMF at 32-33 (Mills admits CPN sold collagen products) and Ex. 58 to RSAF at 82 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

[29] Fox's fact section also refers to "threatening" statements that were purportedly made in January 2017, after Mr. Fox was terminated. As this Court is aware, the IWA only applies to current employees. *See, e.g.*, *Money Mgmt., Inc. v. Thomas*, 2017 IL App (2d) 160333-U, ¶ 33.

14

Opp'n at 23-25; RSOF ¶ 42-43). Fox's argument that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ is of no moment (Opp'n at 24), as MiMedx's Senior Vice President of Administration testified that Fox's admitted failure to report the relationship violated MiMedx's policy requiring disclosure of any relationship that might create a conflict of interest. (SUMF ¶ 44; Ex. 2 to SUMF, ¶¶ 6(e), (g); RSOF ¶ 6.) Fox *admittedly* exchanged text messages with his subordinate appearing to seek *quid pro quos* for back rubs and massages, which are especially problematic since Fox reviewed her performance and helped set her compensation. (SUMF ¶ 43; Ex. 2 to SUMF at ¶ 12.) Instead, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*See* Ex. 9 to RSOF at 211-12.) Thus, Fox's damages must be cut off at the latest in March 2017.

### 5. Fox Offers No Facts Disputing the Amount MiMedx Allegedly Owes Under the IWCPA, and Therefore His Claim Must Be Dismissed As Moot.

In regard to his IWCPA claim, Fox's sole argument against dismissal is to assert—without factual support—that "[a]ll items have not yet been paid." (Opp'n at 25.)[30] Fox's does not cite *any evidence* disputing MiMedx's Rule 56.1 Statement that the amounts tendered are the only amounts owed to Fox, other than fees—which Fox has thus far refused to specify despite promises to the contrary. (*See* RSOF ¶ 79.); *see* N.D. Ill. Local Rule 56.1(b)(3); *Ammons*, 2014 WL 4116956, at *2, n.3 (party admits facts set forth under Rule 56.1 if they fail to provide contradictory evidence). Accordingly, Fox was paid the amounts owed, and his claim is moot.

### CONCLUSION

WHEREFORE, MiMedx respectfully requests that the Court enter an order granting MiMedx's motion for summary judgment.

---

[30] Fox's argument in his brief also directly contradicts his attorney's admissions during meet and confer conferences. (*See, e.g.*, Ex. 67 to RSAF.)

Dated: December 28, 2018.    Respectfully submitted,

**PLAINTIFF MIMEDX GROUP, INC.**

/s/ *David M. Pernini*
Joseph D. Wargo, *pro hac vice*, Georgia Bar No. 738764
Shanon J. McGinnis, *pro hac vice*, Georgia Bar No. 387598
David M. Pernini, *pro hac vice*, Georgia Bar No. 572399
Heather N. Fugitt, *pro hac vice* Georgia Bar No. 475152
WARGO & FRENCH, LLP
999 Peachtree Street, NE
26th Floor
Atlanta, Georgia 30309
Telephone: (404) 853-1500
Facsimile: (404) 853-1511
E-mail: jwargo@wargofrench.com
E-mail: smcginnis@wargofrench.com
E-mail: dpernini@wargofrench.com
E-mail: hfugitt@wargofrench.com

SIDLEY AUSTIN LLP
Ami N. Wynne
Jason G. Marsico
One South Dearborn
Chicago, Illinois 60603
Phone: (312) 853-7000
Fax: (312) 835-7036
Email: awynne@sidley.com
Email: jmarsico@sidley.com

*Counsel for Plaintiff*
*MiMedx Group, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on December 28, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following counsel of record for the parties in this action:

| | |
|---|---|
| Christopher S. Griesmeyer | Clayton D. Halunen |
| Adam C. Maxwell | Christopher J. Moreland |
| Greiman, Rome & Griesmeyer, LLC | Halunen Law |
| Two North LaSalle, Suite 1601 | IDS Center, Suite 1650 |
| Chicago, Illinois 60602 | 80 South 8th Street |
| cgriesmeyer@grglegal.com | Minneapolis, MN 55402 |
| amaxwell@grglegal.com | halunen@halunenlaw.com |
| | moreland@halunenlaw.com |

*/s/ Ami N. Wynne*

Ami N. Wynne
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, Illinois 60603
Phone: (312) 853-7000
Fax: (312) 835-7036